IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:26-cr-00001 |
| ) | |
| BRIAN COLE, JR., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**RESPONSE TO COURT ORDER TO SHOW CAUSE**

Defendant Brian Cole Jr. respectfully submits this memorandum in response to the Court's January 6, 2026, order requiring Defendant to show cause why his Emergency Motion for Review of Magistrate's Order (Dkt. 33) should not be denied as moot. As explained below, it is not. The Court can still grant effective relief because 18 U.S.C. § 3060(d) mandates Mr. Cole's release notwithstanding the new indictment.

SUMMARY

Mr. Cole's motion is not moot because the Court can still grant effective relief: his immediate release from custody under 18 U.S.C. § 3060(d). The legal basis is straightforward. Federal law required the government to either hold a preliminary hearing or obtain a valid *federal* indictment by December 30, 2025—the deadline Mr. Cole consented to extend. The government did neither. When that deadline passed without compliance, the statute's mandatory remedy attached: Mr. Cole "*shall* be discharged from custody or from the requirement of bail or any other condition of release." *Id.* (emphasis added). The government's subsequent January 6, 2026

1

indictment came too late to prevent this violation. Section 3060(e)'s safe harbor applies only when an indictment is returned "*prior* to the date fixed for the preliminary examination"—it does not retroactively erase a breach that already occurred under subsection (d). *Id.* (emphasis added). Congress chose release as the consequence for missing the deadline, using mandatory language. To be sure, this remedy does not dismiss the charges, but it requires discharge from custody.

The requested relief is thus concrete and prospective: ordering Mr. Cole's immediate release while allowing the January 6 indictment to proceed. This gives full effect to the statute's text, which expressly provides that discharge is "without prejudice . . . to the institution of further criminal proceedings . . . upon the charge upon which he was arrested." 18 U.S.C. § 3060(d). The government remains free to prosecute Mr. Cole under the January 6 indictment, but it cannot retroactively cure its December 30 violation. The statute requires release just as much now as it did a week ago. And nothing about the new indictment changes that. If Mr. Cole had been released as required on December 30, the government could not immediately re-detain him upon that indictment without satisfying the Bail Reform Act's requirements for revisiting a release decision based on new material information. And the new indictment, which simply tracks the arrest warrant's charges, does not meet that standard. Because the Court can still order relief now—by changing Mr. Cole's custody status from detained to released—the case is not moot under Article III's standard requiring only that some "effectual relief whatever" remain available.

BACKGROUND

Mr. Cole was arrested on December 4, 2025, on a complaint, and he made his initial appearance on December 5, 2025. *See* Dkt. 1, 7. Because he was in custody, a preliminary hearing had to be held "within a reasonable time, but no later than 14 days after the initial appearance," Fed. R. Crim. P. 5.1(c), and the Court was required at the initial appearance to "fix[]" the date for that hearing. 18 U.S.C. § 3060(b).

None of that happened on December 4. Instead, the Court initially set a detention hearing for December 15, 2025, but the hearing was reset to December 30, 2025. *See* Dkt. 9, 11. Mr. Cole consented to extend the detention hearing deadline to December 30, 2025, but he did not waive his right to a preliminary hearing or consent to any extension beyond that date. *See* Dkt. 21. No federal indictment was returned and no preliminary hearing was held on or before December 30.

In the days leading up to December 30, defense counsel asked the government to confirm whether it would secure a federal indictment before that date or proceed with a preliminary hearing at that time. Instead, the government sought to push the preliminary hearing to January 7 or 8, something that the defense refused. Perhaps recognizing the problems it faced with 18 U.S.C. § 3060(d), the government chose a different route. On December 29, 2025, it presented an indictment returned that day by a D.C. Superior Court grand jury. The Magistrate deferred acceptance and requested briefing in light of *Stewart*.

On January 2, 2026, the Magistrate issued a brief Minute Order conditionally "accepting" the Superior Court indictment "on the understanding" that the

3

government would promptly obtain a superseding federal indictment and set a January 9 status conference.

After the defense's emergency motion, the government's opposition, and the defense's reply, the government announced that it obtained a federal grand jury indictment on January 6, 2026.

