IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    Plaintiff,

v.

BRIAN COLE JR

    Defendant.

**Case** No: 1:26-cr-00001-AHA

# DEFENDANT'S MOTION FOR REVOCATION OF MAGISTRATE JUDGE'S ORDER DENYING PRETRIAL RELEASE WITH STRICT CONDITIONS [ECF 28]

Defendant Brian Cole, Jr. respectfully moves the Court to vacate the Order to hold him in pretrial detention [ECF 28], entered by the Magistrate Judge on January 2, 2026 (the "Order"), and to order that Cole be released from custody on strict conditions, pursuant to the Bail Reform Act of 1985. 18 U.S.C. § 3145(b). The Bail Reform Act starts with liberty, not jail - detention is an "exception." *United States v. Salerno*, 481 U.S. 739, 750–52 (1987). The ruling of the Magistrate Judge departs from an essential principle of law governing pretrial detention: "In the absence of a concrete, prospective threat to public safety that cannot be mitigated by strict conditions, th[e] Court must apply the default rule

favoring liberty." *United States v. Klein,* 539 F. Supp. 3d 145, 155 (D.D.C. 2021); see also *United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010), "[t]he default position of the law, therefore, is that a defendant should be released pending trial").[1] In weighing whether pretrial detention is warranted for dangerousness, a court must consider four statutory factors: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4); *United States v. Munchel*, 991 F.3d 2173, 1279 (D.C. Cir. 2021). Cole is charged with two offenses based on the government's accusation that he manufactured and transported across state lines two "explosive devices" and planted them near the headquarters of the Democratic National Committee and the Republican National Committee in Washington, D.C. on the evening of January 5, 2021. (Order, at 1).

In considering whether Cole poses a threat of imminent harm, the Magistrate Judge was under basic a misconception about Cole's capability to

---

[1] The government concedes that Defendant does not pose a flight risk. (Order, at 6).

make dangerous "explosive devices in short order, over a matter of hours, not necessarily days or weeks." (Order, at 16). Too much weight was given to what was perceived as an ability to rapidly manufacture and deploy a viable explosive device. Facts that weighed heavily in favor of Cole's release, such as the lack of a criminal record, were brushed aside in the face of what the Magistrate Judge considered a sever threat to the community. (Order, at 16-17).

But, as shown herein, no credible evidence exists that Cole ever actually could, or ever actually has, made and deployed a viable explosive device. See Exhibit 1 (Interim Report of explosives expert concluding the devices allegedly planted by Cole were harmless). The government accuses Cole of mixing gunpowder and assembling dangerous, explosive devices shortly before, or on, January 5, 2021. But if Cole was in fact incapable of making a viable device on or before January 5, 2021, when free from any restraint on his ability to do so, it is highly unlikely that he could do so in the future if released under strict conditions of home detention and monitoring. Cole's level of dangerousness is, in fact, negligible, and application of the default rule favoring pretrial release with strict conditions is warranted. See, e.g., *Klein*, at 155.

## STANDARD OF REVIEW

Section 3145(b) provides for *de novo* review of a Magistrate Judge's detention order. See *United States v. Hunt*, 240 F. Supp. 3d 128, 132-133 (D.D.C. 2017) (court emphasized the district court's *de novo* review of the magistrate judge's detention decision); *United States v. Caldwell*, 540 F. Supp. 3d 66, 76 (D.D.C. 2021)(Bail Reform Act permits pretrial detention only in carefully defined circumstances and that the district court may consider evidence and reasons beyond those relied upon by the magistrate judge).

