**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cr-00001 |
| | ) | |
| BRIAN COLE, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR REVOCATION OF MAGISTRATE JUDGE'S ORDER
DENYING PRETRIAL RELEASE WITH STRICT CONDITIONS**

Defendant Brian Cole Jr. respectfully submits this reply in support of his motion for revocation of the Magistrate Judge's order denying pretrial release with strict conditions (Dkt. 28). In support, Defendant would show as follows:

**INTRODUCTION**

Mr. Cole is a 30-year-old man with autism. He has no criminal history. He has lived in the same community his entire life, held steady employment since he was a teenager, and has the support of his family and neighbors.

The charged conduct occurred more than five years ago, when Mr. Cole was 25. Since then, there is no evidence that Mr. Cole has harmed anyone, threatened anyone, or done anything dangerous. The government cannot show otherwise, and its attempts to do so rest on speculation that is demonstrably false. It points to hardware-store purchases that ended more than three years ago, and to compulsive phone activity that began eighteen months after the charged conduct—timing

inconsistent with evidence destruction but consistent with Mr. Cole's documented OCD. The government has no evidence of recent threats, recent weapons acquisition, or recent extremist activity. It has no evidence that Mr. Cole poses a present danger to anyone.

Unable to identify an actual, present threat, the government resorts to insinuation. It closes its response by suggesting that Mr. Cole's sister and grandmother may have been involved in the charged conduct. (Dkt. 50 at 38-39). Its proof? Text messages showing that Mr. Cole's sister—a club promoter who frequently works in Washington, D.C.—told her mother she was going to the city, and that her grandmother had warned it might be crowded. The government also notes that Mr. Cole texted his mother and sister in the days before January 5, 2021, but says nothing about the contents of those messages—as if it is nefarious for a young man with autism who lives and works with his family to communicate with them. That is not evidence of involvement. Nor is it evidence of dangerousness. It is family checking in with each other. The government's decision to publicly imply, with no factual basis, that these private citizens are connected to domestic terrorism is reckless and reveals how little actual evidence it has that Mr. Cole poses a continuing danger.

Mr. Cole is willing to submit to home detention, GPS monitoring, a third-party custodian, weekly reporting, unannounced inspections by Pretrial Services, a no-weapons order, and compliance with any mental health treatment Pretrial Services recommends. His grandmother, the proposed custodian, lives with her husband—Mr. Cole's step-grandfather—who is a retired law enforcement officer with the General

Services Administration. His family understands the seriousness of court-ordered conditions and is committed to ensuring Mr. Cole's compliance. In fact, his family have built an extensive business centered around ensuring that defendants show up for court and stay out of trouble. They will ensure the same of Mr. Cole.

## ARGUMENT

### I. Mr. Cole's History and Characteristics Favor Release.

The Bail Reform Act requires the Court to consider the defendant's character, family ties, employment, length of residence in the community, and criminal history. 18 U.S.C. § 3142(g)(3)(A). Every one of these factors favors Mr. Cole.

Mr. Cole has no criminal history—none. He has no history of violence, no substance abuse issues, and no record of failing to appear or comply with court orders. He has lived in Woodbridge, Virginia his entire life. He graduated high school and has worked continuously since age 14, currently in his family's bail bonding business—work that requires him to help others comply with court-imposed obligations. His neighbors and colleagues have provided character references vouching for him.

Mr. Cole has been diagnosed with Autism Spectrum Disorder, Level 1, and obsessive-compulsive disorder. Exhibit 1. Individuals with autism often thrive with structure and routine—precisely what the proposed conditions of release would provide. Mr. Cole has demonstrated an ability to maintain steady employment and comply with expectations when given a clear framework. Home detention with GPS

monitoring, regular reporting, and oversight by a third-party custodian would provide that structure.

The government's response does nothing to dispute Mr. Cole's personal characteristics, which the Magistrate Judge agreed favored release.

## II. There Is No Evidence Mr. Cole Has Been Dangerous Since the Charged Conduct.

The Bail Reform Act requires a "forward-looking assessment." *United States v. Munchel*, 991 F.3d 1273, 1285 (D.C. Cir. 2021) (Katsas, J., concurring). The question is not what Mr. Cole allegedly did more than five years ago, but whether he poses a danger *now* that conditions cannot mitigate. The government has no evidence that he does.

