**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:26-cr-00001-AHA** |
| | ) | |
| | ) | |
| **BRIAN J. COLE, JR.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION**
**TO DISMISS FOR LACK OF JURISDICTION**

COMES NOW, Defendant, Brian J. Cole, Jr., and in Reply to the Government's

Opposition to Defendant's Motion to Dismiss for Lack of Jurisdiction (ECF 62), states as

follows. [1]

**INTRODUCTION**

The Government's opposition rests on three grounds, each of which fails under any

proper and reasonable interpretation of the presidential proclamation of January 20, 2025.

Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025) (the "Proclamation"). First, the

Government argues that Cole is excluded under the Proclamation because there was no

indictment pending against him on January 20, 2025. A strict time limit does not exist in the text

of the Proclamation and should not be inferred. The Proclamation directs the Attorney General to

pursue dismissal of all pending indictments for covered conduct. This is an on-going directive. It

---

[1] A supersedeas indictment filed on April 14, 2026 (ECF 64) added violations of 18 U.S.C. § 2332 a(a)(2) (Count 3) and D.C. Code §§ 22-3152, 22-3153(l) and 22-4502 (2001 ed.) (Count 4) to the charges against Cole. Since the factual allegations underlying all Counts are identical, Counts 3 and 4 are equally subject to dismissal.

applies when post-Proclamation indictments are sought. The Proclamation is not simply a snapshot of court dockets on January 20, 2025.

Second, the Government contends that Defendant's January 5 conduct is not "related to" Jan. 6 events. The Government ignores the timing and proximity of the charged conduct and the Jan. 6 events, and the operational connection created when the devices were discovered shortly before Certification proceedings began in the Capitol. Third, the Government seeks deference to the Department of Justice's interpretation of the Proclamation. The pardon power is vested exclusively in the President, and the court's duty is to interpret and enforce the proclamation as written, not to defer to DOJ's administrative gloss.

## ARGUMENT

**I.      The Proclamation's Reference to "Pending Indictments" Is Not Limited to Indictments Existing on January 20, 2025**

The Government's categorical exclusion argument depends on reading "pending indictments" as meaning only those indictments pending on January 20, 2025. That interpretation is not supported by the text of the Proclamation. The Proclamation does not state "pending as of the date of this proclamation" or include other similarly limiting language. The Proclamation's directive to the Attorney General is naturally read as an ongoing instruction, not a frozen snapshot. When the Attorney General is presented with an indictment for covered conduct, that indictment becomes a "pending indictment" subject to dismissal.

The Proclamation directs the Attorney General to pursue dismissal of all pending indictments for covered conduct. In legal usage, "pending" describes a procedural status, *i.e.*, a matter awaiting resolution. Obviously, an indictment is pending from the moment it is filed until it is resolved by conviction, acquittal, or dismissal. Absent an explicit limitation, the ordinary meaning of "pending" encompasses all unresolved indictments, past, present and future.

The pardon power is granted by the Constitution and is expansive in scope. *Schick v. Reed*, 419 U.S. 256, 266-67 (1974). This constitutional authority is not contingent on prosecutorial timing. A pardon should be construed to achieve its full remedial purpose. *Ex parte Garland*, 71 U.S. 333, 380-81 (1866). Those individuals with pending indictments as of January 25, 2025, do not comprise a defined category of pardon recipients, as argued by the Government. There are two defined categories in the Proclamation: (1) those receiving commutations; and (2) those receiving pardons for conduct related to the events of Jan. 6. Cole falls four-square in the latter category. There is no excluded category of persons defined in the Proclamation whose charged conduct was related to Jan. 6 events, but who were unindicted as of January 25, 2025. The Government simply saw fit to defy the Proclamation by charging Cole, after the date of the Proclamation, with alleged conduct that was covered by the blanket pardon.

**II. Defendant's Conduct Is Sufficiently "Related To" January 6 Events**

**A. The Phrase "Related To" Has a Broad Ordinary Meaning**

The facts, context and circumstances that tie the charged conduct to the Jan. 6 events are detailed in Cole's Motion to Dismiss. (Motion, at 1-10). The Government's rebuttal is unpersuasive. The phrase "related to" has a broad ordinary meaning: to stand in some relation, to have bearing or concern, to pertain or refer, to bring into association or connection with. Courts have recognized that the phrase "relating to" is characteristically employed to reach any subject that has a connection with or reference to the enumerated topics. *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717-18 (2018); see also *United States v. Kraemer*, 933 F.3d 675, 679 (7th Cir. 2019) (Supreme Court has long instructed courts to interpret "relating to" expansively, reading any subject with a connection to . . . enumerated topics).

**B. Timing and Proximity Establish a Connection**

It is alleged that the devices were planted near Capitol Hill on January 5, 2021, hours before the proceedings on January 6 to certify the results of the Presidential election. The devices were discovered on January 6 at approximately 1:00 p.m., during the early stages of the Certification process. The timing and proximity of the charged conduct to the Capitol and Certification process, standing alone, establishes that the alleged offenses were "related to" the Jan. 6 events. (Gov't's. Mem. in Supp. of Pretrial Detention, ECF 17).

