IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:26-cr-00001 |
| v. | ) | |
| | ) | **UNDER SEAL** |
| BRIAN COLE, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR EARLY RETURN OF SUBPOENAS AND MOTION TO UNSEAL, AND RESPONSE TO MOTION FOR ORDER TO SHOW CAUSE**

i

This consolidated brief addresses three issues. First, whether the Court should authorize the defendant's requested subpoenas. Second, whether the defendant's motion for early return of those subpoenas should be unsealed. Third, whether defense counsel should be held in contempt for filing that motion on the public docket.

1.

The defendant seeks authorization for three subpoenas directed at individuals connected to the FBI's investigation of Shauni Kerkhoff as a person of interest in the crimes charged here. The subpoenas target specific categories of documents that are directly relevant to Mr. Cole's potential alternative-perpetrator defense. Most of those documents are not in the government's possession and cannot be obtained through Rule 16. The government opposes the subpoenas anyway on the theory that the defense has not yet shown a sufficient nexus between Ms. Kerkhoff and the charged crimes. But that is a standard for admissibility at trial, not for pretrial subpoenas. The *Nixon* test asks whether the materials sought are evidentiary and relevant. The government's own investigative record, produced in discovery, shows that they are.

2.

The government also asks this Court to keep the defense's motion under seal in its entirety, or in the alternative, to redact six categories of information. Gov. Resp. at 2, 12. Those categories are Ms. Kerkhoff's name, her current employer, her former employer, her significant other's name and employer, her home address, and her dog's name. The home address was not in the motion itself but appeared on the attached subpoena forms and should have been redacted. That was an inadvertent error by undersigned counsel, who takes responsibility for it. Defense counsel's paralegal began calling the Clerk's office to remove the document from the public docket within

1

two minutes of learning of the issue, before the government contacted the Clerk. The defense has never opposed redaction of the address.

The remaining five categories, which appeared in the motion itself, are a different matter. Contrary to the government's claim that "[t]he only previous public access to [Ms. Kerkhoff's] identifying information has come from a retracted online publication, internet speculation, and defense counsels' public filing," when defense counsel filed the motion at issue, there had already been countless reports—including from major publications—discussing Ms. Kerkhoff's alleged involvement in this case. All of the information in the motion that the government says is "identifying information" was already publicly available. For example, Ms. Kerkhoff's name was voluntarily disclosed to the Washington Post by her own attorney. Her former employment with the Capitol Police is part of the public trial record in this District, where she testified under her own name in multiple January 6 prosecutions. Her current employment at the CIA was reported by Snopes and NBC News. A source familiar with her employment confirmed to NBC News that she worked in campus security for the CIA. The name of her significant other, Daniel Dickert, was publicly discussed on social media. And the dog's role in Ms. Kerkhoff's purported alibi was a matter of public reporting. The dog had its own publicly accessible Instagram account, and its name was publicly available through that account and other online sources.

The Protective Order expressly excludes from its coverage "[m]aterials that the defense obtains by means other than discovery." Dkt. 12 at ¶ 9(c). Each of these five categories was publicly available through sources independent of discovery, and defense counsel and the defense team were aware of these facts independent of the discovery. Moreover, the government has not explained how any of it constitutes personal identity information under Rule 49.1 or falls within any of the enumerated categories of "Sensitive" materials in Paragraph 4 of the Order.

3.

The government's motion for an order to show cause rests on the same premise as its opposition to unsealing. But counsel cannot violate a protective order by including in a court filing information that was already known to the public and to counsel through independent sources. And the inclusion of the home addresses in the attached subpoenas was an inadvertent error that counsel took immediate action to correct. Under these circumstances, contempt is not appropriate or necessary to ensure future compliance with the Protective Order.

For the reasons set forth below, the Court should authorize the subpoenas, unseal the motion, and decline to hold defense counsel in contempt.

## ARGUMENT

### I.    The Court Should Authorize the Requested Subpoenas.

Federal Rule of Criminal Procedure 17(c) permits a party to subpoena documents and objects for pretrial production upon a showing that the materials are "(1) … evidentiary and relevant; (2) … not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).[1]

---

[1] Mr. Cole does not concede that the *Nixon* factors apply to a defendant seeking a Rule 17(c) subpoena to a third party. *See, e.g., United States v. Weigand*, 520 F. Supp. 3d 609, 613 (S.D.N.Y. 2021) (declining to use *Nixon* standard); *United States v. Tucker*, 249 F.R.D. 58, 65 (S.D.N.Y. 2008) (articulating lesser standard than *Nixon*); *United States v. Bergstein*, 788 F. App'x. 742, 746 (2d Cir. 2019) (leaving open the question of whether *Nixon* or a lesser standard applies). But if the Court applies *Nixon* and finds the factors are not met, then Mr. Cole reserves the right to convert the requests into a trial subpoena, for which the *Nixon* factors would not apply. This would likely require a continuance on the first day of trial so that Mr. Cole can use the materials, and it

