**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:26-cr-00001-AHA** |
| | : | |
| **BRIAN J. COLE, JR.,** | : | |
| | : | **UNDER SEAL** |
| **Defendant.** | : | |

**GOVERNMENT'S CONSOLIDATED OPPOSITION TO**
**DEFENDANT'S SEALED MOTION FOR SUBPOENAS AND MOTION TO UNSEAL**

Defending a criminal case, even a high profile one, is not a license to violate judicial orders and harm innocent people. Defense counsel has moved this Court for authorization to issue three subpoenas that they claim are relevant to a purported third-party perpetrator defense that Shauni Kerkhoff (Person 1) —not Mr. Cole—is the person who placed pipe bombs outside the Republican and Democratic National Committees in Washington, D.C. on January 5, 2021. ECF 58 at 5. The Court should refuse to authorize these subpoenas. None of the materials sought are relevant or admissible. Much of what the subpoenas seek either has been or will be provided by the government in Rule 16 discovery, and some materials lie entirely outside the custody and control of the individuals from whom they are sought. These subpoenas are not a good faith effort to obtain relevant and admissible evidence not otherwise procurable; they are a gambit by the defense designed to fuel baseless conspiracy theories targeting Person 1, an innocent person.

As further evidence of their bad faith, defense counsel acted in violation of a court order that prohibited them from publicly disclosing information designated as sensitive in discovery without prior authorization. Now, defense counsel asks this Court to endorse their behavior, disputing the government's *ex ante* designation of the materials as sensitive under the protective order without even acknowledging, much less explaining, their blatant violation of the order's pre-

clearance requirement. This apparent indifference should concern the Court. Had the defense done what it was obligated to do, the government would have worked with the defense to appropriately redact the motion, and gone to the Court with any remaining disputes. Because of defense counsels' conduct, the government's security concerns have intensified, including death threats against Person 1 that have resulted in the need for law enforcement patrols of innocent people's home. The Court should reject defense counsels' attempt at *post hoc* rationalization. The motion to unseal should be denied; alternatively, the sealed motion for subpoenas should be redacted to remove the categories of personal identifying information identified below. The Court should also deny the sealed motion for subpoenas on the merits.

## RELEVANT BACKGROUND[1]

The defendant is charged by indictment with planting pipe bombs outside the headquarters of the RNC and DNC in Washington, D.C. on January 5, 2021. ECF 39. The FBI's investigation of the defendant yielded evidence that his vehicle entered the area of the DNC and RNC shortly before he planted the pipe bombs; his cellphone interacted on multiple occasions with cell sites near the DNC and RNC at times when surveillance video showed him walking within the relevant cell site's coverage area wearing a mask, hood, and gloves, and carrying a backpack; between 2018 and 2020, he bought various components and ingredients used to make the bombs, including pipes, end caps, wiring, steel wool, and timers; he had bomb components in his closet and car when he was arrested in December 2025; he had, in his home, a thumb drive with deleted copies of the Anarchist Cookbook and a removable computer hard drive containing online searches including

---

[1] The government has filed this opposition under seal pursuant to the Court's April 2, 2026, minute order. The government requests the opportunity to redact any sensitive information from this pleading prior to any unsealing.

"how to make a pipe bomb" and "manifesto template;" and he confessed to the crimes during a videorecorded interview, explaining in detail how and why he did it.

## I.     Person 1

Person 1 is a former federal law enforcement officer who responded to the U.S. Capitol on January 6, 2021, testified in several criminal trials stemming from those events, and has since become the target of online conspiracy theories claiming Person 1 is the true pipe bomber, and that Person 1 was part of an "inside job."  Person 1's role in these conspiracy theories stems from a November 8, 2025, article published by a media organization called The Blaze that accused Person 1 of being the true pipe bomber based on a gait analysis.[2]

Shortly before the November 8 article, the FBI became aware of the claims against Person 1 and investigated them.  The FBI contacted Person 1 at their workplace on November 6.  Person 1 agreed to be interviewed.  During the interview, Person 1 answered the FBI's questions, denied placing the pipe bombs, provided a list of former co-workers who could confirm their whereabouts on January 5, proactively offered review of their cellphone, including data from January 2021, and indicated they were open to the FBI reviewing their financial activity.  Person 1 also consented to searches of their home and car, which took place upon the completion of the interview, and which lasted multiple hours.

