**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:26-cr-00001-AHA** |
| | : | |
| **BRIAN J. COLE, JR.,** | : | |
| | : | **UNDER SEAL** |
| **Defendant.** | : | |

**GOVERNMENT'S REPLY IN SUPPORT OF ITS
MOTION FOR SHOW CAUSE ORDER FOR CONTEMPT[1]**

On April 1, 2026, defense counsel filed a public motion for Rule 17(c) subpoenas premised exclusively on "discovery produced by the government in this case." ECF No. 58 at 1. The motion detailed a selection of the FBI's non-public investigative efforts concerning Person 1, emphasizing that the FBI "questioned" Person 1 and those close to her, "surveilled" Person 1, "issued subpoenas and preservation requests for her electronic accounts," and "polygraphed her on whether she placed the pipe bombs." *Id.* at 1–2, 5. All of this was non-public information, all of it was provided by the government in discovery, and all of it had been expressly designated "Sensitive" under the protective order and thus could not be made public without further consultation amongst the parties, at a minimum. Rather than simply concede the impropriety of their conduct and recommit to abiding by the protective order, defense counsel now claims that their motion only repeated information already in the public domain. *See* ECF No. 65. This is demonstrably untrue, and it is troubling that defense counsel would even take such a position. Given defense counsel's continued attempts to justify their behavior, the Court should issue the requested order to show cause and

---

[1] The Court's April 2, 2026 minute order did not set a deadline for the government to file a reply in support of its motion for an order to show cause; the government files this reply because the defense raises for the first time in their opposition new arguments concerning the basis for the government's motion.

1

take appropriate remedial steps to ensure that defense counsel will comply with judicial orders as this case proceeds.

**ARGUMENT**

I.  **Defense Counsel's Motion for Subpoenas Plainly Did Not Publish Already Public Information.**

The thrust of defense counsel's response on the issue of contempt is to claim that they did not violate the protective order because "the information the government wants redacted" (i.e., Person 1's identifying information) had been publicly reported before defense counsel published it in their motion.  ECF No. 65 at 12.  This claim—presented for the first time in defense counsel's third filing addressing this issue[2]—misconstrues the nature of the issue and stretches credibility beyond its breaking point.

*First*, defense counsel conflate (a) the personal identifying information that the government seeks to redact if the defense's subpoena motion is unsealed with (b) discovery materials that the government designated as "Sensitive" under the protective order.  These are not the same.  In providing discovery containing sensitive non-party information, the government did not designate as Sensitive only that information which it may later seek to redact from a public filing.  Rather, in lieu of redacting sensitive information *before* providing discovery to the defense, the government disclosed complete, unredacted materials in order to expedite the provision of

---

[2] *See* Def.'s Mot. to Seal, ECF No. 60, at 2 (explaining that defense counsel were "contemporaneously filing a motion to unseal [their] early return motion and explain to the Court why the filing is not subject to the discovery protective order"); Def.'s Mot. to Unseal Doc. 58, ECF No. 61, at 7 (asserting that the motion for subpoenas did not violate the protective order because it "did not attach discovery, publish raw records, or disclose the kinds of information the Order is designed to protect, such as confidential-source information, undercover identities, medical records, or material that would jeopardize an ongoing investigation").  Neither pleading suggested, as defense counsel argue now, that the protective order was categorically inapplicable because the subpoena motion was based on materials obtained by the defense independent of government discovery.

2

materials in Rule 16 discovery; it designated those materials as Sensitive under the protective order to mitigate the risk of improper use; and it relied on the understanding that defense counsel would abide by the protective order.  This is a well-established process, and it was designed in significant part for the defense's benefit.  As judges in this District have recognized, the alternative—requiring the government to assume "the attendant monumental burden" of "reviewing and making redaction decisions with respect to all these materials"—"would cause a substantial delay in discovery." *United States v. Cudd*, 534 F.Supp.3d 48, 53 (D.D.C. 2021) (citing *United States v. Dixon*, 355 F.Supp.3d 1, 3 (D.D.C. 2019)).  The protective order, when abided, strikes an appropriate balance between "facilitat[ing] efficient and expeditious discovery" and "ensur[ing] that [sensitive] information will not be publicized without due consideration of the relevant privacy interests beforehand." *Id.* at 57 (quoting *Dixon*, 355 F.Supp.3d at 8).

***Second***, the government's basis for designating Person 1's FBI "person of interest" file as Sensitive under the protective order was, and remains, obvious—publicly identifying Person 1 as a subject of investigative action by the FBI in this case would pose a significant risk to Person 1's personal safety.  Because of defense counsel, this is no longer a theoretical concern.  Since defense counsel filed their public motion, Person 1 and her significant other have been subjected to threatening voicemails and email, suspicious visitors and vehicles on or near their property, and residential patrols by local law enforcement.  Person 1 and her significant other, both experienced law enforcement professionals, are fearful of leaving their home.  Defense counsel nevertheless represents to the Court that the government has "never identified" how discovery concerning Person 1 could be properly deemed Sensitive under the protective order.  ECF No. 65 at 11.  Even if that was true, the fact would remain that the government had "plainly marked" the material as Sensitive under the protective order, and the protective order dictated the procedure for defense

3

counsel to dispute the designation.  But it is not true.  In its consolidated brief, the government quoted the protective order's specific enumeration of "[i]nformation that may jeopardize witness security," ECF No. 12, ¶ 4(d), and repeatedly explained how this provision was implicated by defense counsel's unauthorized public dissemination of the discovery material concerning Person 1.  *See* ECF No. 63 at 2, 5, 8, 12, 14.  Defense counsel apparently disagreed with the government's assessment of "the privacy and security concerns at stake" here, but that did not give them license to simply substitute their judgment for the government's and deprive all affected of the Court's "due consideration of the relevant privacy interests beforehand."  *See Cudd*, 534 F.Supp.3d at 55, 57.

