**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:26-cr-00001-AHA |
| BRIAN COLE, JR., | ) | |
| Defendant. | ) | |

**DEFENDANT'S AMENDED MOTION TO DISMISS COUNT FOUR OF THE INDICTMENT, OR, IN THE ALTERNATIVE, TO REQUIRE SPECIFIC CLARIFYING RELIEF AND INCORPORATED MEMORANDUM OF POINTS OF AUTHORITIES**

Count Four of the Second Superseding Indictment, ECF No. 64, contains a remarkable omission. It charges Mr. Cole with one count of an "Act of Terrorism," which the D.C. Code defines in part as an act "intended to . . . influence the policy or conduct of a unit of government by intimidation or coercion." D.C. Code § 22-3152(1)(B). Yet nowhere in the Indictment—not in Count Four or any other—does it even mention a unit of government, much less set forth facts suggesting that Mr. Cole intended to influence such unit of government's policy or conduct.

Quite the contrary, the only organizations mentioned in Count Four are clearly and objectively not units of government. Count Four alleges that Mr. Cole "maliciously attempted to burn, destroy, and injure another's property, that is, the headquarters of the *Democratic National Committee* ["DNC"]. . . and the headquarters of the *Republican National Committee* ["RNC"]." ECF No. 64 at 2–3 (emphasis added). Middle school civics establishes that political party headquarters

are not "units of government"; they exist not to govern, but to support their members' political campaigns. And the D.C. Code confirms that obvious conclusion by omitting political parties and their headquarters from the eleven specific units of government enumerated in D.C. Code § 22-3152(11).

By merely parroting the language of the statute, Count Four fails to provide Mr. Cole with reasonable certainty of the nature of the accusation against him, if indeed there is one within the meaning of the statute. Put simply, if the Government accuses and intends to prove beyond a reasonable doubt that Mr. Cole intended to influence one of the eleven units of government that the D.C. Code specifies, the least it can do is specify which one in the indictment. Unfortunately, the Government has declined to do so despite Mr. Cole's explicit inquiries concerning these questions.[1]

There is more. D.C. Code § 22-3152 specifies two distinct ways of committing an "act of terrorism": by (A) "intimidat[ing] or coerc[ing] a significant portion of the

---

[1] Mr. Cole files this amended motion to clarify—where his original motion may have been unintentionally vague—what the government communicated about its theory on Count IV prior this filing. As Mr. Cole explained in his original motion, "the Government has confirmed that it intends to proceed under each" subsection of D.C. Code § 22-3152. (Dkt. 92 at 4.) The email confirmation that Mr. Cole explicitly referenced is the one that government has now filed. (Dkt. 93-1.) The email exemplifies the very reasons Mr. Cole moves to dismiss now. It does not help the government here. When counsel for Mr. Cole inquired which of the two subsections in D.C. Code § 22-3152 that "the government intend[s] to prove at trial," the government said both (*id.*), which precipitated the defect Mr. Cole raises *infra* (II) that requires either dismissal or clarifying relief. Counsel also inquired which "unit of government" the government intended to prove Mr. Cole sought to influence. (*Id.*) The government said its proof of Mr. Cole's intent "encompass[]" an intent to influence "Congress," which is nowhere to be found in the indictment. (*Id.*) The government's email told the defense nothing and makes the problems worse, not better.

civilian population of the District of Columbia or the United States" (§ 22-3152(1)(A) (cleaned up)); or (B) "influenc[ing] the policy or conduct of a unit of government by intimidation or coercion" (§ 22-3152(1)(B) (cleaned up)). The Government has clarified that it intends its charge to encompass both types of violations as to two different buildings, but this leads to multiple duplicity problems, *i.e.*, the impermissible joinder of two or more distinct offenses in a single count. If the jury were to issue an adverse general verdict against Mr. Cole under Count Four, it is possible that neither Subpart would have unanimity: some jurors may have believed Mr. Cole to be guilty under Subpart (A) (intimidating the civilian population) but not Subpart (B) (influencing a unit of government), while others may have reached the inverse conclusion. Similarly, some jurors may have believed that Mr. Cole attempted to harm the RNC but not the DNC, while others reached the opposite conclusion, leaving neither finding unanimous.

Dismissal of Count Four, or at least a bill of particulars and special jury instructions, is necessary.

