IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN COLE, JR.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-cr-1 |

**DEFENDANT BRIAN COLE JR.'S REPLY IN SUPPORT OF HIS RENEWED MOTION FOR EARLY RETURN OF PRETRIAL SUBPOENAS**

Defendant Brian Cole, Jr., by and through undersigned counsel, respectfully submits this reply in support of his renewed motion for the early return of pretrial subpoenas. (Dkt. 88.) Mr. Cole seeks narrowed subpoenas in response to the Court's instructions that a renewed Rule 17(c) application "should be specific about what information is sought." (Dkt. 70 at 48:4–10.)

The government's opposition is a twenty-eight-page argument that "[t]he FBI's investigation exonerated" Ms. Kerkhoff, Dkt. 91 at 21, and that no process may issue to test the government's conclusion.[1] But Rule 17(c) does not ask whether the

[1] The government asserts, repeatedly, that the FBI "exonerated" Ms. Kerkhoff. Dkt. 91 at 8, 11, 21. But exoneration is not within the executive's gift: an investigation ends in a charge or a declination, and the "ultimate conclusion of guilt or innocence" belongs to a jury, not to the FBI. *United States v. Gaudin*, 515 U.S. 506, 514 (1995). The Department's own policies prohibit its lawyers from offering opinions on guilt or innocence and caution against commenting on uncharged individuals at all, *see* 28 C.F.R. § 50.2(b)(6); Justice Manual §§ 1-7.610, 9-27.760, and at trial the government will not be permitted to vouch for Ms. Kerkhoff by placing the FBI's imprimatur behind her denials—precisely the practice condemned because it "may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United*

government believes its own evidence. It asks whether the defense has identified specific documents, held by identified custodians, with a sufficient likelihood of containing relevant and admissible evidence. *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). Mr. Cole's narrowed subpoenas do exactly that. The government's opposition never engages the subpoenas as actually narrowed. That is by design: the government told the Court in April that its opposition to Mr. Cole's subpoenas would be "a categorical analysis" and that its "position is not going to change" no matter how the requests were narrowed. (Dkt. 70 at 44:20, 46:20–23.) As promised, the government's response does not address the narrowed requests and instead presents case law about broad "any and all" subpoena requests.[2]

Furthermore, the government's discovery practice in this case contradicts the position it takes in its response. The government argues that Mr. Cole's subpoenas should be denied because they "utterly fail" *Nixon*'s relevancy requirement, yet the government recently produced in discovery documents responsive to some of Mr. Cole's original subpoena requests to Ms. Kerkhoff and Dr. Nirenberg. It is unclear why the government would produce materials responsive to the subpoena to Mr. Cole,

---

*States v. Young*, 470 U.S. 1, 18–19 (1985); *see Berger v. United States*, 295 U.S. 78, 88 (1935). The Court should read the government's "exoneration" refrain as advocacy, not evidence.

[2] As before, Mr. Cole preserves his position that the *Nixon* factors do not necessarily govern a defendant's Rule 17(c) subpoena to a third party. *See* Dkt. 84-1 at 3 n.1 (citing *United States v. Weigand*, 520 F. Supp. 3d 609, 613 (S.D.N.Y. 2021); *United States v. Tucker*, 249 F.R.D. 58, 65 (S.D.N.Y. 2008); and *United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019)). Because the subpoenas satisfy *Nixon* in any event, the Court need not reach that question.

as part of its discovery obligations, if they were truly irrelevant, as the government now claims.

Another contradiction reverberates throughout the government's response. The government claims that Mr. Cole's alternative-perpetrator defense is "a baseless conspiracy theory" and not in "good faith." Yet the government does not—and cannot—reconcile that claim with its own investigation into Ms. Kerkhoff as the pipe bomber. More than 100 FBI agents investigated Ms. Kerkhoff for months, searching her home and vehicle, administering a polygraph examination to her, obtaining surveillance footage of her walking for analysis by a gait expert, and surveilling her covertly for weeks, among other investigative tactics. Ms. Kerkhoff was also interviewed by AUSA Ballantine, a prosecutor in this case against Mr. Cole. Taking the government's words in its response as true would mean that the government conducted this months-long, invasive investigation of Ms. Kerkhoff based on "a baseless conspiracy theory." Either the government investigated Ms. Kerkhoff on a theory it knew was a baseless conspiracy, or the theory was not a baseless conspiracy. The government cannot have it both ways.

