IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:26-cr-1 |
| v. | ) | |
| BRIAN COLE, JR., | ) | |
| Defendant. | ) | |

**DEFENDANT BRIAN COLE, JR.'S BRIEF REGARDING THE ABSENCE OF A CONFLICT OF INTEREST**

Pursuant to the Court's September 16, 2026 Minute Order, Mr. Cole respectfully submits this brief addressing whether a conflict of interest exists or would arise from undersigned counsel's representation of two defendants in *Kerkhoff v. Blaze Media LLC*, No. 1:26-cv-01078-RDA-WEF (E.D. Va.); whether any conflict or potential conflict is waivable; and proposed next steps.

## INTRODUCTION

There is no conflict. Every prong of Rule 1.7(b) requires adversity or impairment, and neither is present here. Mr. Cole's interests and the interests of the defendants in the Virginia action run in the same direction, as the government itself told the Court: "At the moment it appears that their interests

in both cases are aligned." Exhibit 1: Excerpt of Transcript of Sept. 10, 2026 Status Conference at 6:2–3.[1]

The government's concern is instead a forecast: that Mr. Cole *may* be convicted and *may* then claim that counsel pursued an alternative-perpetrator defense solely to serve a civil client rather than him. Exh. 1 at 6:7–15. That is speculation, and speculation is not a conflict. *See Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) ("We hold that the possibility of conflict is insufficient to impugn a criminal conviction. To demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.").

Speculation aside, the government is also wrong. The chronology forecloses its theory. Mr. Cole moved for these subpoenas on April 1, 2026—three weeks *before* Ms. Kerkhoff filed her defamation complaint on April 21, and more than two months before undersigned counsel entered appearances on behalf of the defendants in that case on June 15. ECF No. 91 at 7–8. And the defense theory is not a product of the civil case at all: it is a product of the government's own investigation, which devoted more than 100 agents, a search of Ms. Kerkhoff's home and vehicle, weeks of covert

---

[1] Exhibit 1 is an excerpt of relevant pages from transcript of the September 10, 2026 status conference. The pages numbers of the transcript cited to in this brief are to the original page numbers in the full transcript.

surveillance, a gait analysis, and a (failed) polygraph examination to the question whether Ms. Kerkhoff planted the pipe bombs. ECF No. 96 at 3. Counsel would be pressing this defense even had the Virginia action never been filed, because counsel are acting in Mr. Cole's best interests. The government's theory is that counsel are pressing this defense solely to help a civil client in another case. But the person that defense identifies failed a polygraph examination asking whether she committed the very crime charged against Mr. Cole. No competent defense lawyer would ignore that fact.

The Rules of Professional Conduct are not a basis for removing counsel who press a defense the government disfavors. As explained below, there is no conflict. Even if there were a conflict, it would be waivable, as the government agrees. And this Court need not appoint conflicts counsel because Mr. Williams and Mr. Shoreman do not represent the defendants in the Virginia action and can independently advise Mr. Cole on any waiver.

## ARGUMENT

### I. No Conflict Exists Under the Rules of Professional Conduct.

No conflict exists for three reasons: the two representations are not adverse, speculation about a future claim is not an actual conflict, and Rule 44(c) does not apply.

A. The Two Representations Are Not Adverse.

Rule 1.7(a)'s absolute prohibition applies only where a lawyer would be "called upon to espouse adverse positions for different clients in the same matter." D.C. R. Prof'l Conduct 1.7 cmt. [4]. This case and the Virginia action are separate matters with different parties, so Rule 1.7(a) does not apply.

The government invoked Rule 1.7(b)(4). Exh. 1 at 5:23–6:2. Every subsection of Rule 1.7(b), however, requires adversity or impairment: (b)(1) requires adverse positions "in the same matter"; (b)(2) and (b)(3) require that one representation "will be or is likely to be adversely affected" by the other; and (b)(4) requires that counsel's professional judgment "will be or reasonably may be adversely affected" by responsibilities to a third party. The government has not identified—and cannot identify—any way in which representing the Virginia defendants degrades counsel's judgment on Mr. Cole's behalf. The facts that would exonerate Mr. Cole are the same facts that would defeat Ms. Kerkhoff's defamation claims. The representations are mutually reinforcing, not inconsistent. *See id.* cmt. [13] (a positional conflict arises only where there is "a significant risk that a lawyer's action on behalf of one client in a given matter . . . will adversely affect the lawyer's effectiveness in representing another client . . . ."). That some facts in this case and the Virginia case overlap is not a conflict. There is no risk—let alone a significant risk—that undersigned counsel's action on behalf of Mr. Cole would adversely

affect counsel's effectiveness in representing the Virginia defendants, or vice versa.

B. The Government's Speculation Does Not Create a Conflict.

The government's sole proffered concern is that a potential conviction might be followed by a collateral attack. Exh. 1 at 6:7–15. The law does not treat that possibility as a conflict. "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350. To establish a conflict that would undermine a conviction, "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Id.* An actual conflict means "precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (emphasis in original). The theory the government expressed at the hearing would find a conflict whenever defense counsel's other clients have *any* stake in the outcome of a criminal case. Such a theory contradicts the Rules of Professional Conduct and decades of Supreme Court precedent.

