**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cr-1 (AHA) |
| | ) | |
| BRIAN COLE, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BRIAN COLE, JR.'S RESPONSE**
**TO THE GOVERNMENT'S CONFLICT BRIEF**

The government asks this Court to find a conflict because, in its view, Mr. Cole's alternative-perpetrator defense is being raised "to advance the interests of the defamation defendants at the expense of the defendant's interests here." Dkt. 99 at 9. That is because the government believes that its investigation "exonerated"[1] Ms. Kerkhoff and that any attempt to investigate the government's conclusion is a "baseless conspiracy theory." Dkt. 91 at 11, 26-27. Rhetoric aside, the government does not explain how exploring this defense—which no defense counsel could decline to investigate without falling short of their obligations to the client—creates a present conflict, despite its concession that the parties' "interests in both cases are aligned." Dkt. 98-1 at 3:2–3. No conflict exists because the representations are not adverse, and the government's speculation about a future ineffective-assistance claim is not an

[1] The government's claim that its own investigation "exonerated" Ms. Kerkhoff violates DOJ policy. Dkt. 96 at 1 n.1.

actual conflict. If anything, the more plausible ineffective-assistance claim would arise from counsel declining to investigate this defense at all.

The government asks the Court to appoint "independent, conflict-free counsel" to advise Mr. Cole. Dkt. 99 at 1. That far-reaching step is not necessary because there is no actual conflict. Still, the government never explains why Mr. Williams and Mr. Shoreman, who represented Mr. Cole prior to Litson PLLC's representation of him and who do not represent the Virginia defendants, cannot serve as conflicts counsel. In one footnote, the government concedes that the "conflict at issue pertains to only certain members of the defendant's legal team" but that "it can hardly be said that any are 'independent' of each other." *Id.* at 14 n.10. The government offers no reasoning or legal authority for this assertion, and it is wrong. Mr. Williams and Mr. Shoreman are independent of Litson PLLC and the Virginia defendants, and their availability alone disposes of the request for court-appointed counsel.

The government centers its proposal that the Court appoint conflicts counsel on one case: *United States v. Sutton*. When undersigned counsel met and conferred with government counsel before the parties filed their briefs, undersigned counsel flagged that *Sutton* was factually and legally inapposite from this case. In *Sutton*, the defendant's counsel also represented another person involved in the same case. *United States v. Sutton*, No. CR 21-0598 (PLF), 2021 WL 5998384, at *1 (D.D.C. Dec. 7, 2021). The issue was whether the conflicts counsel retained by defendant's counsel was adequate. The retained conflicts counsel also served as the defendant's third-party custodian, and conflicts counsel's daughter was the defendant's girlfriend. *Id.*

Conflicts counsel even stated in court that she was not a "fully independent person, given her other role in this case and her personal ties to [the defendant]." *Id.* Still, in that case, the U.S. Attorney's Office for the District of Columbia took no position and deferred to the court on whether the retained conflicts counsel was suitable or whether the court should appoint separate counsel. *Id.* Only after finding that retained conflicts counsel was not fully independent—just like she said—did the court appoint separate conflicts counsel for the defendant. *Id.*

The government cites and quotes *Sutton* over a dozen times in its fifteen-page brief, yet it omits the many facts that distinguish *Sutton* from this case. The government never explains why it now insists that this Court appoint conflicts counsel for Mr. Cole, when it took no position in *Sutton*, where the retained conflicts counsel stated that she was not "fully independent."

The government asks this Court to interpose a court-appointed attorney between Mr. Cole and his counsel of choice, invite the government to *meet privately* with that attorney, and let *only* the government select the "materials" that attorney reviews—an extraordinary set of measures, all to address a single hypothetical post-conviction claim. The government concedes that Mr. Cole can waive that claim, and Mr. Williams and Mr. Shoreman are available to advise him independently before he does so. Mr. Cole has a Sixth Amendment right to counsel of his own choosing, including conflicts counsel in the form of Mr. Williams and Mr. Shoreman. This Court should not choose Mr. Cole's counsel for him and allow the government to decide what materials conflicts counsel reviews.

## ARGUMENT

### I. The Government Identifies No Actual Adversity Between Mr. Cole and the Virginia Defendants.

The government claims counsel "may have to choose between" an alternative-perpetrator defense and "zealously advocating" for Mr. Cole, whose "interests may not be served by claiming that a U.S. Capitol Police officer actually committed the crimes with which he is charged." Dkt. 99 at 11 (citation omitted). If the evidence that Mr. Cole seeks in his Rule 17(c) subpoenas supports that defense, pursuing it *is* zealous advocacy for Mr. Cole. The government's contrary view goes to the merits, not to counsel's loyalty, and the government is not the arbiter of which defense serves him. D.C. Rule 1.7(b)(4) protects "the client's objectives as the client views them"—not how the opposing party views them. *In re Hager*, 812 A.2d 904, 914 (D.C. 2002) (quoted at Dkt. 99 at 8).