## ARGUMENT

Article III mootness turns on whether it is "impossible" for the Court to provide "any effectual relief whatever." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). It can. Congress prescribed a specific, mandatory remedy when the 18 U.S.C. § 3060 clock expires without a timely preliminary hearing or a valid, operative federal indictment. In those cases, the defendant "*shall be discharged* from custody or from the requirement of bail or any other condition of release." 18 U.S.C. § 3060(d) (emphasis added). That remedy attached here before January 6, 2026, and it remains fully enforceable today. Ordering Mr. Cole's discharge is concrete, prospective relief that changes his custody status.

Nothing in § 3060 allows the government to cure a violation retroactively by indicting *later*. Subsection (e) is a limited safe harbor. When "prior to . . . the preliminary examination" an indictment is returned, a preliminary hearing is unnecessary. 18 U.S.C. § 3060(e). The subsection is not a time machine that nullifies a breach that *already occurred* under subsection (d)—which is what happened here. Reading a post-deadline indictment to erase § 3060(d)'s "shall be discharged" command would render (d) meaningless and invert the statute's structure. "[A]

4

defendant's remedy for an improperly delayed preliminary examination is discharge from custody or the requirement of bond under 18 U.S.C. § 3060(d)." *United States v. Milano*, 443 F.2d 1022, 1024-25 (10th Cir. 1971); *United States v. Aranda-Hernandez*, 95 F.3d 977, 979 (10th Cir. 1996) (The § 3060(d) remedy "extends only to defendants who *remain in custody* without being properly charged") (emphasis added).

If Mr. Cole were asking this Court to dismiss the new indictment with prejudice due to the government's violation of § 3060(d), he would have a tough case. The statute explicitly allows a case to continue even when a defendant is ordered released. But, by the same token, the statute does not establish a harmless-error regime when it comes to *custody*. As to these options, Congress chose release (rather than dismissal with prejudice) as the consequence, and it used mandatory language. *Cf. United States v. Montalvo-Murillo*, 495 U.S. 711, 717–21 (1990) (declining automatic release where the Bail Reform Act lacked an express release remedy for missed deadlines). Here, by contrast, § 3060(d) expressly requires discharge. Because the Court can still order that relief now, the controversy is not moot.

Section 3060(e) doesn't change any of the above. It removes the need for a preliminary hearing only when, "prior to the date fixed for the preliminary examination," an indictment is returned. That is a forward-looking condition. If the government indicts *in time*, no preliminary hearing is required. It does not authorize continuing illegal custody under § 3060(d) when the statutory deadline passed without a timely preliminary hearing or a valid, operative federal indictment.

Reading § 3060(e) as a retroactive fix would nullify § 3060(d)'s mandatory remedy. Congress paired bright-line timing rules with a clear consequence: if the deadline is missed, the defendant "shall be discharged from custody or from the requirement of bail or any other condition of release." 18 U.S.C. § 3060(d). If the government could always avoid that consequence by obtaining an indictment later, subsection (d) would be surplusage. The structure and text instead assign the government the risk of delay. It can comply in time and invoke (e)'s safe harbor. Or it can miss the deadline, and (d)'s discharge remedy attaches.

Rule 5.1(f) points the same way. It mirrors § 3060(e) by eliminating the preliminary hearing when an indictment exists, but it says nothing about undoing § 3060(d)'s custody remedy once the clock has run like here. The Rules govern whether a hearing is needed going forward, and § 3060(d) governs what happens when the government fails to meet the deadline. *See, e.g.*, *United States v. Vaughn*, 492 F. Supp. 3d 336, 343-44 (D.N.J. 2020). Bottom line: § 3060(e) prevents a violation if satisfied in time; it does not retroactively extinguish § 3060(d)'s mandatory discharge once that violation has occurred. Here, the January 6, 2026 federal indictment was too late to fall under §3060(e).

The remedy is straightforward and far from moot. The Court should order Mr. Cole's immediate discharge under § 3060(d) and make clear that the January 6 indictment may proceed. That relief gives full effect to Congress's chosen sanction for missing the preliminary-hearing deadline while respecting the line of cases making clear that § 3060(d) does not authorize dismissal of charges with prejudice. *See, e.g.*,