## ARGUMENT

The following is a list of facts concerning Cole that the government did not, and could not, contest at the Magistrate Judge's detention hearing:

1. Cole is an African American adult who has been diagnosed with Autism Spectrum Disorder, Level 1, and obsessive compulsive disorder ("OCD");
2. Cole has no criminal history;
3. Cole has had no issue in complying with court orders;
4. Cole is a high school graduate, who has been employed continuously since age 14;
5. Cole has lived in the same community since childhood, without incident;

6. Cole's neighbours and others who have dealt with him over many years vouch for his character;

7. Cole has a reliable job waiting for him upon pretrial release;

8. Cole has a vetted custodian upon release;

9. Cole submits to house arrest;

10. Cole submits to an ankle monitor and weekly reporting;

11. Cole submits to unannounced visits by pre-trial services;

12. No one was actually harmed as a result of the conduct for which Cole has been charged;

13. No property was damaged as a result of the conduct for which Cole has been charged;

14. Cole has no pattern of criminal conduct prior to or after the charged conduct.

These facts favor pretrial release with strict conditions as they are more than sufficient to rebut the presumption of pretrial detention under 18 U.S.C. § 3142(e)(3)(C). See *Klein,* 539 F. Supp. 3d 145; see also *Hunt*, 240 F. Supp. 3d 128; and *United States v. Munchel*, 991 F.3d 1273, 1289 (D.C. Cir. 2021) (Katsas, J., concurring). The Magistrate Judge acknowledged that the statutory presumption

was rebutted, but ruled, nevertheless, that no conditions of release exist that can reasonably assure the safety of the community. (Order, at 1).

The rebuttable presumption is only one of many factors a court must consider in assessing a defendant's liberty interest. See *Hunt*, 240 F. Supp. 3d at 131. In the case of Cole, clear and compelling evidence—no criminal history, strong family, ties to the community, and a willingness to abide by a set of strict conditions, *inter alia*—demonstrated he is not a danger to his community. The government always bears the burden of persuasion. *Id*. This means that, in the context of bail proceedings, the government must produce sufficient facts upon which "[t]he judicial officer relies to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community." *Id*. This finding by the judicial officer "[must] be supported by clear and convincing evidence" produced by the government. *Klein*, 539 F. Supp. 3d at 151.

## I.   Factor 1: Nature and Circumstances of the Charged Offenses.

There is no doubt that Cole is charged with serious offenses. But in weighing the nature and circumstances of the offences, the Magistrate Judge's focus was on the possible consequences if the devices had exploded in the vicinity

of the U.S. Capitol.[2] (Order, at 10-11). As proffered by Cole at the detention hearing, what the Magistrate Judge referred to as "IEDs" were not, in fact, viable explosive devices. (Order, at 10). The Magistrate Judge ignored that proffer and quoted the government in stating, "it was luck, not lack of effort that caused the devices not to detonate." (Order, at 10). And, quoting *Klein*, Cole's failure to cause damage was "more a product of fortune than fate." 539 F. Supp. 3d at 153.

But it was neither luck nor fortune. The devices did not explode due to the immutable laws of chemistry. The Interim Report of Brennan Phillips, an explosives expert with over 30 years of government experience, concludes the devices allegedly planted by Cole were not viable explosive devices, as asserted in the government's proffer at the detention hearing. (Exhibit 1). The Interim Report accepts the government's representations of how the so-called "gunpowder" was mixed. For purposes of the Interim Report, the expert relied only on the FBI lab report and chemical analyses produced by the government in this case. (Exhibit 1). Mr. Brennan concludes: ". . . it is my opinion that neither device is a bomb capable of causing an explosion" (Exhibit 1).

In ruling that the nature and circumstances of the charged offenses weighed in favor of detention, the Magistrate Judge was heavily influenced by the potential

---

[2] Cole is, of course, entitled to a presumption of innocence as to all charges.

for death, injury and destruction posed by the devices, which the government alleges were planted by Cole. (Order, 10-11). In fact, there was no possibility of death, injury or destruction as the devices were harmless. (See, Exhibit 1). Accordingly, this factor does not weigh against release on strict conditions as the safety of the public can be reasonably assured by home detention and active monitoring.