Consider what the government *does not* claim. It does not claim that Mr. Cole has made any threats since January 2021. It does not claim he has engaged in any extremist activity. It does not claim he has posted anything violent or alarming online; indeed, the government concedes it has found no such posts. It does not claim he has acquired any weapons. It does not claim he has purchased any explosive materials, or the ingredients to make them, at any point after January 5, 2021. And it does not claim he has purchased anything that can even be described as a "component" for any explosive in ***years***.

The government does point out, however, that Mr. Cole purchased a pressure cooker. (Dkt. 50 at 15.) The implication is obvious. But this item was purchased years ago. Mr. Cole explained during his interrogation that he bought it for the house for cooking, and there is no evidence it has ever been used for anything else. Millions of

Americans own pressure cookers. The government's inclusion of this item in a list of purported "bombmaking components" is the kind of innuendo that pervades its argument—suggestive without context but unsupported by any actual evidence.

The government also points to Mr. Cole's statement that he experimented with making potassium chlorate, suggesting this shows continued interest in explosives. (Dkt. 50 at 36-37.) But the government has the timeline wrong. This experiment occurred *years before* the charged conduct, not after. During his interview, Mr. Cole described the experiment in detail: he used beakers and got bleach on the carpet. The government's own discovery confirms that the beakers the government describes were purchased in 2018. And Mr. Cole's mother's declaration confirms the bleach stain on the carpet and that it happened when Mr. Cole's two siblings, Brandon and Bridgette, were still living in the house. *See* Exhibit 2. This means that it must have occurred in 2018 at the latest. Id. Her declaration also explains her understanding that Mr. Cole's experiment was to make "rocket fuel," a common experiment among children and hobbyists. This happened more than seven years ago. The experiment failed, leaving a bleach stain as the only lasting result, and Mr. Cole never repeated it. This is not evidence of ongoing dangerousness.

**III. The Evidence Undercuts the Government's Concealment Theory.**

Lacking any evidence that Mr. Cole presents an ongoing danger to anyone, particularly under the restrictive conditions he proposes, the government paints him as a criminal mastermind who engaged in a sustained effort to avoid apprehension. But the government's own evidence tells a different story.

Start with the phone activity. The government notes that Mr. Cole's phone was wiped nearly a thousand times from July 2022 to December 2025. (Dkt. 50 at 15-16). But this activity did not begin until July 2022—eighteen months after the charged conduct. *Id.* at 16 n.4.[1] The government's own discovery shows that Mr. Cole purchased CCleaner, an application that advertises its ability to make phones and computers operate faster by cleaning out junk files.[2] According to Mr. Cole's interview, he understood it to be antivirus software. According to the government, beginning in July 2022, he started compulsively using the cleaning function—a pattern consistent with his documented OCD. (Dkt. 50 at 16 n.4.)

The timing is critical. July 2022 was a year and a half after the charged conduct. And within a few days of the offense, pictures of the suspect were released to the public and covered on national news. If Mr. Cole were trying to destroy evidence of the January 5, 2021, offense, one would expect the wiping to begin immediately afterward, not eighteen months later. The timing is inconsistent with concealment but entirely consistent with the compulsive behavior associated with OCD. Exhibit 1.

The physical evidence is even more telling. When law enforcement searched Mr. Cole's home and vehicle in December 2025, they found pipes, end caps, and other "components"—with receipts dating back to 2020. (Dkt. 50 at 16.) The government cites this as evidence of dangerousness. But consider what it actually shows: Mr. Cole

---

[1]    The government notes that the first "wipe events" took place in December 2020, but the next wipe, and the pattern of wiping at least once a week, did not begin until July 15, 2022. (Dkt. 50 at 16 n.4.)

[2]    *CCleaner*, https://www.ccleaner.com

left these items sitting in his closet and his car, with the original receipts, for four to five years.

The government cannot have it both ways. Either Mr. Cole is a meticulous evidence-destroyer who carefully concealed his involvement for years, or he is someone who left Home Depot receipts from November 2020 in his vehicle until December 2025. The evidence overwhelmingly supports the latter. A defendant trying to cover his tracks does not keep receipts for years. He does not leave incriminating materials in arm's reach for half a decade. The presence of these items undercuts the concealment narrative—and it undercuts the claim that Mr. Cole poses an ongoing danger. If he intended to use these materials, he had years to do so. He did not.