The Government disagrees and argues that the Proclamation's reference to events "on January 6" precludes application to January 5 conduct. But the Proclamation refers to offenses related to events occurring on January 6, not offenses exclusively occurring on January 6. Previously, the Government took a contrary position. It concedes that the conviction of Kenneth Harrelson for pre-January 6 conduct was commuted. (Govt's. Opp., at 12, ftn. 3). The Government tries to distinguish Cole from Harrelson. It argues Harrelson received a commutation rather than a pardon, and that the charges against Harrelson for overt acts in furtherance of a conspiracy, which pre-dated January 6, were covered under the Proclamation because Harrelson went on to commit offences in-person on January 6. *Id*. What the Government does not mention, and cannot distinguish, is the case of Enrique Tarrio, who received a full pardon. Tarrio was convicted and sentenced to 22 years for his role in planning and organizing the actions of others at the Jan. 6 events. Tarrio's charged conduct occurred well before January 6. And, as distinct from Harrelson, but like Cole, Tarrio was *not* present in Washington, D.C. on January 6. See *United States v. Tarrio*, Case No. 1:21-cr-00175-TKJ (D.C.D.C. 2025).

The Government's adoption of whatever interpretation of the Proclamation best suits its immediate purpose, no matter how contradictory, was discussed by the court in *United States v.*

*Wilson*, 2025 WL 1009047, at *4-8 (D. D.C. March 13, 2025), affirmed, *United States v. Wilson*, 2025 WL 999985 (D.C. Cir. 2025).[2]

### C. *Wilson* Concerned an Attenuated Relationship Between Conduct and Jan. 6

*Wilson* held that firearm offenses committed in Kentucky were not covered by the Proclamation because they bore no relationship to the Jan. 6 events. *Id*., 2025 WL 1009047, at *15. The firearm charges "occurred on a different date – June 3, 2022, and in another place – the Western District of Kentucky." *Id*., at *10.  There was no temporal, geographic, or operational connection to the Jan. 6 events. Any connection was purely investigative: the firearm offenses would not have been discovered but for the January 6 investigation. *Id*., at *10, 11. As stated by the District Court:

> To be sure, the "related to" language in the pardon leaves open the possibility that certain criminal actions may be close enough in time and place to the events of January 6 so as to fall within the pardon. But the phrase cannot extend so far as to cover any criminal offense – no matter how physically or temporally remote to January 6 Capitol events – solely because some evidence supporting the offense was recovered during a January 6 investigation.

Id., *15.

The conduct charged against Cole occurred near the Capitol, just hours before the Certification proceedings. The temporal proximity, geographic proximity, and operational connection (discovery and response to the devices may diverted resources from the Capitol on January 6), establish a nexus sufficient to place the charged conduct well within the pardon. *Id*.;

---

[2] The Government points to DOJ's January 20, 2025, memorandum as evidence of a consistent interpretation. An agency's implementation memorandum is a tool for executing the President's directive, not for rewriting it. If the memorandum purports to narrow the Proclamation's scope beyond what the text permits, the memorandum cannot bind the Court or limit the legal effect of the President's words.

*United States v. Wilson*, 2025 WL 999985, *3-4 (D.C. Cir. 2025) (offenses must be tethered to January 6). In this case, the "tethering" is direct and substantial.

### D. Cole's Post-Arrest Statements

According to the Government's representations to this Court, Cole was motivated by grievances over the 2020 election, and his alleged actions were timed "on the eve" of January 6. (Gov't's. Mem. in Supp. of Pretrial Detention, ECF 17). The Proclamation's text focuses on the relationship between the offense and the events and not on an otherwise covered offender's subjective intent. Objective factors (temporal proximity, geographic location, and operational connection), establish the nexus. The Government's selection of statements given by Cole during his confused, contradictory and rambling answers to questions in a post-arrest interview do not change the alleged facts underlying the charged conduct. The charged conduct was pardoned under the Proclamation because of its nexus to the Jan. 6 events. Cole's post-arrest interview is immaterial to the pardon analysis.

## III. The Court Should Not Defer to DOJ's Interpretation

This Court need not defer to the Government's reinterpretation of the Proclamation since its text is "clear and unambiguous." *Wilson*, at *16, citing *Christiansen v. Harris City*, 529 U.S. 576, 588 (2000). But, as observed by the *Wilson* court, "even if the language of the pardon were ambiguous," the Court should not accord deference to the Government's most recent interpretation "because it is unreasonable and does not reflect its fair and considered judgment." Id., at *16, citing *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 153 (2012).

Courts routinely exercise their authority to interpret and apply Presidential pardons. *Wilson*, at *9, citing, *Carlisle v. United States*, 83 U.S. 147, 153-56 (1872); *Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020). When exercising its authority, a court's duty is to

determine the pardon's effect without expanding or reducing its scope. *Wilson*, at \*9. In this case, the Government's strained and inconsistent interpretation of the Proclamation is not entitled to deference.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant his Motion to Dismiss for Lack of Jurisdiction and dismiss the charges with prejudice pursuant to the January 20, 2025, Presidential Proclamation.

Dated: April 24, 2026                                        Respectfully submitted,


/s/ Mario B. Williams                            /s/ John M. Shoreman
Mario B. Williams                                John M. Shoreman



Humanity Dignity and Rights LLC
McFadden & Shoreman
3480 Peachtree Road, NE, Second Floor
Atlanta, GA 30326
(470) 257-2485
mwilliams@hdrattorneys.com
jms@mcfaddenshoreman.com

*Counsel for Brian Cole, Jr.*