***The materials are evidentiary and relevant.*** The subpoenas seek specific categories of documents from three individuals connected to the FBI's investigation of Shauni Kerkhoff as a person of interest in the pipe-bomb case. Mr. Cole maintains his innocence and is entitled to present at trial the defense that Ms. Kerkhoff, not Mr. Cole, placed the pipe bombs. The FBI investigated Ms. Kerkhoff for months, beginning before Mr. Cole was even charged. Based on the discovery, more than 100 FBI agents were involved in the investigation of Ms. Kerkhoff. During that investigation, the FBI interviewed Ms. Kerkhoff, her significant other, and her dog walker. It conducted searches of her home and vehicle. It administered a polygraph examination in which she was asked whether she placed the pipe bombs. The FBI determined she failed. It sent surveillance footage to an expert for gait analysis. And it surveilled her covertly for weeks. The FBI did not close its investigation of Ms. Kerkhoff until January 7, 2026, more than a month after Mr. Cole's arrest.

Yet the government says Mr. Cole's interest in obtaining records about Ms. Kerkhoff is based on "rank speculation" and "internet conspiracy theories." Gov. Resp. at 11. And, in the same motion, the government concedes that materials about Ms. Kerkhoff, including the work schedule and dog video, are pending production because they are "potentially material to defense preparation." Gov. Resp. at 9-10. These materials, of course, are material to the defense and relevant. This is clear from the government's own records. The government's own investigative record shows that the FBI had sufficient reason to investigate Ms. Kerkhoff as a suspect, that she failed the FBI's own polygraph, and that the investigation lasted at least two months. Those are not the hallmarks of an inquiry the FBI considered frivolous. The FBI generally does not

---

could lead to subpoena recipients moving the quash on the first day of trial. Such delay can be avoided through the early return of the subpoenas, which is what Mr. Cole has sought.

administer polygraph examinations, conduct weeks of covert physical surveillance, and issue grand jury subpoenas in response to "rank speculation." Under the Attorney General's Guidelines for Domestic FBI Operations, these investigative techniques are available only in predicated investigations, which require at minimum an "allegation or information indicative of possible criminal" activity. The Attorney General's Guidelines for Domestic FBI Operations, Part II.B (2008). The FBI's own conduct demonstrates that it considered the Kerkhoff lead to warrant serious investigation. Based on what is now known, the defendant is entitled to subpoena the requested materials to further build an alternative-perpetrator defense.

The government argues that the alternative-perpetrator theory fails the "clear connection" standard. Gov. Resp. at 10 (quoting *United States v. Moore*, 590 F. Supp. 3d 277, 283 (D.D.C. 2022)). But *Moore* addresses the admissibility of alternative-perpetrator evidence at *trial* and requires the defendant to proffer evidence sufficient to establish a "nexus" between the third party and the crime. But this motion is not about whether it has proffered sufficient evidence to allow a third-party perpetrator defense. By applying *Moore* at the subpoena stage, the government is effectively asking the Court to require the defendant to establish the nexus before he can obtain the evidence that he needs to help establish it. *Nixon* does not demand that. It asks whether the materials sought are "evidentiary and relevant." They are.

***The materials are not otherwise procurable.*** The government contends that "much of what the subpoenas seek has been or will be provided through Rule 16 discovery." Gov. Resp. at 9. The government identifies only two categories it claims are duplicative. The first is "identifying information for witness cellphones, communications between witnesses, and communications with the government," which the government states have "already been produced." The second is "work

schedule records and the January 5, 2021 video of Person 1's dog," which the government states are "pending production." Gov. Resp. at 9–10. Neither category supports denying the subpoenas.

As to the first, the fact that the government has produced its own copies of communications does not render the subpoenas duplicative. The subpoenas seek the same materials directly from the custodians, Ms. Kerkhoff and Mr. Dickert, which is necessary to establish chain of custody and authentication for trial. Government-produced copies cannot serve that purpose. The defense is entitled to obtain documents from their source. *See Bowman Dairy Co. v. United States,* 341 U.S. 214, 221 (1951) ("In short, any document or other materials, admissible as evidence, obtained by the Government by solicitation or voluntarily from third persons is subject to [Rule 17(c)] subpoena.").