---

[2] *See* Steve Baker & Joseph M. Hanneman, *Former Capitol Police officer a forensic match for Jan. 6 pipe bomber, sources say,* THE BLAZE (November 8, 2025), *available at* https://web.archive.org/web/20251126151917/https://www.theblaze.com/news/former-capitol-police-officer-a-forensic-match-for-jan-6-pipe-bomber-sources-say. Four days earlier, on November 4, the same two authors at The Blaze had published an online article accusing Person 1 of using excessive force in responding to the events of January 6, 2021. *See* Joseph M. Hanneman & Steve Baker, *Capitol Police repeatedly used lethal force on protesters early on Jan. 6, video shows*, THE BLAZE (November 4, 2025), https://www.theblaze.com/news/capitol-police-repeatedly-used-lethal-force-on-protesters-early-on-jan-6-video-shows.

After participating in the interview and being present during the search of their home and car, Person 1 consented to a polygraph examination. The examination was conducted by the FBI; it began around 8:45 p.m. that same day, and concluded after midnight. During the examination, Person 1 was asked twice whether they placed the pipe bombs, and Person 1 said they did not. During the post-polygraph interview, which took several hours, Person 1 was told they had failed the examination. Person 1 answered all of the examiner's questions about January 5, denied placing the pipe bombs, denied knowing who placed the pipe bombs, and denied ever buying explosives or explosive components. Person 1 also reported that they felt they were being targeted online based on their involvement in the law enforcement response on January 6, and that their mother had recently died. According to the examiner, when Person 1 was told they had failed the polygraph, Person 1 exhibited a controlled reaction. Person 1 explained that they knew that the investigators were just doing their job, and that there was no reason to become emotional because the evidence would show they did not place the pipe bombs.

The FBI's investigation of the claims against Person 1 spanned several months and yielded no evidence that Person 1 planted the pipe bombs. The investigation also established that Person 1 had an alibi excluding them from potential criminal responsibility. Indeed, after the defendant's December 2025 arrest, The Blaze retracted the article accusing Person 1 of being the pipe bomber.[3]

## II.    The Protective Order

As it does in most criminal cases, the government sought and obtained the defense's consent for a protective order governing discovery, which the magistrate judge entered on December 11, 2025. *See* ECF 12. The protective order's stated purpose is "[t]o expedite the flow

---

[3] *See* Laura Wagner, *The Blaze retracts report accusing ex-policewoman of pipe bombing*, WASH. POST (Dec. 5, 2025), https://www.washingtonpost.com/business/2025/12/05/jan-6-pipe-bomb-blaze-retraction/

of discovery material between the parties and adequately protect personal identity information

entitled to be kept confidential." *Id.* at 1.

As set out by the protective order in a section plainly titled "**Sensitive Materials**," the

government

> may produce materials containing personal identity information as identified in Rule
> 49.1 of the Federal Rules of Criminal Procedure, and other materials as set forth
> below, to defense counsel, pursuant to the defendant's discovery requests. Such
> materials may be designated as "Sensitive." Sensitive materials shall be plainly
> marked as "Sensitive" by the United States prior to disclosure.

ECF 12 at ¶ 4.  This section provides an illustrative list—preceded by the language, "Sensitive

materials may also include the following"—that includes "unique identifying information" and

"[i]nformation that may jeopardize witness security."  *Id.*  Under the protective order, when the

government designates materials as "Sensitive," those materials must be handled pursuant to the

procedures detailed in the order.  *See, e.g.*, *id.* at ¶¶ 5–8.  These procedures restrict dissemination of

Sensitive materials to "the defendant(s), the legal defense team, persons who are interviewed as

potential witnesses, counsel for potential witnesses, and other persons to whom the Court may

authorize disclosure (collectively, 'authorized persons')."  *Id.* at ¶ 5.  The order also restricts

distribution of Sensitive materials, stating: "Absent prior agreement by the parties or permission

from the Court, *no party shall disclose* materials designated as Sensitive in any public filing with

the Court. Such materials shall be submitted under seal in accordance with Local Criminal Rule

49(f)(6), after filing an accompanying motion for leave to file under seal. Defendant may include in

a public document Sensitive information relating solely and directly to the defendant."  *Id.* at ¶ 6

(emphasis added).