*Finally*, and perhaps most important, defense counsel's claimed reliance on public sources fails because nearly everything they published in their subpoena motion was non-public.  In the first substantive paragraph, the motion emphasized that "[a]ccording to discovery produced by the government in this case, the FBI began investigating, questioning, and covertly surveilling [Person 1] during the time it began investigating Mr. Cole."  ECF No. 58 at 1.  The motion then described and quoted from Person 1's polygraph examination before summarizing a curated list of investigative steps taken by the FBI concerning Person 1, including opening a subfile, issuing "subpoenas and preservation requests for numerous electronic accounts associated with [Person 1]," conducting interviews of Person 1's significant other, neighbors, "dog walker," and former co-workers, and "surveill[ing] her without her knowledge."  *Id.* at 1–2.  The motion referenced Person 1's "communications" with "family members with a ▉-area-code telephone number from January 1–8, 2021," "services" that Person 1 "used to wipe publicly-available information about" themself, and a restaurant (by name and location) visited by Person 1's significant other on January 5, 2021.  *Id.* at 3–4.  All of this information, as the motion makes

abundantly clear, was obtained through "discovery produced by the government in this case." *Id.* at 1; *see id.* at 6 (subpoena requests "informed by discovery Mr. Cole received from the government"). None of it was public.

That defense counsel can locate news articles and social media posts discussing Person 1's name and other personal information, *see* ECF No. 65 at 9–10, is beside the point. For one, those expressly were not the sources of Person 1's identifying information in the subpoena motion. But more importantly, none of those sources described *any* of the steps taken by the FBI to investigate the allegations against Person 1. Had defense counsel filed a public motion summarizing information gathered from public sources, that motion would have been limited to the allegations by The Blaze authors based on an anonymous gait analysis, Person 1's denial of the allegations through counsel, and Person 1's employment. *See id.* That is not what defense counsel filed. Defense counsel filed a public motion airing the FBI's investigation of Person 1, sourcing all of the information to the government, and giving the imprimatur of an FBI investigation to otherwise baseless internet speculation.[3]

---

[3] This appears to have been the point. It is not lost on the government that Person 1's current employment at the CIA is referenced in the first substantive paragraph of the subpoena motion and repeatedly thereafter, ECF No. 58 at 1–3, 5, without mention, as defense counsel now concede, that "she worked in campus security," ECF No. 65 at 9. Person 1's employment with the CIA is a central tenet of the conspiracy theories peddled online about Person 1. *See, e.g.*, Steve Baker (@Steve BakerUSA), X.com (Apr. 2, 2026, 9:16 PM), https://x.com/SteveBakerUSA/status/2039874681717629416 ("Drop all charges against Brian Cole and launch a full scale investigation into who at Capitol Police and CIA were behind the J6 pipe bomb scheme."); Steve Baker (@Steve BakerUSA), X.com (Apr. 4, 2026, 2:09 PM), https://x.com/SteveBakerUSA/status/2040491914584014963 (describing Person 1 as a "former @CapitolPolice officer and current @CIA asset").

II.     **The Court Should Issue the Requested Order to Show Cause Why Defense Counsel Should Not be Found in Contempt.**

"It is firmly established that the courts have inherent authority to enforce their orders through the exercise of contempt powers." *United States v. Shelton*, 539 F.Supp.2d 259, 262 (D.D.C. 2008). "To hold a party in civil contempt for violating an order requires the establishment of two essential elements": (1) "the court must have issued an order that is clear and reasonably specific," and (2) "the putative contemnor must have violated the court's order." *Id.* The standard of proof is clear and convincing evidence. *See, e.g.*, *Int'l Painters & Allied Trades Ind. Pension Fund et al. v. Zak Architectural Metal & Glass LCC*, 736 F.Supp.2d 35, 38 (D.D.C. 2010). Moreover, it is "well settled" that "neither good faith nor lack of willfulness is a defense to civil contempt." *Potter v. District of Columbia*, 126 4th 720, 724 (D.C. Cir. 2025). Rather, if the elements of civil contempt are established by clear and convincing evidence, "the burden shifts" to the contemnor "to justify the noncompliance" with "adequate detailed proof" of good faith or another justification. *Int'l Painters*, 736 F.Supp.2d at 38. Civil contempt is "remedial in nature" and may be "used to obtain compliance with a court order." *Shelton*, 539 F.Supp.2d at 262.

On this record, the Court should order defense counsel to show cause why they should not be found in contempt of the protective order. The protective order was and is clear and reasonably specific on its face, and defense counsel violated that order for the reasons stated by the government. Moreover, defense counsel's position in response to the government's show cause motion raises considerable concern that, should defense counsel again disagree with the government's sensitivity designations, they will again choose to violate the protective order. There is simply no way to reconcile defense counsel's shifting justifications for their conduct—all of which claim compliance with the protective order—with a responsible understanding of the order's requirements. There are legitimate privacy and safety concerns at stake in this case, and the Court

can and should take steps to ensure that defense counsel will comply with judicial orders and that

this proceeding will not create an unnecessary risk of harm to non-parties.

Respectfully Submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*/s/ Charles R. Jones*
CHARLES R. JONES (D.C. Bar No. 1035541)
JOCELYN BALLANTINE (CA Bar No. 208267)
Assistant United States Attorneys
National Security Section
601 D Street, NW
Washington, D.C. 20530
Tel: (202) 252-6976
Charles.Jones3@usdoj.gov
Tel: (202) 252-7252
Jocelyn.Ballantine2@usdoj.gov

7