## BACKGROUND

Count Four of the Second Superseding Indictment charges an "Act of Terrorism While Armed (Attempted Malicious Burning, Destruction, or Injury of Property)," in violation of D.C. Code §§ 22-3152, 22-3153(l), and 22-4502. ECF No. 64 at 2–3. Specifically, it alleges that Mr. Cole, while armed with two explosive devices, attempted to destroy "the headquarters of the Democratic National Committee, located at 430 South Capitol Street, Southeast," and "the headquarters of the

Republican National Committee, located at 310 First Street, Southeast," each valued at $500,000 or more. *Id.* The two buildings are privately owned and sit blocks apart from each other.

The D.C. Code provides two distinct types of intent that elevate specified offenses, such as malicious burning, destruction, or injury of another's property, § 22-3152(8)(J), into "acts of terrorism"—specifically, those offenses committed with the intent to:

> (A) Intimidate or coerce a significant portion of the civilian population of the District of Columbia or the United States; or
> (B) Influence the policy or conduct of a unit of government by intimidation or coercion.

*Id.* § 22-3152(1) (cleaned up). The Indictment charges both disjunctive theories, and the Government has confirmed that it intends to proceed under each.

## LEGAL STANDARD

An indictment must do more than parrot the statute—it must "descend to particulars," *Russell v. United States*, 369 U.S. 749, 765 (1962), and "sufficiently apprise[] the defendant of what he must be prepared to meet," *United States v. Debrow*, 346 U.S. 374, 376 (1953); *see also United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980) ("[T]he language [of the indictment] must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged."). Where such a material defect appears on the face of the indictment, Federal Rule of Criminal Procedure 12(b)(3)(B)(v) allows the defendant to move to dismiss the indictment for failure to state an offense. *United States v. Tajideen*, 319 F. Supp. 3d 445, 453 (D.D.C. 2018).

Also forbidden is a "duplicitous" count, which is one that "join[s] in a single count [ ] two or more distinct and separate offenses." *United States v. Mangieri*, 694 F.2d 1270, 1281 (D.C. Cir. 1982) (citation omitted). Whether a count is duplicitous turns on the statute's allowable unit of prosecution, *Sanabria v. United States*, 437 U.S. 54, 69–70 (1978), and any ambiguity in that unit is resolved "in favor of lenity," *Bell v. United States*, 349 U.S. 81, 83 (1955).

The remedies for a duplicitous count challenged before trial are dismissal; an order requiring the government to elect the single offense on which it will proceed; and specific jury instructions. *United States v. Shorter*, 608 F. Supp. 871, 881–82 (D.D.C. 1985) (declining to dismiss but curing the risk of a non-unanimous verdict through detailed jury instructions and special interrogatories), *aff'd*, 809 F.2d 54 (D.C. Cir. 1987); *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 116 (D.D.C. 2012); *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 225–26 (1952).

## **ARGUMENT**

Count Four of the Indictment contains two material defects: failure to identify any unit of government that Mr. Cole allegedly intended to influence, and duplicitous charging that invites conviction on a less-than-unanimous basis and threatens to undermine appellate review. Each warrants dismissal of Count Four in part, or, at a minimum, an order compelling the Government to explain its charge and commit to a single theory of prosecution—entreaties it has refused to date.

## I. COUNT FOUR IMPERMISSIBLY FAILS TO IDENTIFY THE UNIT OF GOVERNMENT WHOSE POLICY AND CONDUCT MR. COLE ALLEGEDLY INTENDED TO INFLUENCE

Mr. Cole is charged with leaving explosive devices with "the intent to influence the policy and conduct of a unit of government by intimidation and coercion" (Indictment at 3, quoting D.C. Code § 22-3152(1)(B)), but the Indictment conspicuously avoids identifying which one. Nowhere in Count Four, or indeed anywhere else in the body of the Indictment, does the Government identify the object of Mr. Cole's alleged intent, much less explain how Mr. Cole intended to influence that unit of government.

To dispense with the obvious, the headquarters of the DNC and RNC—the only entities named in Count Four and the locations where the explosive devices were left—are not units of government. This is true as a matter of common sense, because the political parties raise money for candidates' campaigns but do not themselves govern, and they are not formally part of the government. It is also plain from the text of the D.C. Code, which defines "unit of government" to encompass exactly eleven categories of institutions:

(A) The office of the President of the United States;
(B) The United States Congress;
(C) Any federal executive department or agency;
(D) The office of the Mayor of the District of Columbia;
(E) Any executive department or agency of the District of Columbia, including any independent agency, board, or commission;
(F) The Council of the District of Columbia;
(G) The Superior Court of the District of Columbia;
(H) The District of Columbia Court of Appeals;
(I) The United States Court of Appeals for the District of Columbia;
(J) The United States District Court for the District of Columbia; or
(K) The Supreme Court of the United States.