By the government's own account, this case turns on minutes. The government places the bomber in the area of the DNC and RNC beginning at 7:34 PM on January 5, 2021, and it answers the defense's third-party theory with a home video purportedly timestamped 7:37:48 PM[3] that evening, a 5:39 PM restaurant receipt,

[3] The government's response at page 6 states that the video was timestamped 7:37:48 PM, but later states on page 8 that it was timestamped 7:37:50 PM. This discrepancy is yet another reason that Mr. Cole seeks the native video file and its

and employer "work records." (Dkt. 91 at 5–6.) Whether that video's timestamp is native, accurate, and unaltered; whether that video is what the government purports it to be; and whether the summary "work records" are consistent with the raw badge data reflecting a 3:47 PM swipe-out against a 5:40 PM scheduled shift end, Dkt. 88-1 at 6—are questions crucial to Mr. Cole's defense. If, as the government's response suggests, it is certain that Mr. Cole is the perpetrator and Ms. Kerkhoff is innocent, it is unclear why the government continues to fight subpoenas issued to third parties that, taking the government's position as true, would presumably clear Ms. Kerkhoff of wrongdoing.

Mr. Cole's subpoenas seek the underlying records, while the government asks the Court to accept its summary of them. *Nixon* requires more, and the Constitution guarantees Mr. Cole "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). This Court should not prevent Mr. Cole from presenting a complete defense on the government's say-so.

## ARGUMENT

underlying metadata from Ms. Kerkhoff and Mr. Dickert. *See also* Dkt. 70 at 40:17–19 (The Court remarks that seeking materials directly from a third party "presupposes that there would be a dispute as to authenticity or that there would be some value to confirming authenticity from the defense.").

## I. The Narrowed Subpoenas Seek Specific, Identified Documents.

The government litigates a straw man, using cases on broad "any and all" subpoena requests against subpoenas that are now significantly tailored. As narrowed, the subpoena to Ms. Kerkhoff comprises ten discrete requests:

1. A single identified native video file shown to the government that purportedly established Ms. Kerkhoff's alibi and other media created on the same device on January 5, 2021;

2. Documents identifying one specific device—the iPhone 7 on which the video was recorded—and its disposition;

3. The items she provided to the government on November 6 and November 12, 2025;

4. Footage from the cameras at Ms. Kerkhoff's and Mr. Dickert's residence during a seventeen-hour window: January 5, 2021 at 3:00 PM through January 6, 2021 at 8:00 AM;

5. Ms. Kerkhoff's communications with Mr. Dickert during a sixteen-and-a-half-hour window: January 5, 2021 from 12 AM through 4:39 PM;

6. Device-identification records for a three-week period: December 15, 2020 through January 8, 2021;

7. Ms. Kerkhoff's raw badge-swipe log for January 5, 2021, and any record explaining a single identified discrepancy;

8. Records for Ms. Kerkhoff's Apple Watch or other similar wearable device and its data for two days: January 5 and January 6, 2021;

9. Communications between Ms. Kerkhoff and the government and Ms. Kerkhoff and Mr. Dickert from November 1, 2025 through present regarding the government's pipe bomb investigation; and

10. The work phone number (and respective phone network(s)) used by Ms. Kerkhoff on January 5 or January 6, 2021.

(Dkt. 88-1 at 5–7.)