Counsel's duty to Mr. Cole is undivided and will remain so. Should the interests ever diverge, counsel are obligated to advise Mr. Cole accordingly and, if the divergence could not be cured by consent, to withdraw. *See* D.C. R. Prof'l Conduct 1.7 cmt. [33].

C. Rule 44(c) Does Not Apply.

Rule 44(c) requires an inquiry only where "two or more defendants have been charged jointly" and "are represented by the same counsel, or counsel who are associated in law practice." Fed. R. Crim. P. 44(c)(1). The Virginia defendants are not charged with anything, are not co-defendants of Mr. Cole, and are parties to a civil case in another district. Rule 44(c) does not apply.

**II. The Government's Conflict Theory Should Not Constrain Mr. Cole's Defense, and the Virginia Action Is Not Before This Court.**

This Court's authority over counsel runs to the proceedings before it. *See* LCvR 83.15(a). Whether counsel may continue in *Kerkhoff v. Blaze Media LLC* is a question for the Eastern District of Virginia, where that case is pending (and where no party has raised any concern about it). The question properly before this Court is narrower: whether Mr. Cole is receiving loyal and competent representation in this prosecution. He is.

That framing matters because of what the government's request would accomplish. The government has argued that Mr. Cole's alternative-perpetrator defense is "baseless," ECF No. 91 at 19; that no subpoena may test the FBI's conclusion, *id.* at 21; and now that the lawyers pressing that defense are ethically compromised for pressing it. Accepting the last of those propositions would make the assertion of a disfavored—but constitutionally protected—defense the trigger for counsel's removal. The Constitution

guarantees Mr. Cole "a meaningful opportunity to present a complete defense," *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (citations omitted), and a "presumption in favor of [his] counsel of choice," *Wheat v. United States*, 486 U.S. 153, 164 (1988), the erroneous deprivation of which is structural error, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006).

Mr. Cole does not ask the Court to assess the government's motives. The relevant inquiry "is the nature and extent of the conflict." *United States v. Bikundi*, 80 F. Supp. 3d 9, 16 (D.D.C. 2015) (internal quotation marks and citation omitted). In a criminal case that inquiry "must focus on, and be guided by, the defendant's Sixth Amendment rights: both the right to effective assistance and the right to counsel of choice." *Douglas v. United States*, 488 A.2d 121, 138 n.18 (D.C. 1985). Here, the "conflict" is a hypothetical claim Mr. Cole might raise years from now—one he is prepared to waive today.

## III. Any Conflict or Potential Conflict Is Waivable.

If the Court concludes that a potential conflict exists, it is waivable. Rule 1.7(c) permits the representation where "[e]ach potentially affected client provides informed consent . . . after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation," and the lawyer "reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client." D.C. R. Prof'l Conduct 1.7(c)(1), (2). Counsel hold that belief, and full disclosure

can be made. The government agrees: "We think this is a waivable conflict." Exh. 1 at 6:16; *see* Exh. 1 at 16:9–13.

Mr. Cole will consult independent counsel, which his current defense team already includes, and, if he so elects, execute a written waiver and answer the Court's questions on the record. *See* D.C. R. Prof'l Conduct 1.7 cmt. [28]; *United States v. Lorenzana-Cordon*, 125 F. Supp. 3d 129, 139–41 (D.D.C. 2015) (court questioned defendant whose attorney also represented a witness in the case and found that he knowingly, intelligently, and voluntarily waived the conflict). But the Court need not appoint conflicts counsel or involve the Office of the Federal Public Defender for the District of Columbia. *See* Exh. 1 at 17:3–9. Mr. Cole already has conflict-free counsel. Mr. Williams and Mr. Shoreman do not represent the defendants in the Virginia action, and they can advise Mr. Cole independently on any waiver. No appointment is necessary.

## CONCLUSION

There is no conflict of interest. If there were a conflict, it would be waivable.

Mr. Cole proposes that the Court find that no conflict exists and deny the government's oral motion. In the alternative, Mr. Cole proposes that the Court: (1) direct Mr. Cole to file, within thirty days and if he so elects, a written

waiver after consulting with Mr. Shoreman or Mr. Williams; and (2) conduct any *ex parte* colloquy of Mr. Cole that it wishes.

Date: September 23, 2026

Respectfully submitted,

*/s/ John R. Glover*
J. Alex Little
Zachary C. Lawson
John R. Glover
LITSON PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co
zack@litson.co
jr@litson.co

Mario B. Williams
Ga. Bar No. 235254 (Pro Hac Vice)
John M. Shoreman
DC Bar #407626
HUMANITY DIGNITY AND
RIGHTS LLC
3480 Peachtree Road, NE
Atlanta, Georgia 30326
Tel: 470-257-2485
mwilliams@hdrattorneys.com
jms@mcfaddenshoreman.com

*Counsel for Brian Cole, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of September, 2026, a true and correct copy of the foregoing has been served via the Court's CM/ECF system upon all counsel of record.

*/s/ John R. Glover*
John R. Glover