The government also presents a new "validation" theory: that counsel's Virginia motion to dismiss relies on the FBI's investigation of Ms. Kerkhoff, so counsel may be seeking this Court's "endorsement" to aid the defamation defense. Dkt. 99 at 9–10. Of course, the FBI's investigation matters in both cases. The same facts bear on who placed the pipe bombs and on whether it was reasonable to suspect Ms. Kerkhoff. That overlap is why the government told the Court that the interests "are aligned." Dkt. 98-1 at 3:2–3. A ruling on Mr. Cole's subpoena motion endorses nothing relevant to the defamation case. Instead, the Court will apply the *Nixon* requirements of relevancy, admissibility, and specificity in this case, which have nothing to do with whether the Virginia defendants defamed Ms. Kerkhoff.

The government also relies on the wrong subsection of Rule 1.7. The Virginia defendants are clients. Paragraphs (b)(2) and (b)(3) govern a lawyer's duties to one client that may be strained by duties to another, prohibiting a representation that "will be or is likely to be adversely affected by representation of another client," or that "will be or is likely to be" adverse to the other client's representation. D.C. R. Prof'l Conduct 1.7(b)(2)–(3). Paragraph (b)(4), the only provision the government invokes, addresses something else: a lawyer's "responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests." *Id*. 1.7(b)(4). The Virginia defendants are not third parties to their own lawyers, and the government identifies no financial, business, property, or personal interest of counsel that turns on the outcome of this case.

The government's reliance on (b)(4) is misplaced. Where (b)(2) and (b)(3) require that adverse effect "will be or is likely to be," (b)(4) asks only whether professional judgment "reasonably may be" affected, and the government's brief is built on that phrase. Dkt. 99 at 7–9, 11. Put simply, the government relies on the softer standard from a provision that does not describe this situation rather than the standard in the provision that does. Nothing in the record suggests that counsel's representation of Mr. Cole "is likely to be adversely affected" by representing two defendants whose civil defense is that suspicion of Ms. Kerkhoff was reasonable, irrespective of the outcome of Mr. Cole's case. The government does not argue otherwise.

Even on its own terms, Rule 1.7(b)(4)'s phrase "reasonably may be" does not rescue the theory. Even the government's authority requires a "reasonable possibility" that counsel's judgment will be affected. Dkt. 99 at 7–8 (quoting *Bayerische Motoren Werke AG v. Arigna Tech. Ltd.*, No. 23-1190 (RC), 2024 WL 2864225, at *4 (D.D.C. June 6, 2024)). The government offers instead a chain of contingencies: *if* the defense continues, *if* the Court permits it, *if* the case goes to trial, *if* Mr. Cole pursues the defense at trial at the expense of all others, and *if* Mr. Cole is convicted, he *might* later claim that his attorneys served someone else's interests. Dkt. 98-1 at 6:7–15. "The possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). The Sixth Amendment addresses conflicts that affect counsel's performance, not "a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Here, the government concedes the interests run in the same direction, and there is no adversity.

## II. The Government's Own Chronology Contradicts the "Conflict" Assertion.

Mr. Cole moved for the Kerkhoff subpoenas on April 1, 2026, three weeks before Ms. Kerkhoff sued. Dkt. 99 at 4–5. By the government's own account, counsel did not begin discussing representation with the Virginia defendants until April 22 and did not appear in that case until June 15. *Id.* at 5. Before April 22, there was only one client and no competing duty, with no possibility of a conflict. The government's answer—"[e]ven if that is true, the full sequence of events is less reassuring," *id.* at 10—rests on unsworn remarks in two internet videos. *Id.* at 5–6 & nn.5–6. Those remarks are not evidence, and they establish nothing improper. Counsel's

investigation on Mr. Cole's behalf reached a journalist who had investigated many question at the center of Mr. Cole's defense for years; after Ms. Kerkhoff sued, counsel agreed to take on a representation that the government itself concedes is aligned with Mr. Cole's interests. Dkt. 98-1 at 3:2–3. None of that suggests that counsel's judgment on Mr. Cole's behalf has been compromised, and counsel's diligent advocacy in this case demonstrates that counsel are acting solely in Mr. Cole's interests.

**III. The Government's Proposed Remedy Is Unnecessary.**

The government's remaining authorities involve adversity that does not exist here. It describes counsel's work as a "dual representation" no fewer than five times and pairs the phrase with *Wheat v. United States*, 486 U.S. 153 (1988) at every turn. Dkt. 99 at 1, 9, 11–12, 14. The Court's September 16 minute order used that phrase as shorthand for the simple fact that undersigned counsel represent Mr. Cole here and the Virginia defendants. But the government argues it as a term of art, and in the Sixth Amendment cases it is one. "Multiple representation" in *Holloway v. Arkansas*, 435 U.S. 475 (1978), *Cuyler*, 446 U.S. at 337, and *Wheat* means one lawyer defending two or more people charged in the same criminal case, which is why Rule 44(c) reaches only defendants "jointly charged" or "joined for trial." Fed. R. Crim. P. 44(c)(1). The government's repeated description of this as a "dual representation" in the vein of those cases does not fit the facts here.