*United States v. Rogers*, 455 F.2d 407, 412 (5th Cir. 1972) (remedy is release, not dismissal); *United States v. Smith*, 22 F. App'x 137, 138 (4th Cir. 2001); *United States v. Williams*, 526 F. App'x 29, 35–36 (2d Cir. 2013); *United States v. Lizarraga-Tomayo*, 2005 WL 3303856, at *2 (D. Ariz. Dec. 1, 2005); *United States v. Assenza*, 337 F. Supp. 1057 (M.D. Fla. 1972); *United States v. Battle*, 2020 WL 5531585, at *2 (E.D.N.Y. Sept. 15, 2020). Those cases confirm only that defendants cannot seek dismissal as the remedy in situations like this. They do not hold—and cannot hold consistent with the statute's text—that a late indictment retroactively nullifies § 3060(d)'s mandatory discharge once the deadline has passed. Ordering Mr. Cole's discharge is precisely what should have occurred on December 30 when the deadline expired without an operative federal indictment or a preliminary hearing. *See Rogers*, 455 F.2d at 412 (defendant "should have directed that he be released [when] not promptly given a preliminary hearing" prior to the federal indictment). The subsequent January 6 indictment does not rewrite that history.

When Mr. Cole should have been released on December 30, the government remained free to prosecute under a future indictment (like the one it obtained on January 6, 2026) because Mr. Cole's release would have been "without prejudice . . . to the institution of further criminal proceedings against him upon the charge upon which he was arrested." 18 U.S.C. § 3060(d). But, even in that circumstance, it may not immediately re-detain Mr. Cole absent the showing Congress requires to revisit a release decision.

7

Had the Court applied § 3060(d) on December 30—as it was required to do given the absence of a valid federal indictment and the Superior Court return's invalidity—Mr. Cole "shall [have been] discharged." That release determination is not a transitory waypoint. It should have been the governing rule for Mr. Cole's release status going forward. Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," absent a recognized exception. *Arizona v. California*, 460 U.S. 605, 618 (1983). Here, the controlling legal conclusion is that the government's failure to secure a valid federal indictment or present evidence at a preliminary hearing by December 30 triggered § 3060(d)'s mandatory discharge. That ruling would have, and should have, "continued to govern" the parties' positions on custody thereafter.

To be sure, had Mr. Cole been released on December 30 (which he should have), the government could seek to re-detain him. But at that point, the Bail Reform Act would have supplied its only path for doing so. The government, after obtaining the January 6 federal indictment, would need to satisfy 18 U.S.C. § 3142(f)(2)(B) by showing "information . . . not known to the [government] at the time of the [prior] hearing" that has a "material bearing" on flight or danger. A belated indictment on January 6 is not such information and, had things gone that way, would not have satisfied the Bail Reform Act. The January 6 indictment was merely a different vehicle for probable cause—one the government could have obtained before December 30 or established at a preliminary hearing that day. Allowing the government to miss

8

the § 3060 deadline, procure an indictment later, and then treat that indictment as a "change in circumstances" would nullify the very sanction Congress selected. Law-of-the-case thus dovetails with § 3142(f): once the Court enforces § 3060(d) and orders release, the government cannot re-detain Mr. Cole absent genuinely new, material facts—not the government's own delayed satisfaction of probable cause.

All these issues remain live, and the Court should resolve them.[1] When it does so, it should order Mr. Cole released from custody without prejudice to the case against him under the new indictment proceeding in its normal course.

Respectfully submitted this January 7, 2026.

/s/ J. ALEX LITTLE
J. Alex Little (Pro Hac Vice)
Zachary C. Lawson (Pro Hac Vice)
John R. Glover (Pro Hac Vice)

LITSON PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co

/s/ MARIO B. WILLIAMS
Mario B. Williams
Ga. Bar No. 235254 (Pro Hac Vice)

/s/JOHN SHOREMAN
John M. Shoreman
DC Bar #407626

---

[1] Even if the release issue were moot—and it is not—the Court nonetheless will have to determine the validity of the purported "indictment" obtained in the D.C. Superior Court at some point in this litigation. This is true because the January 6 indictment contains at least one charge that has a five-year statute of limitations, and that period expired before the indictment was obtained from the federal grand jury.

                                        **HUMANITY DIGNITY AND RIGHTS LLC**
                                        Life Time Work - Buckhead - at Phipps Plaza
                                        3480 Peachtree Road, NE, Second (2nd) Floor
                                        Atlanta, Georgia 30326
                                        Tel: 470-257-2485
                                        mwilliams@hdrattorneys.com
                                        jms@mcfaddenshoreman.com

## CERTIFICATE OF SERVICE

    I hereby certify that I have on this day served a copy of the foregoing pleading upon all attorneys of record via the Court's electronic filing system.

    Respectfully submitted on this January 7, 2026,

                                          **/s/ALEX LITTLE**
                                          Alex Little
                                          (Pro Hac Vice)