**II.        Factor 2: Weight of the Evidence.**

The Magistrate Judge found that physical evidence and statements attributed to Cole by the government in a post-arrest interview favored detention. (Order, at 11). However, the weight of evidence alone does not mean that no conditions of release can reasonably assure the safety of the community. Rather, the weight of the evidence must be balanced with evidence of dangerousness. The Bail Reform Act "does not purport to – nor could it, consistent with due process – authorize pretrial detention based simply on a preliminary assessment of the defendant's guilt . . . overwhelming evidence of guilt would not, alone, establish that no conditions of release would reasonably assure the safety of the community." *U.S. v. Taylor*, 289 F. Supp. 3d at 66. The Magistrate Judge considered the weight of the evidence factor in a vacuum without consideration of how it relates to an assessment of dangerousness. (Order, at 11-12). It was therefore error, and a slight

to due process, to rule the weight of evidence factor favored detention without balancing it with evidence of dangerousness. *Taylor*, at 66.

### III.     Factor 3: Individual History and Characteristics.

That Cole poses no threat of harm that a set of strict conditions could not mitigate is even more evident when his history and characteristics are assessed. In *Klein*, the court reasoned that, when reviewing the history and characteristics of a defendant, the following factors must be considered:

1. The available information concerning the defendant's character, as well as his physical and mental condition. *Id*. at 154;

2. Family ties. *Id.*;

3. Employment. *Id.*;

4. Financial resources. *Id.*;

5. Length of residence in the community and community ties. *Id.*;

6. Past conduct, including history relating to drug or alcohol abuse, criminal history, and records concerning appearance at court proceedings. *Id.*; and,

7. Whether, at the time of the offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law. *Hunt*, 240 F. Supp. 3d at 134.

Cole is a high school graduate who has maintained employment with his family-run business since age 14. Cole has strong family ties in the community, having been raised in Woodbridge, Virginia, and having lived in that community with his parents for the past 21 years. Cole's close ties to his community are shown by the strong character references provided by neighbors and others who have interacted with him over the years. (Exhibit 2).

Cole can continue being a productive citizen on pretrial release. He has his job waiting for him. Cole's work for his family's bail bonding business is steady and meaningful. In that work, which he can perform from home detention, Cole supports bonded individuals in complying with court-imposed obligations. Cole understands court processes and the obligation to comply with conditions of release. Importantly, Cole's continued employment will provide immediate structure, accountability and routine. Cole has no history of drug or alcohol abuse.

Cole has no criminal history; has no history of failing to appear, and was not on probation, parole, or any other form of supervision at the time of the alleged incident. These are classic predictors of reliability and compliance that weigh strongly in favor of pretrial release. None of these facts are in dispute. As the Magistrate Judge stated, "[t]hese facts . . . typically point against the need for pretrial detention and instead suggest that conditions of release could reasonably

mitigate any prospective danger . . ." (Order, at 12). Nevertheless, in the Magistrate Judge's analysis, even though Cole's history and characteristics favored release, the government's accusations concerning Cole's activities in the years following January 5, 2021, weighed more heavily in favor of detention. The alleged post-incident activities were considered under the fourth factor. (Order, at 13).

## IV.    Factor 4: Nature and Seriousness of the Danger Posed by Release.

It is established that "to order a defendant preventively detained, a court must identify an articulable threat posed by the defendant to an individual or the community." (Order, at 13, quoting *Munchel*, 991 F.3d at 1283). The inquiry is supposed to focus on the risk of future danger. *Munchel*, at 1283; see also at 1285 (Katsos, J. concurring)(describing the analysis as a forward-looking assessment).

In evaluating a pattern of unlawful or potentially dangerous conduct to assess the likelihood of future conduct, this Court considers whether "the specific circumstances that made it possible for that violence to arise are likely to manifest themselves again…." *Klein,* 539 Supp. 3d at 155. That analysis requires the court "to consider whether the risk that a defendant poses can be mitigated by supervisory conditions, such as home detention or the presence of a third-party custodian." *Id*.