### IV. The Government's Insinuations About Mr. Cole's Family Are Baseless.

Unable to establish that Mr. Cole poses a present danger, the government pivots to his family. It notes that on January 5, 2021, Mr. Cole's sister texted their mother: "I'm going to dc .. Grams said it may be crazy out there so I was just letting you know." (Dkt. 50 at 38.) The government also pointed out the fact that Mr. Cole texted his mother and sister in the days before January 5, 2021—but says nothing about the contents of those messages. And it observes that Mr. Cole's sister has been proposed as someone who could supervise his employment, and that his grandmother has been proposed as his third-party custodian. The implication is clear. The government is suggesting these family members may have been involved in the charged conduct, without offering any legitimate evidence for this accusation.

This suggestion is reckless. As her declaration confirms, Mr. Cole's sister is a club promoter who frequently travels to Washington, D.C. for work. *See* Exhibit 3. Her text to her mother was exactly what it appears to be: a daughter letting her mother know she would be in a city where protests were expected, relaying that her grandmother was worried about crowds. And the notion that it is suspicious for a young man with autism who lives and works with his family to text his mother and sister is absurd. That is not evidence of involvement in a crime or dangerousness. It is evidence of a family communicating with each other like normal families do.

But that did not stop the government from publicly suggesting, in a filed court document, that Mr. Cole's sister and elderly grandmother may be connected to domestic terrorism. It has done so without any actual evidence. These are private citizens who have not been charged with anything and against whom there is no evidence of wrongdoing. And if the government did not mean to suggest their involvement, it should say so and make its point about the text messages clear. Otherwise, this sort of defamation does not make their case for detention.

### V. Strict Conditions Can Reasonably Assure Community Safety.

The D.C. Circuit has made clear that district courts can consider whether the risk that a defendant poses can be mitigated by supervisory conditions. *Munchel*, 991 F.3d at 1280-81. The defense has proposed comprehensive conditions: home detention at his grandmother's residence, GPS monitoring via ankle bracelet, his grandmother as third-party custodian, weekly reporting to Pretrial Services, unannounced inspections, a no-weapons order, and compliance with any mental health treatment

Pretrial Services recommends. (Dkt. 48 at 15-16.) Mr. Cole's step-grandfather, a retired law enforcement officer with the General Services Administration, also lives in the home.

The government does not explain why these conditions are insufficient. It asserts that the Court should have "concrete concerns" about compliance, but it identifies no basis for such concerns in Mr. Cole's actual history. (Dkt. 50 at 38.) Mr. Cole has no record of violating court orders. He has no record of absconding. The proposed conditions would place him under constant electronic surveillance, in a home with a retired law enforcement officer, and subject him to random compliance checks. Any violation would result in immediate revocation.

The government argues that Mr. Cole's alleged conduct shows he can act quickly, assembling devices "over a matter of hours." *Id*. at 36. But this ignores what else he would need. Mr. Cole cannot manufacture explosives under home detention with GPS monitoring and unannounced inspections. For starters, he cannot acquire the materials without detection. And he has shown no inclination to do so: there is no evidence he has purchased explosive materials or their ingredients at any point in the past five years.

Mr. Cole's alleged conduct occurred more than five years ago. He has done nothing dangerous since. He has no criminal history, strong community ties, and family—including a retired law enforcement officer—willing to ensure his compliance. He is prepared to accept the most restrictive conditions of release available. Under these circumstances, continued detention is not the "carefully

limited exception" the Constitution requires—it is an unjustified deprivation of liberty. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

## CONCLUSION

For all the reasons above, the Court should grant Mr. Cole's motion and order his release on strict conditions.

Respectfully submitted this January 27, 2026.

**/s/ J. ALEX LITTLE**
J. Alex Little (Pro Hac Vice)
Zachary C. Lawson (Pro Hac Vice)
John R. Glover (Pro Hac Vice)

**LITSON PLLC**
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co

**/s/ MARIO B. WILLIAMS**
Mario B. Williams
Ga. Bar No. 235254 (Pro Hac Vice)

**/s/JOHN SHOREMAN**
John M. Shoreman
DC Bar #407626

**HUMANITY DIGNITY AND RIGHTS LLC**
Life Time Work - Buckhead - at Phipps Plaza
3480 Peachtree Road, NE, Second (2nd) Floor
Atlanta, Georgia 30326
Tel: 470-257-2485
mwilliams@hdrattorneys.com
jms@mcfaddenshoreman.com

***Counsel for Brian Cole Jr.***

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served a copy of the foregoing pleading upon all attorneys of record via the Court's electronic filing system.

Respectfully submitted on this January 27, 2026,

**/s/ALEX LITTLE**
Alex Little (Pro Hac Vice)