In addition, most of the subpoenaed materials are not in the government's possession at all. Ms. Kerkhoff's CIA employment records in her own possession, her offer letter, her Standard Form 86, her home camera records from January 5-6, 2021, Dr. Nirenberg's records, and documents and communications about services used to wipe Ms. Kerkhoff's publicly available information are not in the government's custody, have not been produced, and cannot be obtained through Rule 16. Those are documents held by third parties. That is precisely what Rule 17(c) exists to reach.

The subpoena contains requests for documents that the government has not stated it produced or will be producing. This includes, from Ms. Kerkhoff: (i) any photo, video, or audio recording created on her phone on January 5, 2021, (ii) her employment offer letter, (iii) employment history records and SF-86 form from the CIA, (iv) the videos or photos from any camera at her residence on January 5-6, 2021, (v) documents and communications with family members with a ███ area code, and (vi) documents and communications she used to remove

6

public-facing identifying information about herself. Mr. Cole requested similar documents from Mr. Dickert that the government has not stated it produced or will be producing. It is also unclear whether the government states it has produced or will be producing the specific communications Mr. Cole requested between Ms. Kerkhoff and Mr. Dickert: all communications between them on January 5-6, 2021 and November 1, 2025 to present regarding the pipe-bomb investigation and their purported alibi.  Lastly, the government's response says nothing about the production status regarding the subpoena requests to Dr. Nirenberg.

*The application is made in good faith.* The government accuses the defense of pursuing these subpoenas as "a gambit . . . designed to fuel baseless conspiracy theories." Gov. Resp. at 1. This is false. The defense is exercising its constitutional right to investigate and present a defense. The FBI's own records, produced by the government in discovery, demonstrate that a credible basis exists to investigate Ms. Kerkhoff's connection to the pipe bombs. The subpoenas are narrowly tailored to specific categories of documents from specific individuals. That is the opposite of a fishing expedition.

*Production to defense counsel is proper in this District.* The government argues that Rule 17(c)(1) requires production to the court rather than to defense counsel, citing three out-of-district decisions. Gov. Resp. at 11-12 n.5. The text of Rule 17(c)(1) says otherwise. It provides that "[t]he court *may* direct the witness to produce the designated items in court." Fed. R. Crim. P. 17(c)(1) (emphasis added). The government ignores case law in *this* district. In *Khouj v. Darui*, 248 F.R.D. 729, 731 (D.D.C. 2008), the court rejected the argument that Rule 17(c) places an "absolute requirement on parties to direct subpoenaed entities to return items to the Court," holding that the rule's use of "may" is permissive. Courts across the country routinely allow subpoenas under Rule 17(c)(1) to be returned to defense counsel. *See United States v. Trump*, Case No. 1:23-cr-00257-

TSC (D.D.C), Dkt. 99-6, 99-7, 99-8, 99-9, 99-10 (where Acting Attorney General Blanche, in defending President Trump, listed his colleague's Tampa law office as the return address for the subpoena); *see also United States v. Weigand*, Case No. 1:20-cr-00188-JSR (S.D.N.Y.), Dkt. 137-2 (the law firm Dechert LLP listing its own New York office as the return address for the subpoena).

## II.    The Motion Should Be Unsealed.

The government identifies six pieces of information it contends should be redacted from the motion for early return of subpoenas, should the Court allow it to be unsealed. Gov. Resp. at 12. The Court should order the motion unsealed, with the recipient address redacted in the subpoena, which the defense has never opposed.

### A.    All of the Information the Government Seeks to Redact Besides the Address Was Already Public and Is Excluded from the Protective Order.

Paragraph 9(c) of the Protective Order provides that the Order "does not apply to . . . [m]aterials that the defense obtains by means other than discovery." Dkt. 12 at ¶ 9(c). The information the government seeks to suppress was publicly available well before the defense reviewed the relevant discovery materials. The Defense team was well aware of Ms. Kerkhoff's name, connection to the crime, place of work, and many other facts about her before it reviewed discovery. As a result, the information is excluded from the Protective Order by its own terms.

To try to square its complaints and request for sanctions with the order, the government offers a misleading account of the reporting about Ms. Kerkhoff prior to the motion at issue. The government's consolidated response frames the public reporting as limited to "a retracted online publication, internet speculation, and defense counsels' public filing." Gov. Resp. at 13-14. That is a gross mischaracterization. The reporting on Ms. Kerkhoff was extensive and sustained,

8

spanning major national news organizations over a period of months. The following facts were all in the public domain before the defense filed its motion.

*Ms. Kerkhoff's name.* Ms. Kerkhoff's own attorney, Steve Bunnell, voluntarily identified her by name in a public statement to the Washington Post, stating that she "categorically denies" the allegations against her. *See* Exhibit 1: News Sources Appendix, at ¶ 1. The Washington Post published her name. *Id.* The New York Times published her name. *Id.* at ¶ 2. CBS News reported on the FBI's investigation of her. *Id.* at ¶ 3. Snopes published a fact-check identifying her by name. *Id.* at ¶ 4. Other outlets did the same. Her name was not a secret. Her attorney chose to make it public.