The protective order expressly contemplates and addresses disagreements between the

parties about sensitivity designations.  The order requires that the "parties *shall* make a good faith

effort to resolve any dispute about a sensitivity designation before requesting the Court's intervention," and requires the government to agree to redaction whenever that approach "will resolve the basis for which a sensitivity designation was applied" and is "practicable and not unduly burdensome." *Id.* at ¶ 11 (emphasis added).  Finally, the order makes clear that "[n]othing in this Order shall prevent any party from seeking modification of this Order nor prevent the defense from contesting a sensitivity designation." *Id.* at ¶ 12.[4]

### III.    Government's Disclosure of Discovery Materials Related to Person 1 Was Extensive, and Materials Were Expressly Designated "Sensitive"

Consistent with the protective order's purpose of facilitating "speedy discovery" while "ensur[ing] that [sensitive] information will not be publicized without due consideration of the relevant privacy interests beforehand," *see Cudd,* 534 F.Supp.3d at 57, the government on February 24, 2026, provided the defense with several dozen FBI subfiles concerning so-called "persons of interest" in its investigation.  These disclosures included voluminous materials related to Person 1, including the results of residential, vehicle, and cellphone searches, physical surveillance, interviews of associates of Person 1, and materials obtained through the issuance of numerous grand jury subpoenas concerning Person 1.  In total, the government has provided the defense more

---

[4] The protective order in this case is typical of criminal matters involving large amounts of discovery that are likely to contain sensitive personal information, and its obligations are familiar to attorneys experienced in this District.  *See, e.g., United States v. Cudd*, 534 F.Supp.3d 48, 53–56 (D.D.C. 2021) (granting similar protective order over defense objection where voluminous discovery likely to contain personal identifying information and data concerning persons unrelated to the charged conduct, order would avoid government having to review and make redaction decisions as to sensitive information before producing discovery, and defendant "remains free to agree with the Government on how to file documents containing sensitive information," "request permission from the Court to file such documents on the public docket," "contest the sensitivity designation," and "seek modification of the order").

than 200 items related to Person 1, constituting nearly 200 megabytes of information. And more is forthcoming, including the January 5, 2021 video of Person 1's dog, which is pending production.

When the government provided these materials, it sent defense counsel a written letter stating the following:

> Please note that materials marked **\*SENSITIVE\*** below, including folders containing files and/or individual files, have been designated by the government as "Sensitive materials" pursuant to the Protective Order entered in this case on December 11, 2025. *See* ECF No. 12. Where a folder has been designated as sensitive, all contents of that folder have been designated as sensitive.

ECF 59-2 at 2. The letter then listed the materials provided to the defense to date, and specifically referenced the materials concerning Person 1 as designated Sensitive. *Id.* at 8.

## IV.    The Defense's Violation of the Protective Order

On March 31, 2026, at 10:52 p.m., defense counsel emailed government counsel the following: "We intend to file a motion for early return of three subpoenas tomorrow. The subpoenas seek materials from [Person 1, Person 1's significant other, and a third person]. The requested return date is April 24. Do you oppose the early return of these subpoenas?" At 9:47 a.m. on April 1, government counsel responded: "Please provide the subpoenas for us to review. Without reviewing the subpoenas, the government opposes both their authorization and early return under Rule 17(c) and related case law. If you intend to apply *ex parte*, we request that you include the government's opposition as stated." At 11:20 a.m., defense counsel replied simply, "We will note your opposition." Defense counsel made no mention of their intent to make a public filing containing sensitive information, and they had not previously disputed—or even expressed concern or questions about—any sensitivity designations made by the government under the protective order.

Approximately one hour later, at 12:37 p.m., defense counsel filed on the public docket its motion for early return of subpoenas. *See* ECF 58 (now under seal). The motion included the names

7

of all three people identified in the email the previous night, and publicly accused Person 1 of being the true pipe bomber, relying exclusively on the discovery materials previously provided by the government and expressly designated "sensitive." The motion stated that the defendant "maintains his innocence and preserves the right to present at trial that [Person 1]—not Mr. Cole—placed the pipe bombs." ECF 58 at 5. Astonishingly, the filing included Person 1's home address, current and former employer, name and employment of their significant other, and even the name of Person 1's dog. Within minutes, the authors of the retracted Blaze article accusing Person 1 of being the true pipe bomber had downloaded and disseminated online defense counsels' motion and attachments.