D.C. Code § 22-3152(11). Neither the DNC nor the RNC, nor their respective headquarters, are among the enumerated institutions, and a fundamental canon of statutory interpretation dictates that "expressing one item of an associated group excludes another item not mentioned." *Esteras v. United States*, 606 U.S. 185, 186 (2025). That is particularly true in the criminal context, where "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *United States v. Grider*, 585 F. Supp. 3d 21, 32 (D.D.C. 2022) (citation omitted). Consequently, no amount of intended influence against the Democratic or Republican National Committee headquarters could qualify as an act of terrorism under the "unit of government" provision in § 22-3152(1)(B). If that is the Government's charge, it must be dismissed.

Mr. Cole is not naïve. He expects that at some point—maybe in its opening statement—the Government will reveal which unit of government it accuses him of attempting to influence. Perhaps it will be the Library of Congress, which is directly across the street from the RNC headquarters and is the closest unit of government to the explosive device left there. Perhaps it will be Congress (as the government's email says) or the Supreme Court, which are equidistant from those headquarters. It is even conceivable that the Government itself has not yet decided what unit-of-government theory it intends to pursue because it is waiting to see how trial preparations go. Regardless, Mr. Cole's due process rights foreclose this tactic; *the Indictment* (not just a government email) itself must "sufficiently apprise[] the defendant of what he must be prepared to meet." *Debrow*, 346 U.S. at 376. Here, it

does not, and the result is highly prejudicial to Mr. Cole's ability to defend himself. Dismissal of Count Four's § 22-3152(1)(B) charge is warranted.

If the Court determines that dismissal is not justified, Mr. Cole requests in the alternative an order directing the Government to provide a bill of particulars identifying the unit of government that he allegedly intended to intimidate and the essential facts supporting its charge. In making that request, Mr. Cole notes the "settled rule that a bill of particulars cannot save an invalid indictment," *Russell*, 369 U.S. at 770, because "nothing can be added to an indictment without the concurrence of the grand jury by which the bill was found," *United States v. Norris*, 281 U.S. 619, 622 (1930). That said, knowing what accusation he faces would at least enable him to prepare for trial and would materially reduce the growing prejudice from the Government's lack of forthcomingness.

## II. COUNT FOUR IS IMPERMISSIBLY DUPLICITOUS

Count Four also suffers from a second material defect: it charges multiple distinct offenses under the same count. This is true in two respects.

### A. Count Four Impermissibly Combines Offenses Requiring Different Intents

Duplicity is the "joining in a single count of two or more distinct and separate offenses." *United States v. Watt*, 911 F. Supp. 538, 549 (D.D.C. 1995) (citing *Shorter*, 809 F.2d at 56). The Supreme Court instructs that multiple offenses can be grouped together only if they have the same "unit of prosecution." *Sanabria*, 437 U.S. at 69. Put differently, although multiple instances of the same offense can be grouped together, multiple distinct offenses cannot, because doing so would risk a jury verdict

lacking unanimity regarding a specific offense, in violation of the Sixth Amendment and Rule 31(a) of the Federal Rules of Criminal Procedure. *See United States v. Gipson*, 553 F.2d 453, 458 (5th Cir. 1977) (holding that, because "[t]he unanimity rule . . . requires jurors to be in substantial agreement as to just what a defendant did," a district court cannot combine acts falling into "distinct conceptual groupings" even where the different acts represent violations of the same statute); *United States v. Hubbard*, 889 F.2d 277, 279 (D.C. Cir. 1989) (approving discussing *Gipson* in dicta).

Although little judicial authority exists regarding the appropriate unit of prosecution under D.C. Code § 22-3152, the text plainly sets forth two different acts that would constitute violations. First, Subpart (A) prohibits any specified offense intended to "intimidate or coerce a significant portion of the civilian population of the District of Columbia or the United States." D.C. Code § 22-3152(1)(A) (cleaned up). Second, Subpart (B) prohibits specified offenses intended to "[i]nfluence the policy or conduct of a unit of government by intimidation or coercion." *Id.* § 22-3152(1)(B). Notably, because intent alone elevates a specified offense, such as destruction of property, into an "act of terrorism" under § 22-3152(1)(A) or (B), intent *is* the offense, and the jury must be unanimous regarding intent in order to convict.