The Dickert subpoena is even narrower, with six requests:

1. Media created by Mr. Dickert on January 5, 2021 depicting the couple's dog or containing Ms. Kerkhoff's voice;

2. Documents identifying one specific device—the iPhone 7 on which that video was recorded—and its disposition;

3. Footage from the cameras at Mr. Dickert's and Ms. Kerkhoff's residence during a seventeen-hour window: January 5, 2021 at 3:00 PM through January 6, 2021 at 8:00 AM;

4. Mr. Dickert's communications with Ms. Kerkhoff during a sixteen-and-a-half-hour window: January 5, 2021 from 12 AM through 4:39 PM;

5. Communications between Mr. Dickert and the government and Mr. Dickert and Ms. Kerkhoff from November 1, 2025 through present regarding the government's pipe bomb investigation; and

6. The work phone number (and respective phone network(s)) used by Mr. Dickert on January 5 or January 6, 2021.

(Dkt. 88-2 at 5–6.)

The Nirenberg subpoena is also narrower, with only two requests:

1. All documents and communications regarding Dr. Nirenberg's gait analysis of Ms. Kerkhoff; and

2. All documents and communications regarding Dr. Nirenberg's gait analysis of any individual related to the pipe bomb investigation.

(Dkt. 88-3 at 5.) According to the government's response, "the government directed the FBI to obtain from the podiatrist all materials responsive to the requested subpoena directed to him . . . [and] has provided those responsive materials to the defendant." (Dkt. 91 at 8 n.7.) Mr. Cole agrees that given the government's good-faith collection and production of materials responsive to the Nirenberg subpoena, the subpoena to Dr. Nirenberg is now moot.

The subpoena requests to Ms. Kerkhoff and Mr. Dickert are for specific files and devices with timeframes measured in hours. They are not "all documents" about a broad topic, and do not seek to comb through Ms. Kerkhoff's and Mr. Dickert's files. Mr. Cole has already withdrawn outright the three categories that swept most broadly: Ms. Kerkhoff's CIA employment records, records concerning data-removal services, and her communications with family members (formerly Request Nos. 2, 9, and 11). (Dkt. 88 at 3.)

The cases the government invokes are inapposite. In *United States v. Libby*, the defendant sought a third party's appointment calendars and telephone records for the general purpose of challenging her recollection at trial, without identifying any specific document or discrepancy. 432 F. Supp. 2d 26, 32–33 (D.D.C. 2006). In

*United States v. Janbakhsh*, the subpoenas swept in "all communications and documents" across broad categories, custodians, topics, and timeframes. No. 3:22-cr-00340-1, 2025 WL 1839948, at *3, *5 (M.D. Tenn. July 3, 2025).[4]

Here, by contrast, nearly every request is anchored to a specific, already-identified, relevant issue: the video the government represents as the alibi's cornerstone, the device on which that video was recorded, the badge log that deviates from the summary "work records," and the communications immediately preceding the window the government has already produced, during the most relevant time period. If, *after a subpoena recipient moves to quash*, the Court concludes that any residual clause sweeps too broadly, the remedy is modification of that clause, not wholesale denial. *See* Fed. R. Crim. P. 17(c)(2).

Courts have granted Rule 17(c) applications for similarly specific requests. *See, e.g., United States v. Bell*, 336 F.R.D. 148, 152–53 (E.D. Mich. 2020) (authorizing subpoena for "video surveillance from October 17, 2016, taken between 8:00 a.m. and midnight" from a motel to show that the defendant was not present and therefore not involved in the charged human trafficking conspiracy, finding the request for evidence "over a span of sixteen hours on a particular date," "precisely tailored"); *United States v. Ferguson*, No. 3:06CR137CFD, 2008 WL 113663, at *1 (D. Conn. Jan.

---

[4] The government's citation to other cases where undersigned counsel filed Rule 17(c) applications is irrelevant here. *See* Dkt. 91 at 16–19. However, the government omits that in *United States v. Shetty*, another case in which counsel filed Rule 17(c) applications, the Court granted three subpoenas significantly broader than those here, including one to the alleged victim in the case. No. 2:23-cr-84-TL, ECF No. 47 (W.D. Wash. May 20, 2024). Counsel have also been granted similar Rule 17(c) subpoenas *ex parte*.