Every fact that made *Wheat* a conflict is missing here. It involved a lawyer who sought to represent a defendant while also representing alleged co-conspirators, one of whom the government intended to call as a witness at the defendant's trial. *Wheat*, 486 U.S. at 155–56. The Virginia defendants are not co-defendants, cooperators, or

witnesses, and the government identifies no scenario in which counsel would cross-examine one client or use one client's confidences against another.

Nor does any law require that independent advice come from court-appointed counsel. Even where Rule 44(c) applies—and it does not here, *see* Dkt. 98 at 6—it requires the court to "take appropriate measures to protect each defendant's right to counsel," not to appoint conflicts counsel. Fed. R. Crim. P. 44(c)(2). Because of a defendant's constitutional right to counsel of choice, when faced with a conflict, "the court should . . . *encourage* the defendant to seek advice from independent counsel"—not force the defendant to accept court-appointed counsel who also meets privately with the government. *United States v. Curcio*, 680 F.2d 881, 890 (2d Cir. 1982) (emphasis added). Courts accept waivers made after the defendant consulted independent co-counsel or separate counsel he obtained himself. *See, e.g.*, *United States v. Parnell*, No. 1:13-CR-12 (WLS), 2013 WL 2387714, at *1–3 (M.D. Ga. May 30, 2013) (defendant consulted with "independent" lead counsel about local co-counsel's conflict); *United States v. Gorski*, 36 F. Supp. 3d 256, 261–62 (D. Mass. 2014) (independent counsel engaged by defense counsel to advise defendant about potential conflict and obtain waiver). Mr. Williams and Mr. Shoreman are not members of Litson PLLC and owe no duty to the Virginia defendants. The Rules impute conflicts within a firm, not among co-counsel from separate firms with no role in the other matter. *See* D.C. R. Prof'l Conduct 1.10(a).

The government's proposed procedure also would give the government an extraordinary role in Mr. Cole's defense. It asks the Court to "direct the government

to share with conflicts counsel those materials necessary for counsel to discharge their responsibilities," and to have conflicts counsel "meet separately with government counsel" *before* advising Mr. Cole. Dkt. 99 at 14. The practical effect of this protocol would be to give the government a role in shaping the advice Mr. Cole receives about whether to waive any potential conflict. The Court should not grant so intrusive a request, particularly where the relief appears designed to deter Mr. Cole from pursuing an alternative-perpetrator defense. To do so would be both constitutionally fraught and factually unwarranted. *See United States v. Crowder*, 313 F. Supp. 3d 135, 141 (D.D.C. 2018) ("[D]isqualification is highly disfavored, and any motion to disqualify counsel is therefore examined with a skeptical eye.") (citation omitted); *United States v. Childress*, 58 F.3d 693, 736 (D.C. Cir. 1995) ("The right to choose one's counsel is an end in itself; its deprivation cannot be harmless.") (citation omitted).

Finally, the government's remedy is not the cost-free "prophylactic measure" it describes. Dkt. 99 at 2, 9. The erroneous deprivation of counsel of choice is structural error. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). And trial courts must weigh the possibility that "the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side." *Wheat*, 486 U.S. at 163. Having argued that Mr. Cole's defense is "baseless," Dkt. 91 at 19, the government now goes further and argues that the lawyers pressing it are potentially compromised. The Rules of Professional Conduct are not a vehicle

for narrowing the defense a defendant may present or limiting a defendant's right to counsel of his choosing. The Court should not permit that result here.

## CONCLUSION

The government has identified no adversity, no divergence of interests, and no decision by counsel that disserves Mr. Cole. The Court should find that no conflict exists and deny the government's oral motion. In the alternative, the Court should adopt the procedure proposed in Mr. Cole's opening brief, Dkt. 98 at 8–9, and decline the government's request to appoint conflicts counsel.

Date: September 30, 2026

Respectfully submitted,

*/s/ John R. Glover*
J. Alex Little
Zachary C. Lawson
John R. Glover
LITSON PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co
zack@litson.co
jr@litson.co

Mario B. Williams
Ga. Bar No. 235254 (Pro Hac Vice)
John M. Shoreman
DC Bar #407626
HUMANITY DIGNITY AND RIGHTS LLC
3480 Peachtree Road, NE
Atlanta, Georgia 30326
Tel: 470-257-2485
mwilliams@hdrattorneys.com
jms@mcfaddenshoreman.com

*Counsel for Brian Cole, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of September, 2026, a true and correct copy of the foregoing has been served via the Court's CM/ECF system upon all counsel of record.

*/s/ John R. Glover*
John R. Glover