In Cole's case, the circumstances giving rise to the charged offenses are highly unlikely to manifest themselves again. And even if they were, conditions can neutralize any residual risk. Among the hundreds of thousands of documents in its possession, the government has produced not a scintilla of evidence that Cole —prior to or after January 5, 2021— ever engaged in any activity similar to that for which he now stands accused. In fact, the government has not identified any present-day factors—access to weapons, ongoing procurement, extremist postings, organizing conduct, or similar—that would make future dangerous conduct likely. Nor can it, because none exist. Whatever risk the government posits is theoretical and backward-looking, belied by the past four years where Cole lived peaceably with his family.

Under the facts of this case, strict conditions exist that can address any perceived risk that Cole might engage in the accused conduct while on pretrial release. (*Klein*, 539 F. Supp. 3d at 151–56). It is now apparent that Cole lacks the technical skills to make viable explosive devices such as those described in the criminal complaint. Strict monitoring conditions would curtail any risk that Cole might engage in any similar activity on pretrial release. The Magistrate Judge's observation that a problem in fashioning conditions of pretrial release was the possible recurrence of what the government characterized as Cole's "abrupt and

impulsive conduct" was misplaced. There is no evidence at all that Cole has "snapped" or engaged in any abrupt or precipitousness behavior in the past four years. There is nothing to suggest Cole has been "on the edge" psychologically over the last four years, and the government proffered no clear and convincing evidence of abrupt or excitable behavior during that period. Certainly, in a proper, forward-looking analysis, any concern of this nature can be mitigated by strict conditions of release. See, e.g., *Munchel*, 991 F.3d at 1280.

The allegation relied on by the Magistrate Judge that Cole tried to make "blackpowder" sometime after January 5, 2021, is entirely unsupported and false. (Order, at 14-15). The government's proffer actually referred to a failed chemistry experiment by Cole to create potassium chlorate, not black powder. The experiment occurred more than a year before January 5, 2021. No evidence exists that Cole was attempting to create potassium chlorate for purposes of an explosive device. The experiment failed and was never repeated. And, again, absolutely no evidence was proffered by the government that Cole purchased the ingredients needed to produce black powder following January 5, 2021, or that he possessed any such ingredients at the time of his arrest.

The Magistrate Judge also accepted the government's proffer that "many of the same parts used in explosive devices" were found in his home and vehicle and

appeared to have been purchased prior to January 5, 2021. (Order, 15). Similar parts appear to have been purchased through August 13, 2022. The latter date is more than three years before Cole's arrest of Cole on December 5, 2025. The government made no proffer, nor could it, concerning Cole's purchase of explosive powders, or ingredients to prepare explosive powders at any time after January 5, 2021. There is no evidence whatsoever that Cole attempted to assemble an explosive device at any time after January 5, 2021. The government seized all the materials found in Cole's home and vehicle, so the question is whether strict conditions can be imposed that can reasonably assure the Court that Cole will not purchase similar materials during pretrial detention. No conditions of release reasonably assured the Magistrate Judge because of what the government alleged were Cole's acts of evasion and obfuscation in the years prior to his arrest. (Order, at 17).

There is no evidence that the government's failure to make an arrest in this case for four years was due to an effort by Cole to hide evidence. (Order, at 17). Indeed, the Magistrate Judge recognized repeated "wipes" of Cole's phone (beginning more than a year after January 5, 2021) were possibly related to OCD symptoms. *Id*. And, since they did not occur immediately following the alleged incident that is entirely logical. The government made no proffer that Cole was

engaged in any online activity that could raise concerns over conspiracy or nefarious influences. In fact, the government concedes it has no evidence whatsoever that Cole ever posted to platforms usually associated with radical political viewpoints. The government admits there is not a single text message or internet posting by Cole that implies any level of dangerousness, extremism or agitated mental state. And, although the government claims that Cole erased content from his phone, it utterly failed to show that Cole had any knowledge or reason to believe he was under investigation from 2021 until his arrest. As the Magistrate Judge first suggested, the repeated wiping of his phone was a manifestation of Cole's OCD, not an attempt to avoid detection. The Magistrate Judge's finding that Cole might hide illegal activity from his custodian, based on this history of "evasion," is mere speculation and lacks any basis in clear and convincing evidence presented by the government. (Order, at 17).