*Her former employer (Capitol Police).* Ms. Kerkhoff testified in her own name as a Capitol Police officer in multiple January 6 criminal trials. *Id.* at ¶¶ 1, 2, 4, 5, 6, 7. Her Capitol Police employment is part of the public trial record in this District. The major outlets reporting on her identified her as a former Capitol Police officer. *Id.* at ¶¶ 1, 2, 4, 5, 6, 7, 8.

*Her current employer (CIA).* Ms. Kerkhoff's employment at the CIA was reported by Snopes and NBC News. *Id.* at ¶¶ 4, 8. A source with knowledge of her employment explained to NBC News that she worked in campus security for the CIA. *Id.* at ¶ 8.

*Her significant other (Daniel Dickert).* Mr. Dickert's name and his connection to Ms. Kerkhoff were widely circulated on social media following the initial Blaze article. *See, e.g., id.* at ¶ 9. His identity was publicly available information that the defense was aware of through sources independent of discovery.

*Her dog's name.* The dog's role in Ms. Kerkhoff's purported alibi was a matter of public reporting before the defense reviewed discovery. The dog had its own publicly accessible Instagram account, through which its name was publicly available, until the account was recently

9

deleted. The dog's name was also available through other online sources. *See, e.g., id.* at ¶ 10. The government's suggestion that a dog's name constitutes "Sensitive" information under the Protective Order underscores the overbreadth of its position.

*Her home address.* The defense concedes that the recipient addresses on the attached subpoenas should have been redacted before filing. That was an inadvertent error, which the defense identified and moved to correct within two minutes of the government's call. The declarations of counsel, incorporated herein, set forth the full circumstances of that error and the defense's immediate corrective action. *See* Exhibit 2: Declaration of J. Alex Little; Exhibit 3: Declaration of Zachary C. Lawson; Exhibit 4: Declaration of John R. Glover. Despite the government's statements to the contrary, the defense has never disputed that the addresses warranted redaction. Defense counsel agreed to remove the filing off the public docket on the initial phone call with the government, and its staff located the contact information and began calling the clerk's office to have it removed in under two minutes—before the government emailed the clerk. Exh. 2 at ¶ 5; Exh. 3 at ¶ 5; Exh. 4 at ¶ 5.

In sum, of the six categories the government identifies, five were already in the public domain through sources entirely independent of discovery and thus excluded from the Protective Order. The sixth, the recipient address, was an inadvertent error that the defense promptly corrected. No reasonable reading of the Protective Order supports the wholesale sealing of a substantive pretrial motion on this record.

### B. The Information Does Not Fall Within Any Enumerated Category of the Protective Order.

Even setting aside Paragraph 9(c)'s exclusion, the information the government seeks to redact does not fall within any of the ten enumerated categories of "Sensitive" materials in Paragraph 4. And beyond the address, it is not Rule 49.1 personal identity information. It is not

10

information regarding confidential sources or undercover agents. It is not medical or mental health information. It does not implicate law enforcement sources and methods, ongoing investigations, MPD personnel records, or tax information.

The government has never identified which subsection of Paragraph 4 the motion allegedly violates. Defense counsel asked that question on the April 1 telephone call. The government could not answer then. Its fifteen-page opposition does not answer it now. Instead, the government relies on the introductory language of Paragraph 4, which states that "Sensitive materials may *also* include the following." Gov. Resp. at 5. But the word "also" modifies the baseline category established in the first sentence of Paragraph 4, which covers "materials containing personal identity information as identified in Rule 49.1." The enumerated list expands on that baseline. It does not create an open-ended designation authority untethered to any category. If the government could designate any fact as "Sensitive" simply by placing it in a folder, the ten enumerated categories would be surplusage.

### C.      The *Hubbard* Factors Favor Unsealing.

The D.C. Circuit's six-factor balancing test under *United States v. Hubbard*, 650 F.2d 293, 315, 317 (D.C. Cir. 1980), favors unsealing. The public has a strong interest in access to criminal proceedings, particularly where a defendant's pretrial motions raise questions about the government's investigation. *United States v. Thomas*, 840 F.Supp.2d 1, 4 (D.D.C. 2011) (It is a "well-established principle that in cases where the government is a party . . . [t]he appropriateness of making court files accessible is enhanced" even further.) (quotation omitted). The information has already been extensively accessed through public reporting. Privacy interests are substantially diminished when the information is independently available through news coverage and the subject's own attorney's public statements. The risk of prejudice is speculative when the

11

information is already widely known. And the purpose of the filing was to seek judicial authorization for subpoenas in support of a criminal defense. That is a paradigmatic exercise of the right to defend.