Government counsel immediately called defense counsel and requested that the filing be removed from the public docket and filed under seal, as required by the protective order. *See* ECF 12 at ¶ 6. Defense counsel refused. Government counsel advised the defense that paragraph 6 of the protective order required prior government agreement or Court approval before material or information designated sensitive could be filed publicly. *Cf.* Def.'s Mot. to Unseal, ECF 61 at 8 (omitting this fact). Only after government counsel contacted the Clerk by email did defense counsel agree to the removal of the filing from the public docket, which was done that afternoon. *Id.* at 2 (omitting that until government contacted Clerk directly, defense counsel refused to take any action).

Before defense counsel violated the protective order, the government's concerns for Person 1's safety were already significant. Those concerns have been amplified. Law enforcement has initiated regular patrols of Person 1's home in response to threats, including death threats. In the days after the defense filed its public motion, Person 1's attorneys received a series of threatening voicemails about Person 1 and their representation of Person 1. And that is to say nothing of the disturbing commentary that has become rampant on social media.

## **ARGUMENT**

### I.    The Sealed Motion for Subpoenas Should Be Denied Under Rule 17(c).

Federal Rule of Criminal Procedure 17(c) governs the production of documents and objects by subpoena.  A party seeking pretrial production pursuant to Rule 17(c) must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699 (1974).  In evaluating subpoenas under the Rule, "[c]ourts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting [Rule 16's] strict limitation of discovery in criminal cases." *United States v. Libby*, 432 F. Supp. 2d 26, 30 (D.D.C. 2006) (quoting *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980)).  The burden of satisfying the "exacting standards" of the *Nixon* test falls "on the party requesting the information." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 386 (2004).

The defense cannot satisfy its burden under *Nixon* first because much of what the subpoenas seek has been or will be provided through Rule 16 discovery, and is therefore "otherwise procurable."  Although the defense has made no discovery requests concerning Person 1, the Local Rules for the United States District Court require that the defense "shall attempt to obtain voluntary discovery of all materials and information to which the defense may be entitled" from the government.  LCrR 16.1; *see id.* ("No discovery motion shall be heard unless it states that defense counsel has previously requested that the information sought from the attorney for the United States and that such attorney has not complied with the request.").  Here, for example, the subpoenas seek identifying information for witness cellphones, communications between witnesses, and communications with the government that have already been produced, as

well as work schedule records and the January 5, 2021 video of Person 1's dog that are pending production under Rule 16 as potentially material to defense preparation. The remainder of the materials sought are not relevant or admissible, as discussed below, and some lie entirely outside the custody and control of the individuals from whom they are sought (*e.g.*, requests for employment records that post-date January 5, 2021).

"Like all other evidence, evidence of third-party guilt must be relevant in order to be admissible." *United States v. Moore*, 590 F.Supp.3d 277, 283 (D.D.C. 2022). "Courts weighing the probative value of third-party evidence generally require that it evince a clear connection between the alleged third-party perpetrator and the crime charged." *Id.* Thus, "[a] defendant must proffer evidence that is 'sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the asserted [third party].'" *Id.* (*quoting United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)). Without a showing of such a nexus, "it is the Court's responsibility to exclude such evidence lest it distract the jury from deciding the defendant's guilt or innocence and lead them instead to focus on someone else's." *Id.* at 286 (internal quotation marks omitted); *see United States v. Lighty*, 616 F.3d 321, 358 (4th Cir. 2010) ("Alternative perpetrator cases thus balance two evidentiary values: the admission of relevant evidence probative of defendant's guilt or innocence under Rule 401 with the exclusion of prejudicial, misleading, and confusing evidence under Rule 403.").