Section 22-3152(1)'s two predicate intents are self-evidently distinct: An intent to "[i]ntimidate or coerce a significant portion of the civilian population" is fundamentally different from an intent to "[i]nfluence the policy or conduct of a unit of government." *Id.* The former is an intent to disturb the civilian population, whereas the latter seeks to "influence . . . the policy" of government. One may commit

a predicate offense with either intent, but they are different and the jury must be unanimous regarding either in order to convict. Count Four, however, invites the jury to render a unanimous verdict even if the jurors disagree regarding which Subsection of § 22-3152 applies.

### B. Count Four Impermissibly Combines Multiple Underlying Offenses

Count Four is duplicitous for a second, independent reason: it charges the attempted destruction of two separate buildings as one offense. The Anti-Terrorism Act fixes the unit of prosecution at a single specified offense against a single property. Section 22-3153(l) punishes an attempt to commit "malicious burning, destruction, or injury of another's property, if such property is valued at $500,000 or more, that constitutes an act of terrorism," and the predicate "specified offense" is "Section 22-303 (Malicious burning, destruction, or injury of another's property, if the property is valued at $500,000 or more)." D.C. Code § 22-3152(8)(J). At every turn, the statute speaks of "the property" in the singular, going so far as to make a property's value an element of the offense. Destroying two owners' properties is two offenses, each with its own object, victim, and valuation. *See Bell*, 349 U.S. at 83.

The Indictment impermissibly charges two offenses in the same Count. It names two buildings, at two addresses, owned by two different national committees; it alleges two different devices ("two 'pipe bombs'"); and it pleads that the properties were "each valued at $500,000 or more." That word—*each*—concedes two distinct § 22-3152(8)(J) predicates, and § 22-4502 attaches a separate armed enhancement to each. Charging two offenses in one count is the paradigm of duplicity. *Mangieri*, 694

F.2d at 1281; *see United States v. Palmer*, 85 F. Supp. 3d 284, 290 (D.D.C. 2015) (a duplicitous count joins "two or more distinct and separate offenses" and makes it "difficult to determine whether a conviction rests on only one of the offenses or on both" (quoting *United States v. Washington*, 127 F.3d 510, 513 (6th Cir. 1997))).

The Government cannot recharacterize the two attempts as one continuing scheme. That exception is limited to conduct the statute itself treats as continuing, or to a sustained course of like acts. *See Shorter*, 809 F.2d at 55–56. Malicious destruction of property is neither. It is complete property by property, and it does not run across buildings owned by different parties.

Combining these two distinct offenses in one Count threatens no end of mischief. First, a general verdict would not reveal whether the jury unanimously found an attempt on the DNC building, the RNC building, or both. Second, a general verdict would not reveal whether the jury found the $500,000 element as to any single property or impermissibly combined the two. Finally, because § 22-3153(l) carries a fifteen-year maximum sentence for a single attempted act of terrorism, a general verdict would leave the Court unable to tell at sentencing whether Mr. Cole stands convicted of one offense or two.

* * *

The proper remedy for such a facially deficient Count is dismissal; as written, it invites the jury to convict even if it lacks unanimity regarding either the act in question or the intent with which it was committed. At a minimum, the Court should impose two protective measures. First, it should address the duplicity problem by requiring the Government to elect which Subsection—"civilian population" or "unit

of government"—it will pursue. *Sanford,* 859 F. Supp. 2d at 116 (endorsing as a remedy for duplicitous count "requir[ing] the government to elect a theory of prosecution"). Second, the Court should give a special unanimity instruction requiring the jury to agree on the object of terroristic intent and which building was the object of the attempt. *See Mangieri*, 694 F.2d at 1281 (endorsing as "sensible and appropriate" a jury instruction requiring unanimity as to "which . . . incidents they find the defendant guilty.").

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Count Four of the Second Superseding Indictment or order protective measures, including a bill of particulars and special jury instructions.

Respectfully submitted September 3, 2026.

*/s/ John R. Glover*
J. Alex Little
Zachary C. Lawson
John R. Glover
LITSON PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co
zack@litson.co
jr@litson.co

Mario B. Williams
Ga. Bar No. 235254 (*Pro Hac Vice*)
John M. Shoreman
DC Bar #407626
HUMANITY DIGNITY AND RIGHTS LLC
3480 Peachtree Road, NE
Atlanta, Georgia 30326

Tel: 470-257-2485
mwilliams@hdrattorneys.com
jms@mcfaddenshoreman.com

*Counsel for Brian Cole, Jr.*

**CERTIFICATE OF SERVICE**

I certify that on September 3, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve all registered participants in this case.

*/s/ John R. Glover*
John R. Glover