2, 2008) (enforcing subpoena for "phone records for sixteen phone numbers" for eight months, finding the materials evidentiary as business records and relevant as "evidence that could disprove that certain calls alleged by the government occurred—or that certain exculpatory calls alleged by the defendants occurred"); *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 325 (S.D.N.Y. 2011) (denying motion to quash Rule 17(c) subpoena for "all communications" between witness and defendant, finding the request relevant and evidentiary because the indictment alleged that the defendant conspired with the witness to trade on insider information); *United States v. King*, 194 F.R.D. 569, 575 (E.D. Va. 2000) (denying motion to quash Rule 17(c) subpoena for the full recording of a news station's interview of a government witness, finding the specific recording relevant to the witness's impeachment at trial); *United States v. Rodriguez*, No. 17-20904-CR, 2019 WL 2348053, at *4 (S.D. Fla. June 3, 2019) (noting that the court granted a Rule 17(c) subpoena application to storage facility for "all documents, *including videos* and electronic or physical key or access logs" where the defendant argued that the government falsely represented that he visited the storage facility in a drug conspiracy case) (emphasis in original) (citations omitted).

The government's own conduct refutes its specificity attack. It reviewed Mr. Cole's original subpoena requests, identified discovery materials responsive to them, and made a production "responsive to the subpoena requests" on June 30, 2026. (Dkt. 91 at 8; Dkt. 88 at 3.) It then "directed the FBI to obtain from the podiatrist all materials responsive to the requested subpoena directed to him" and produced those

to Mr. Cole, thus mooting the subpoena to Dr. Nirenberg. (Dkt. 91 at 8 n.7.) Requests too indefinite to satisfy *Nixon*'s specificity prong could not have served, twice, as the government's own collection and discovery checklist.

## II. The Documents Sought Are Relevant and Admissible Under *Nixon*.

As discussed below, Mr. Cole's narrowed subpoenas to Ms. Kerkhoff and Mr. Dickert satisfy the *Nixon* standard.

### A. *Nixon* requires a sufficient preliminary showing, not proof of the defense.

*Nixon* asks whether there is a "sufficient likelihood" that the specified materials contain evidence relevant and admissible on the issues to be tried. 418 U.S. at 700. It does not ask the Court to adjudicate, based on the government's own conclusion, that a defense fails before the defense has the documents. Yet that is what the government's response argues: because the FBI concluded that Ms. Kerkhoff's alibi was sufficient, no document testing that conclusion can ever be relevant or admissible. The government cites no authority for this proposition, and none exists.

Indeed, the government previously represented to this Court that materials about Ms. Kerkhoff—including her work-schedule records and the dog video—were being produced precisely because they are "potentially material to defense preparation." Dkt. 84-1 at 4 (quoting Dkt. 84-2 at 9–10). Materials the government itself deemed potentially material to the defense cannot now be recast as categorically irrelevant.

The narrowed subpoenas seek evidence bearing on the one question the government has now injected itself into: where Ms. Kerkhoff was on the evening of January 5, 2021. The native video file, the same-device media, and the device-identification and disposition records are the foundation of Ms. Kerkhoff's alibi proffered by the government, and Mr. Cole believes they will corroborate his alternative-perpetrator defense. The home-camera footage and Apple Watch data for the January 5–6 window speak to Ms. Kerkhoff's presence—or lack thereof—at her home when the pipe bombs were planted. The raw badge-swipe log and schedule records are classic business records, Fed. R. Evid. 803(6), and are relevant because they will either explain or confirm the discrepancy between the 3:47 PM swipe-out and the 5:40 PM scheduled shift end. And the January 5 communications are admissible for the non-hearsay facts of their existence, timing, and originating devices—precisely the use the government makes of the 5:18:55 PM "Coming home!" message, Dkt. 91 at 5—and are relevant because they can confirm or refute the calls, texts, and movements of a perpetrator in the hours leading up to the crime. The government cannot build Ms. Kerkhoff's alibi out of timestamps, text messages, and business records while branding the adjacent timestamps, text messages, and business records categorically inadmissible.