V.   **The Detention Order Must be Vacated in the Interests of Justice.**

It is submitted that Cole can safely be released from pretrial detention on the following conditions: (1) home arrest, (2) an ankle monitor, (3) an approved custodian, his grandmother, by Pretrial Services; (4) submit to Pretrial Services oversight with in-person reporting as directed, and unannounced inspections by pre-trial services to verify compliance; (5) abide by a no-weapons order; and (6)

maintain verified employment and comply with any substance use or mental health evaluation and treatment conditions that Pretrial Services recommends. The government cannot meet its burden of showing, by clear and convincing evidence, that those six conditions do not provide a reasonable assurance of safety to the community. Pretrial detention requires that a defendant's history, characteristics and alleged criminal conduct "make clear that he or she poses a concrete, prospective threat to public safety." *Munchel*, at 1280.

Since the record strongly suggests that Cole does not present a safety risk if subjected to strict conditions of release, the Magistrate Judge's failure to order pretrial release is reversible error. *Munchel*, 991 F.3d at 1289 (Katsas, J., concurring) (stating "[b]ecause the record strongly suggests that [defendants] would present no safety risk if subjected to strict release conditions, the district court clearly erred in finding that the government had proved its case by clear and convincing evidence."); *Klein*, 539 F. Supp. 3d at 155–56 (stating "[d]espite the serious concerns raised by [defendant's] conduct on and prior to January 6," the appointment of a third-party custodian, home detention; GPS monitoring, appropriate social media restrictions; and a ban on access to any firearm or other weapon would sufficiently "provide sufficient assurances of community safety"). "In the absence of a concrete, prospective threat to public safety that cannot be

mitigated by strict conditions, th[e] Court must apply the default rule favoring liberty". *Id.* Accordingly, the Court should order the release of Cole under a set of strict conditions, to include those discussed above. *Id.*

## CONCLUSION

Based on the above, Brian Cole, Jr. requests pretrial release under a strict set of conditions as set forth above.

Respectfully submitted this January 16, 2026.

| | |
|---|---|
| /s/ MARIO B. WILLIAMS | /s/JOHN SHOREMAN |
| Mario B. Williams | John M. Shoreman |
| Ga. Bar No. 235254 | (DC Bar #407626) |
| **(**Pro Hac Vice) | |

**HUMANITY DIGNITY AND RIGHTS LLC**
Life Time Work - Buckhead - at Phipps Plaza
3480 Peachtree Road, NE, Second (2nd) Floor
Atlanta, Georgia 30326
Tel.: 470-257-2485
Email: mwilliams@hdrattorneys.com, jms@mcfaddenshoreman.com
***Counsel for Brian Cole Jr***

*/s/ J. ALEX LITTLE*
J. Alex Little
(*pro hac vice*)
Zachary C. Lawson
(*pro hac vice*)
John R. Glover
(*pro hac vice*)

**LITSON PLLC**
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co
zack@litson.co
jr@litson.co
***Counsel for Brian Cole Jr.***

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served a copy of the DEFENDANT'S MOTION FOR REVOCATION OF MAGISTRATE JUDGE'S ORDER DENYING PRETRIAL RELEASE WITH STRICT CONDITIONS upon the all attorneys of record via the Court's CM/ECF electronic filing system.

Respectfully submitted on this January 16, 2026,

**/s/JOHN SHOREMAN**
John M. Shoreman
(DC Bar #407626)