The government asserts that the "purpose" of the filing was "to harass and intimidate an innocent person, fuel a conspiracy theory, and turn this criminal proceeding into a public spectacle." Gov. Resp. at 14–15. This empty contention comes on the heels of the government—without *any* evidence—suggesting in a filing that Mr. Cole's sister and grandmother may have been involved in the charged conduct. (Dkt. 50 at 38-39.) Regardless, a defendant's decision to investigate and present an alternative-perpetrator defense, based on the government's own investigative record, is not harassment. It is the exercise of a constitutional right.

## III.    DEFENSE COUNSEL SHOULD NOT BE HELD IN CONTEMPT.

The government asks this Court to hold defense counsel in contempt for violating the Protective Order. The Court should decline to do so because the information in the motion did not violate the Protective Order, and the sole inadvertent error in the subpoena attached to the motion was corrected immediately.

### A.    The Motion for Early Return of Subpoenas Did Not Violate the Protective Order.

As explained above, the information the government wants redacted, beyond the recipient addresses in the attached subpoenas, was publicly available, independently known to defense counsel through sources other than discovery, and does not fall within any enumerated category of "Sensitive" materials under Paragraph 4. As a result, Paragraph 6's pre-clearance requirement did not apply.

12

**B.      The Inclusion of the Recipient Addresses Was Inadvertent and Immediately Corrected.**

The defense concedes that the recipient addresses on the attached subpoenas should have been redacted. The attached declarations of J. Alex Little, Zachary C. Lawson, and John R. Glover, incorporated herein, set forth the full circumstances. Exhs. 2–4. Counsel reviewed the subpoenas before filing but mistakenly failed to instruct staff to redact the addresses. The failure to redact was an oversight for which the declarants accept responsibility.

The error was corrected immediately. At approximately 11:54 a.m. Central Time on April 1, 2026, government counsel called Mr. Lawson's phone. Exh. 2 at ¶ 2; Exh. 3 at ¶ 2; Exh. 4 at ¶ 2. Mr. Lawson was in a conference room with co-counsel J. Alex Little and John R. Glover, and all three attorneys participated in the call. *Id*. During the call, the parties agreed that the addresses should not have been filed. Exh. 2 at ¶ 3; Exh. 3 at ¶ 3; Exh. 4 at ¶ 3. All the declarants understood that this meant that the document had to be removed from the public docket, even though the parties disagreed about whether other information, such as Ms. Kerkhoff's name, should have been redacted. *Id*. The call ended at approximately 12:04 p.m. Central Time. Exh. 2 at ¶ 4; Exh. 3 at ¶ 4; Exh. 4 at ¶ 4. At 12:06 p.m., two minutes after the call ended, defense counsel's paralegal located the contact number for the Clerk's office and began placing calls to the Clerk's office to request removal of the document. Exh. 2 at ¶ 5; Exh. 3 at ¶ 5; Exh. 4 at ¶ 5. Despite the government's repeated allegations to the contrary, the defense's outreach to the Clerk preceded the government's email to the Clerk. *Id*.

The government's brief states that "[d]efense counsel refused" to remove the filing and that "[o]nly after government counsel contacted the Clerk by email did defense counsel agree to the removal." Gov. Resp. at 8. That is wrong. The declarations, signed under penalty of perjury by three attorneys of record, all establish that the defense took affirmative steps to contact the Clerk

within two minutes of the call's conclusion and before the government contacted the Clerk. The government's characterization of defense counsel as having "refused" to act is false.

### C.  Contempt Is Not Warranted on This Record.

Civil contempt requires a "clear and unambiguous" court order and "clear and convincing evidence" of a failure to comply. *Armstrong v. Exec. Off. of the President, Off. of Admin.*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (citations and internal quotations omitted). Courts frequently use their discretion to find no contempt violation where the violation was not "willful and deliberate" and there is "a substantial compliance with good faith." *See, e.g., S. Ry. Co. v. Bhd. of Locomotive Firemen & Enginemen*, 337 F.2d 127, 135 (D.C. Cir. 1964). Indeed, contempt is "reserved for those who fully understand the meaning of a court order and yet choose to ignore its mandate." *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (quoting *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)) (cleaned up).

The Protective Order does not clearly and unambiguously cover publicly available information that the defense obtained through independent sources. In fact, paragraph 9(c) plainly carves it out of the Order's requirements. Moreover, the ten enumerated categories in Paragraph 4 do not encompass the information at issue. And none of the information in the motion is even arguably sensitive under the Protective Order. A finding of contempt based on a genuinely disputed interpretation of the Protective Order would not be appropriate.