None of the materials concerning Person 1 sought by the subpoenas (or produced under Rule 16) are relevant under the "clear connection" standard for an alternative perpetrator defense, and they are therefore inadmissible. But even assuming a non-speculative reason to believe that any of the materials are relevant, they still would not be admissible because, on this record, any conceivable probative value would be substantially outweighed by the danger of unfair prejudice,

confusing the issues, and misleading the jury. As the Tenth Circuit has explained, "courts must be sensitive to the special problems presented by 'alternative perpetrator' evidence" under Rule 403." *McVeigh*, 153 F.3d at 1191. "It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice." *Id*. Thus, the subpoenas fail *Nixon*'s relevance and admissibility hurdles.

Moreover, *Nixon* forbids fishing expeditions, especially where, as here, the expedition is untethered to a legitimate litigation objective. The defense has proffered no actual evidence connecting Person 1 to the planting of the pipe bombs. They offer only the bootstrapped claim that the documents sought are evidentiary and relevant because the FBI investigated Person 1 at the same time it investigated the defendant. *See* ECF 58 at 5. But the FBI only investigated Person 1 because it was alerted that an article would be published accusing Person 1 publicly of being the pipe bomber; the FBI had no independent reason to suspect Person 1. And the article amounted to rank speculation based on a purported gait analysis. Were that enough, internet conspiracy theories could support innumerable alternative perpetrator defenses. The law, however, is clear—"mere speculation on the part of the defendant" is not sufficient to establish relevance. *Lighty*, 616 F.3d at 358; *United States v. Patrick*, 248 F.3d 11, 21 (1st Cir. 2001) (evidence concerning an alternative perpetrator is relevant if it shows "a connection between the other perpetrator and the crime, and not mere speculation").

Because the defense cannot meet their burden of satisfying *Nixon*'s "exacting standards," the Court should not authorize the requested subpoenas.[5]

---

[5] The subpoenas are also improper because they require production directly to defense counsel. Rule 17(c)(1), however, provides that, when a party is seeking pre-hearing production, that party must have the documents produced to the district court itself. *See* Fed. R. Crim. P.

II.     **The Motion for Subpoenas Should Remain Sealed; Alternatively, It Should Be Redacted to Remove Personal Identifying Information.**

Had defense counsel complied with their legal obligations, the government would have shared with the defense its legitimate safety concerns based on the content of the now-sealed motion for subpoenas. ECF 58. The government would have proposed redacting Person 1's identifying information, including their name, current and former employer, home address, significant other's name and employer, and their dog's name. If the defense disagreed, one or both parties would have petitioned the Court, as the protective order required, and the Court would have resolved the matter. As the Court is now aware, none of this happened. And because of defense counsels' failure to follow their obligations, sensitive material relating to Person 1 has been downloaded and disseminated online. The Court should deny defendant's motion to unseal given the clear absence of good faith behind the defense's decision to file the motion publicly; in the alternative, the Court should authorize the Government's proposed categories of redactions.[6]

The government takes no issue with the presumption of public access to judicial records. But "the right to inspect and copy judicial records is not absolute," *Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978), and "the tradition of access is not without its time-honored exceptions," *United States v. Hubbard*, 650 F.2d 293, 315 (D.C. Cir. 1980). For example, "access has been denied

---

17(c)(1); *United States v. Hall*, 2021 WL 3419679, at *2 n.2 (W.D. Pa. Aug. 5, 2021) ("As for the actual subpoena, the government is correct that these documents should not be produced directly to defense counsel. . . . Instead, under Rule 17(c), those documents must be produced to the Court itself."); *United States v. Al-Amin*, 2013 WL 3865079, *4 (E.D. Tenn. July 25, 2013) ("[T]he records must be returned to the Court, not the parties. Since the documents, records, and other objects are not discovery, but rather are intended to be admitted into evidence, it is the Court to which the [documents] must be returned."); *United States v. Santiago-Lugo*, 904 F.Supp. 43, 46 (D.P.R. 1995) ("Nowhere in Fed.R.Crim.P. 17 do we find language allowing the utilization of the court's subpoena power privately, with a secret return directly to an attorney.").

[6] The government is prepared to exchange specific proposed redactions with the defense should the Court so order.

where court files might have become a vehicle for improper purposes," and "courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption." *Hubbard*, 650 F.2d at 315 (quoting *Nixon*, 435 U.S. at 598). Ultimately, it is the trial court's discretion, "to be exercised in light of the relevant facts and circumstances of the particular case," whether to deny or restrict access to judicial documents. *Nixon*, 435 U.S. at 599. And "it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document." *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).