B. <u>The "nexus" demand inverts the inquiry and repeats the error *Holmes* condemned.</u>

The government insists that Mr. Cole must first establish an alternative-perpetrator "nexus" before he may obtain documents. The cases it cites for that proposition—*Moore*, *McVeigh*, *Winfield*—address whether third-party-perpetrator

evidence is admissible *at trial*, on a developed record, under Rule 403 principles. *See United States v. Moore*, 590 F. Supp. 3d 277, 283 (D.D.C. 2022). Whether Mr. Cole may present that defense will surely be litigated *in limine*, before trial. The question now is antecedent: whether specific documents in a specific window bearing on the whereabouts of the specific person whom the FBI investigated carry a sufficient likelihood of relevant, admissible evidence. Collapsing the two inquiries would mean that alternative-perpetrator evidence could never be developed through compulsory process at all: the defendant would need the documents to make the showing, and the showing to get the documents. The only way to receive such documents, then, would be from the government in discovery—the very government that believes it charged the correct person.

The government calls the defense's acknowledgment of this sequence "damning," Dkt. 91 at 22, without engaging with the Catch-22 it is attempting to create. The government cites two inapposite cases on this point. In *United States v. Tokash*, the defendants sought to comb Bureau of Prisons records on speculation that they would show "racial tension and inadequate remedies" at the prison. 282 F.3d 962, 971 (7th Cir. 2002) (citation omitted). The defendants' Rule 17(c) subpoenas were denied because "the defendants were not entitled to proceed under a theory that their possession of the weapons was justified by necessity because they failed to make a threshold showing that they faced an imminent threat that necessitated disregard of the law prohibiting possession of weapons in federal penitentiaries." (*Id.*) The Seventh Circuit found that the defendants sought to "blindly comb through

government records in a futile effort to find a defense to a criminal charge." (*Id.*) By contrast, Mr. Cole does not seek to blindly comb through Ms. Kerkhoff's or Mr. Dickert's files. Nor is this a futile effort to find a defense to a criminal charge. Instead, among other things, the government's full-blown investigation of Ms. Kerkhoff, the government's discovery productions about that investigation, Ms. Kerkhoff's failed polygraph test and the deception and rehearsed answers noted in the examination, and the holes in Ms. Kerkhoff's purported alibi corroborate Mr. Cole's pre-existing defense to the criminal charge: Mr. Cole did not plant the pipe bombs.

In *United States v. Richardson*, the other case cited by the government, the defendant subpoenaed AOL to produce "essentially any document that would support his [illegal search in violation of the Fourth Amendment] theory that AOL was in an agency relationship with the Government" because AOL reported to the government that the defendant transmitted child pornography on his AOL email. 607 F.3d 357, 368 (4th Cir. 2010). Because his subpoena lacked any specificity, the court affirmed the district court's grant of AOL's motion to quash. *Id.* at 368–69. Mr. Cole's narrowed subpoenas, unlike in *Richardson*, do not seek "any document" that would substantiate an unsupported hypothesis, such as AOL secretly being an arm of the government. Instead, Mr. Cole's narrowed subpoenas are sufficiently specific and satisfy *Nixon*.

Finally, the government's syllogism—it believes Ms. Kerkhoff was "exonerated," therefore nothing that tests the exoneration can matter—is precisely the reasoning the Supreme Court rejected in *Holmes*: "by evaluating the strength of

only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt." 547 U.S. at 330. The claimed strength of the government's alibi evidence for Ms. Kerkhoff is a reason to permit the defense to examine its foundations—not a reason to forbid the examination. Mr. Cole has the constitutional right to "present a complete defense." *Holmes*, 547 U.S. at 324. This Court should not deny Mr. Cole's constitutional right to present his alternative-perpetrator defense, using documents responsive to his subpoenas, just because the government does not believe that defense.

C. The Materials Are Not Otherwise Procurable.

The government has produced some material responsive to Mr. Cole's original subpoena to Ms. Kerkhoff. Mr. Cole responded by withdrawing every category the government's productions covered. (Dkt. 88 at 3.) Mr. Cole requested that the government produce other material responsive to his subpoenas, and the government refused. Dkt. 91 at 19 n.10 ("The defendant sought this material from the government in Rule 16 discovery, and the government declined to provide it."). The material requested in Mr. Cole's narrowed subpoenas to Ms. Kerkhoff and Mr. Dickert is therefore not otherwise procurable, except directly from Ms. Kerkhoff and Mr. Dickert.