As for the addresses that appeared in the subpoenas attached to the motion, the error was inadvertent, and defense acted promptly and in good faith to correct it immediately. Defense counsel understands the importance of the Protective Order, particularly in a high-profile case like this one, and is committed to ensuring no other inadvertent errors are made during this case.

Sanctions are not necessary to ensure future compliance, which is the goal of sanctions. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

### CONCLUSION

For the foregoing reasons, the Court should authorize the requested subpoenas, unseal the motion for early return of subpoenas (with redaction limited to the recipient addresses, which the defense does not oppose), and decline to hold defense counsel in contempt.

Date:   April 17, 2026                Respectfully submitted,

*/s/ J. Alex Little*
J. Alex Little (BPR #029858)
Zachary C. Lawson (BPR #036092)
John Ross Glover (BPR LITSON PLLC
54 Music Sq. E. Ste. 300
Nashville, TN 37203
615-985-8205
alex@litson.co
zack@litson.co
jr@litson.co

**s/ MARIO B. WILLIAMS**
Mario B. Williams
Ga. Bar No. 235254 (Pro Hac Vice)

**/s/ JOHN SHOREMAN**
John M. Shoreman
DC Bar #407626

**HUMANITY DIGNITY AND RIGHTS LLC**
Life Time Work - Buckhead - at Phipps Plaza
3480 Peachtree Road, NE, Second (2nd) Floor
Atlanta, Georgia 30326
Tel: 470-257-2485
mwilliams@hdrattorneys.com
jms@mcfaddenshoreman.com

*Counsel for Brian Cole Jr.*

15

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served a copy of the foregoing pleading upon all attorneys of record via electronic mail.

Respectfully submitted on this April 17, 2026,

**/s/ J. ALEX LITTLE**
Alex Little

# NEWS SOURCES APPENDIX

1. Aaron Davis, *How the FBI's massive search for the D.C. pipe bomber stalled*, Washington Post (Nov. 14, 2025), https://www.washingtonpost.com/investigations/2025/11/14/fbi-jan-6-pipe-bomb-investigation/.

2. Alan Feuer, *Prosecutors Open Arguments Against Defendant in First Jan. 6 Trial*, New York Times (Mar. 2, 2022), https://www.nytimes.com/2022/03/02/us/politics/jan-6-trial-opening-arguments.html.

3. Jennifer Jacobs, *How an innocent woman's name was tied to the Jan. 6 pipe bombs*, CBS (Nov. 25, 2025), https://www.cbsnews.com/news/jan-6-pipe-bombs-innocent-womans-name/.

4. Megan Loe, *Report links ex-Capitol Police officer Shauni Rae Kerkhoff to 'Jan. 6 pipe bomber': What we know*, Snopes (Nov. 11, 2025), https://web.archive.org/web/20251112005009/https://www.snopes.com/news/2025/11/11/capitol-police-kerkhoff-j6-bomber/.

5. Emily Zantow, *Former Capitol police officer testifies about launching pepper balls at accused Jan. 6 rioter*, Courthouse News Service (Mar. 2, 2022), https://www.courthousenews.com/former-capitol-police-officer-testifies-about-launching-pepper-balls-at-accused-jan-6-rioter/.

6. Katelyn Polantz, *January 6 trial's witness testimony opens with searing Capitol Police audio and emotional testimony*, CNN (Mar. 2, 2022), https://www.cnn.com/2022/03/02/politics/reffitt-january-6-trial-capitol-police-testimony.

7. Tom Dreisbach, *Jan. 6 riot defendant was 'tip of this mob's spear,' prosecutor tells jury*, NPR (Mar. 2, 2022), https://www.npr.org/2022/03/02/1083927209/jan-6-riot-defendant-was-tip-of-this-mobs-spear-prosecutor-tells-jury.

8. Ryan Reilly, *FBI throws cold water on story suggesting Capitol Police officer was Jan. 6 pipe bomber*, NBC (Nov. 14, 2025), https://www.nbcnews.com/politics/justice-department/fbi-throws-cold-water-story-suggesting-capitol-police-officer-was-jan-rcna243434.

9. @MarcoPolo501c3, X (formerly Twitter) (Nov. 8, 2025, 11:22 PM EST), https://x.com/marcopolo501c3/status/1987375272455295267?s=10.

10. Gold Coast Greyhound Adoptions, Instagram (Dec. 5, 2020), https://www.instagram.com/p/CIb31Rshc8C/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA%3D%3D.