> This Circuit's balancing test, articulated in *Hubbard*, requires courts to consider six factors:
>
> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996).

As to the first factor, there is no compelling need for public access to Person 1's identifying information, as this specific information has little to no bearing on the Court's consideration of the substance of the motion for subpoenas. *See, e.g.*, *United States v. Trump*, No. 23-cr-257, 2024 WL 4367035, at *1 (D.D.C. Oct. 2, 2024) (finding "relatively little need for public access to identifying information of named individuals or non-public sources where, as here, it does not bear on the substantive issue the Motion addresses"). Additionally, the information that the government seeks to redact is "targeted" and will only deny public access to "particularly sensitive" information. *Patel v. Garland*, No. 23-3215 (JEB), 2023 WL 7536574, at *2 (D.D.C. Nov. 13, 2023) (internal quotation marks and citations omitted). The second *Hubbard* factor also favors redaction. The only previous public access to Person 1's identifying information has come from a retracted online publication, internet speculation, and defense counsels' public filing, which has been removed

13

from the public docket.  Given the circumstances, this factor does not favor public disclosure in a judicial record "as an original matter."  *Hubbard*, 650 F.2d at 318.

"The third, fourth, and fifth *Hubbard* factors are interrelated, and require courts to look at the strength of the property and privacy interests involved, and to take into account whether anyone has objected to public disclosure and the possibility of prejudice to that person."  *Upshaw v. United States*, 754 F. Supp. 2d 24, 29 (D.D.C. 2010).  In addition to the government's objection, Person 1 objects to the disclosure of their personal information, which weighs more heavily against disclosure than an objection from a party.  *See United States v. Munchel*, 567 F. Supp. 3d 9, 18 (D.D.C. 2021) ("*Hubbard* provides broader protection when a third party's privacy or property rights are at issue and that third party objects.").  Moreover, the strength of Person 1's privacy and security interests, and the possibility of prejudice to Person 1, are substantial under the circumstances.  *See Trump*, No. 23-cr-257, 2024 WL 4367035, at *1 ("[B]oth the Government and individual witnesses have an interest in avoiding the harassment or intimidation that could result from disclosure of their names"); *Hubbard*, 650 F.2d at 319 ("[W]here a third party's property and privacy rights are at issue the need for minimizing intrusion is especially great.").  These are real safety concerns, not "vague, conclusory assertions of potential threats, without any evidence supporting a specific fear based on the release of the [information] at issue."  *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 84 (D.D.C. 2020); *see Cudd*, 534 F.Supp.3d at 54 (court "is mindful that pretrial publicity of discovery" may "injure … witnesses, and third parties whose personal information was collected in the Government's investigation.").

Sixth, and perhaps most important under these circumstances, the purpose of publicly disclosing Person 1's identifying information was and is to harass and intimidate an innocent person, fuel a conspiracy theory, and turn this criminal proceeding into a public spectacle.  This is

14

evident from the blatant violation of the protective order (which prevented the government from objecting to the public disclosure in advance), and the omission in the defense's motion for subpoenas of most of the investigative information that had already been provided to the defense about Person 1 in discovery. Were defense counsels' purpose simply a good faith pursuit of the judicial process, the defense would have complied with the protective order and allowed the government to weigh in before filing the motion publicly.

Under these circumstances, and on this record, the motion for subpoenas should remain sealed because it was filed publicly in bad faith; alternatively, a balancing of the *Hubbard* factors weighs heavily in favor of the government's proposed categories of redactions.

## CONCLUSION

For the foregoing reasons, the motion to unseal, ECF 61, should be denied; alternatively, the sealed motion for subpoenas, ECF 58, should be redacted as set forth above. The Court should also deny the sealed motion for subpoenas on the merits.

Respectfully Submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*/s/ Charles R. Jones*
CHARLES R. JONES (D.C. Bar No. 1035541)
JOCELYN BALLANTINE (CA Bar No. 208267)
Assistant United States Attorneys
National Security Section
601 D Street, NW
Washington, D.C. 20530
Tel: (202) 252-6976
Charles.Jones3@usdoj.gov
Tel: (202) 252-7252
Jocelyn.Ballantine2@usdoj.gov