D. Mr. Cole's Narrowed Subpoenas Are in Good Faith.

The government argues that Mr. Cole's subpoenas are not in good faith and are a "fishing expedition" because of the protective order and sealing litigation following Mr. Cole's original subpoenas. The Court adopted Mr. Cole's proposed

redactions and declined to adopt the government's broad redactions, which it found "relate to information already available publicly or to general investigative techniques," Minute Order, July 7, 2026. Mr. Cole's conduct has been the opposite of a fishing expedition: he withdrew three requests outright, narrowed every remaining request, and committed to work in good faith with the recipients' counsel to narrow further where warranted. (Dkt. 88 at 3–4.) In light of the government's production of documents responsive to the subpoena to Dr. Nirenberg, Mr. Cole is withdrawing that subpoena.

Nor is investigating an alternative perpetrator "harass[ment]," as the government suggests. (Dkt. 91 at 26.) A defendant's decision to investigate and present an alternative-perpetrator defense, based on the government's own investigation, is his exercise of his constitutional right to present a complete defense. As Mr. Cole previously noted, the government itself suggested in a filing—without *any* evidence—that Mr. Cole's sister and grandmother may have been involved in the charged conduct. Dkt. 84-1 at 12 (citing Dkt. 50 at 38–39). That claim, without any support, is harassment.

The insinuations about undersigned counsel's representation of the two defendants in Ms. Kerkhoff's defamation case fare no better. The government cites no authority—because there is none—for curtailing a criminal defendant's compulsory-process rights based on his attorneys' other clients. If the government actually believed a conflict existed, it would have moved to disqualify undersigned counsel or sought other relief that the Rules allow. The government's claim is

unfounded and is itself a bad-faith allegation. Undersigned counsel sought the subpoenas to Ms. Kerkhoff and Mr. Dickert *months* before they began representing two of the defendants in Ms. Kerkhoff's defamation case. Needless to say, undersigned counsel will use documents responsive to the narrowed subpoenas only in the defense of Mr. Cole's case—the case where the subpoenas were sought.

## CONCLUSION

For these reasons, Mr. Cole respectfully requests that the Court issue the two subpoenas, Dkts. 88-1, 88-2, directing Ms. Kerkhoff and Mr. Dickert to produce responsive documents by October 30, 2026.[5]

Date: September 4, 2026

Respectfully submitted,

/s/ J. Alex Little
J. Alex Little
Zachary C. Lawson
John R. Glover
LITSON PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co

[5] The government objects to the fact that the proposed subpoenas direct production to undersigned counsel's office rather than to the Court. (Dkt. 91 at 25 n.15.) The rule's text is permissive—"[t]he court *may* direct the witness to produce the designated items in court before trial," Fed. R. Crim. P. 17(c)(1) (emphasis added). This District has rejected the argument that Rule 17(c) places an "absolute requirement on parties to direct subpoenaed entities to return items to the Court." *Khouj v. Darui*, 248 F.R.D. 729, 731 (D.D.C. 2008); *see* Dkt. 84-1 at 7–8 (collecting examples of Rule 17(c) returns made to counsel's offices, including by the government's own lawyers). At most, the government's preference about the place of return is a reason to modify the subpoenas, not to deny their issuance.

zack@litson.co
jr@litson.co

Mario B. Williams
Ga. Bar No. 235254 (Pro Hac Vice)
John M. Shoreman
DC Bar #407626
HUMANITY DIGNITY AND RIGHTS LLC
3480 Peachtree Road, NE
Atlanta, Georgia 30326
Tel: 470-257-2485
mwilliams@hdrattorneys.com
jms@mcfaddenshoreman.com

*Counsel for Brian Cole Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of September, 2026, a true and correct copy of the foregoing has been served via the Court's CM/ECF system upon all counsel of record.

*/s/ J. Alex Little*
J. Alex Little