## DECLARATION OF J. ALEX LITTLE

I, J. Alex Little, counsel of record for Defendant Brian Cole Jr., am over eighteen (18) and, having personal knowledge of the below, declare as follows:

1.      On April 1, 2026, the defense filed its Motion for Early Return of Subpoenas and attached proposed subpoenas directed to Shauni Kerkhoff, Daniel Dickert, and Dr. Michael Nirenberg (the "Subpoena Motion").

2.      At approximately 11:54 a.m. Central Time on April 1, 2026, my co-counsel, Zachary C. Lawson, received a call on his cell phone from counsel for the government. At the time, Mr. Lawson was in a conference room meeting with me and Mr. Glover, as well as two other staff members. All three attorneys participated in the call. The call lasted approximately ten minutes and ended at approximately 12:04 p.m. Central Time.

3.      During the call, the government raised two concerns. First, it contended that the subpoenas as filed included recipient addresses that should have been redacted as Sensitive materials under the Protective Order. On that point, all parties were in immediate agreement: the addresses should have been redacted, so the document needed to be removed from the public docket. Second, the government contended that the Subpoena Motion itself — separate and apart from the addresses in the attached subpoenas — contained information that was Sensitive under the Protective Order and could not be filed publicly. The defense disagreed. During that portion of the call, defense counsel asked the government to identify which subsection

1

of Paragraph 4 of the Protective Order covered the information at issue. The government was unable or unwilling to do so.

4.      When the call concluded at approximately 12:04 p.m. Central Time, the mutual understanding of all participants was that the document needed to be removed from the public docket because of the inclusion of the recipient addresses in the attached subpoenas. There was no agreement that the Subpoena Motion itself was improperly filed.

5.      At approximately 12:06 p.m. Central Time — two minutes after the call ended and before the government sent any communication to the Clerk — defense counsel's paralegal began placing calls to the Clerk's office to request that the document be removed from the public docket. Defense counsel's paralegal made multiple calls, and the document was taken down upon reaching a clerk. The defense's affirmative steps to contact the Clerk preceded the government's outreach to the Clerk and were taken immediately upon the conclusion of the call, consistent with the parties' shared understanding that removal was necessary due to the addresses.

6.      The inclusion of the recipient addresses in the filed subpoenas was inadvertent. Defense counsel provided the information to be requested in the subpoenas to support staff, who prepared the subpoena forms. I, J. Alex Little, reviewed the subpoenas before filing and did not instruct staff to redact the recipient addresses, as I was focused on the content of the requests in the subpoena rather than the cover sheet. Redacting sensitive information before filing is the defense team's

2

standard procedure, and the failure to apply that procedure here was an oversight on my part. The responsibility for ensuring that filings comply with the Protective Order rests with counsel, and I accept that responsibility.

7.      I recognize that this case has received significant public and media attention, and that errors of this kind can have an impact beyond what they might in a less prominent matter. I take seriously the obligation to ensure compliance with the Protective Order and am committed to ensuring that no similar oversight occurs going forward.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 17, 2026.

*/s/ J. Alex Little*
J. Alex Little
LITSON PLLC
54 Music Square E. Ste. 300
Nashville, TN 37203
615-985-8205
alex@litson.co

3

## DECLARATION OF ZACHARY C. LAWSON

I, Zachary C. Lawson, counsel of record for Defendant Brian Cole Jr., am over eighteen (18) and, having personal knowledge of the below, declare as follows:

1.      On April 1, 2026, the defense filed its Motion for Early Return of Subpoenas and attached proposed subpoenas directed to Shauni Kerkhoff, Daniel Dickert, and Dr. Michael Nirenberg (the "Subpoena Motion").

2.      At approximately 11:54 a.m. Central Time on April 1, 2026, I received a call on my cell phone from counsel for the government. At the time, I was in a conference room meeting with Mr. Little and Mr. Glover, as well as two other staff members. All three attorneys participated in the call. The call lasted approximately ten minutes and ended at approximately 12:04 p.m. Central Time.

3.      During the call, the government raised two concerns. First, it contended that the subpoenas as filed included recipient addresses that should have been redacted as Sensitive materials under the Protective Order. On that point, all parties were in immediate agreement: the addresses should have been redacted, so the document needed to be removed from the public docket. Second, the government contended that the Subpoena Motion itself — separate and apart from the addresses in the attached subpoenas — contained information that was Sensitive under the Protective Order and could not be filed publicly. The defense disagreed. During that portion of the call, defense counsel asked the government to identify which subsection of Paragraph 4 of the Protective Order covered the information at issue. The government was unable or unwilling to do so.

4.    When the call concluded at approximately 12:04 p.m. Central Time, the mutual understanding of all participants was that the document needed to be removed from the public docket because of the inclusion of the recipient addresses in the attached subpoenas. There was no agreement that the Subpoena Motion itself was improperly filed.

5.    At approximately 12:06 p.m. Central Time — two minutes after the call ended and before the government sent any communication to the Clerk — defense counsel's paralegal began placing calls to the Clerk's office to request that the document be removed from the public docket. Defense counsel's paralegal made multiple calls, and the document was taken down upon reaching a clerk. The defense's affirmative steps to contact the Clerk preceded the government's outreach to the Clerk and were taken immediately upon the conclusion of the call, consistent with the parties' shared understanding that removal was necessary due to the addresses.

6.    The inclusion of the recipient addresses in the filed subpoenas was inadvertent. Defense counsel provided the information to be requested in the subpoenas to support staff, who prepared the subpoena forms. I, Zachary C. Lawson, reviewed the subpoenas before filing and did not instruct staff to redact the recipient addresses, as I was focused on the content of the requests in the subpoena rather than the cover sheet. Redacting sensitive information before filing is the defense team's standard procedure, and the failure to apply that procedure here was an oversight on

my part. The responsibility for ensuring that filings comply with the Protective Order rests with counsel, and I accept that responsibility.

7.      I recognize that this case has received significant public and media attention, and that errors of this kind can have an impact beyond what they might in a less prominent matter. I take seriously the obligation to ensure compliance with the Protective Order and am committed to ensuring that no similar oversight occurs going forward.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 17, 2026,

*/s/ Zachary Lawson*
Zachary Lawson
LITSON PLLC
54 Music Sq. E. Ste. 300
Nashville, TN 37203
615-985-8205
zack@litson.co

3

## DECLARATION OF JOHN R. GLOVER

I, John R. Glover, counsel of record for Defendant Brian Cole Jr., am over eighteen (18) and, having personal knowledge of the below, declare as follows:

1.      On April 1, 2026, the defense filed its Motion for Early Return of Subpoenas and attached proposed subpoenas directed to Shauni Kerkhoff, Daniel Dickert, and Dr. Michael Nirenberg (the "Subpoena Motion").

2.      At approximately 11:54 a.m. Central Time on April 1, 2026, my co-counsel, Zachary C. Lawson, received a call on his cell phone from counsel for the government. At that time, Mr. Lawson was in a conference room meeting with Mr. Little and myself, as well as two other staff members. All three attorneys participated in the call. The call lasted approximately ten minutes and ended at approximately 12:04 p.m. Central Time.

3.      During the call, the government raised two concerns. First, it contended that the subpoenas as filed included recipient addresses that should have been redacted as Sensitive materials under the Protective Order. On that point, all parties were in immediate agreement: the addresses should have been redacted, so the document needed to be removed from the public docket. Second, the government contended that the Subpoena Motion itself — separate and apart from the addresses in the attached subpoenas — contained information that was Sensitive under the Protective Order and could not be filed publicly. The defense disagreed. During that portion of the call, defense counsel asked the government to identify which subsection

of Paragraph 4 of the Protective Order covered the information at issue. The government was unable or unwilling to do so.

4.      When the call concluded at approximately 12:04 p.m. Central Time, the mutual understanding of all participants was that the document needed to be removed from the public docket because of the inclusion of the recipient addresses in the attached subpoenas. There was no agreement that the Subpoena Motion itself was improperly filed.

5.      At approximately 12:06 p.m. Central Time — two minutes after the call ended and before the government sent any communication to the Clerk — defense counsel's paralegal began placing calls to the Clerk's office to request that the document be removed from the public docket. Defense counsel's paralegal made multiple calls, and the document was taken down upon reaching a clerk. The defense's affirmative steps to contact the Clerk preceded the government's outreach to the Clerk and were taken immediately upon the conclusion of the call, consistent with the parties' shared understanding that removal was necessary due to the addresses.

6.      The inclusion of the recipient addresses in the filed subpoenas was inadvertent. Defense counsel provided the information to be requested in the subpoenas to support staff, who prepared the subpoena forms. I, John R. Glover, reviewed the subpoenas before filing and did not instruct staff to redact the recipient addresses, as I was focused on the content of the requests in the subpoena rather than the cover sheet. Redacting sensitive information before filing is the defense team's

standard procedure, and the failure to apply that procedure here was an oversight on my part. The responsibility for ensuring that filings comply with the Protective Order rests with counsel, and I accept that responsibility.

7.      I recognize that this case has received significant public and media attention, and that errors of this kind can have an impact beyond what they might in a less prominent matter. I take seriously the obligation to ensure compliance with the Protective Order and am committed to ensuring that no similar oversight occurs going forward.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 17, 2026.

*/s/ John Ross Glover*
John Ross Glover
LITSON PLLC
54 Music Sq. E. Ste. 300
Nashville, TN 37203
615-985-8205
JR@litson.co