**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 26-cr-00001 (AHA)** |
| **BRIAN J. COLE, JR.,** | : | |
| | : | |
| **Defendant.** | : | |

# GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO AS UNTIMELY

The United States respectfully opposes defendant Brian J. Cole, Jr.'s Motion to Dismiss Counts One and Two as Untimely. ECF No. 108. On December 29, 2025, a grand jury empaneled in the Superior Court for the District of Columbia issued an indictment charging the defendant with, *inter alia*, interstate transportation of explosives, in violation of 18 U.S.C. § 844(d), for transporting two pipe bombs from Virginia into Washington, D.C. and placing them at the headquarters of the Republican National Committee and the Democratic National Committee on or about January 5, 2021. ECF No. 31. Pursuant to the authority that Congress granted to any "grand jury serving in the District of Columbia," D.C. Code § 11-1916(a), this indictment was returned in the U.S. District Court for the District of Columbia. ECF No. 31. A five-year statute of limitations applies to violations of 18 U.S.C. § 844(d), and therefore an indictment returned on December 29, 2025 was timely issued. But the defendant argues that the D.C. Superior Court grand jury was not empowered to issue the indictment and that therefore no indictment was returned before the expiry of the five-year statute of limitations on January 5, 2026.

The defendant's argument is premised on a flawed reading of the interplay between the Federal Rules of Criminal Procedure and an Act of Congress that expressly permits what occurred here: an indictment charging a federal offense issued by a D.C. Superior Court grand jury returned

in federal court. In *United States v. Kevontae Stewart*, 810 F. Supp. 3d. 65 (D.D.C. Nov. 20, 2025), Chief Judge Boasberg recently upheld the validity of such an indictment against the same challenges made by the defendant here. The *Stewart* decision is currently pending appeal before the U.S. Court of Appeals for the D.C. Circuit.

**Procedural History**

On December 29, 2025, a grand jury empaneled by the Superior Court of the District of Columbia issued an indictment charging the defendant with, *inter alia*, a violation of 18 U.S.C. § 844(d). ECF No. 31. The government presented the case to the D.C. Superior Court grand jury because no federal grand juries were sitting between December 19, 2025 and January 6, 2026. *See* ECF No. 37. In asking this court to accept the indictment, the government cited D.C. Code § 11-1916(a), which provides that a "grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts." In a December 30, 2025 Minute Order, Magistrate Judge Sharbaugh noted that in *Stewart*, 810 F. Supp. 3d. 65, Chief Judge Boasberg had held that this statute allowed Superior Court grand juries to return indictments in federal court. Following briefing, on January 2, 2026, Magistrate Judge Sharbaugh accepted the indictment issued by the D.C. Superior Court. Min. Order (Jan 2, 2026); ECF 31.

On January 6, 2026, the first day a federal grand jury was available after the grand jury returned from its break, a federal grand jury returned a superseding indictment charging the same violations as the December 29, 2025 indictment. ECF No. 39. On September 30, 2026, a federal grand jury returned a Third Superseding Indictment.[1] ECF No. 106. On October 5, 2026, the

[1] One of the technical changes in the third superseding indictment from the original indictment, first superseding indictment, and second superseding indictment was to split what was previously

defendant moved to dismiss Counts One and Two of the Third Superseding Indictment, both charging violations of 18 U.S.C. § 844(d), as untimely. ECF No. 108.

## **Legal Standard**

A defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "For [statute-of-]limitations purposes, a superseding indictment filed while the original indictment is validly pending relates back to the time of filing of the original indictment if it does not substantially broaden or amend the original charges." *United States v. Biaou*, No. 24-CR-323 (CRC), 2026 WL 221768, at *4 (D.D.C. Jan. 28, 2026) (internal quotation and citation omitted). The government agrees with the defendant that the offense of interstate transportation of explosives, in violation of 18 U.S.C. § 844(d), has a five-year statute of limitations. *See* 18 U.S.C. § 3282(a).

## **Argument**

The defendant first argues the Federal Rules of Criminal Procedure bar any court other than a federal court from impaneling a grand jury that can return a federal indictment. He then argues that the Rules conflict with D.C. Code § 11-1916(a) and because the Rules were amended after § 1916(a) was enacted, they control and implicitly repeal § 1916(a).

The defendant's analysis is backwards. D.C. Code § 11-1916(a) is a duly enacted statute. Logic dictates that the Court first examine § 1916(a), determine if it permits the return of an indictment issued by a D.C. Superior Court grand jury in federal court, and then consider whether the Rules conflict with the statute and, if yes, implicitly repeal the statute.

---

a single charge relating to a violation of 18 U.S.C. § 844(d) into two counts (Counts One and Two), one for each pipe bomb at the two locations. ECF No. 106.

Considered in that sequence, *first*, Congress expressly legislated that a D.C. Superior Court grand jury may issue indictments returned in federal court. *Second*, there is no irreconcilable conflict between § 1916(a) and the Rules because nothing in the Rules expressly prohibits the indictment process authorized by § 1916(a). Although the Rules govern proceedings in district courts, they do not purport to prohibit other Congressionally authorized methods by which criminal proceedings can be brought to federal court. In enacting § 1916(a), Congress expressly established a valid means for a criminal proceeding to be brought to federal court in the unique federal enclave of D.C. *Finally*, the 2002 amendments did not demonstrate a clear and manifest intention by Congress to repeal § 1916(a) by implication. There is nothing in the text of the amendments or the advisory committee notes to suggest that any changes were meant to alter the grand-jury powers that Congress authorized in § 1916(a). It is implausible that Congress decided to revoke D.C.'s unique shared grand-jury authority after decades of practice, which prompted published decisions in both federal court and the D.C. Court of Appeals, by adopting seemingly unrelated amendments to certain general definitions in the Rules. Thus, the challenged indictment was valid, and the Court should deny the motion to dismiss.

**1. The Indictment in This Case Was Validly Issued Under Authority Expressly Granted by Congress.**

Congress created the D.C. Superior Court and D.C. Court of Appeals in 1970 by enacting the District of Columbia Court Reform and Criminal Procedure Act. *See* Pub. L. No. 91-358, 84 Stat. 480 (July 29, 1970). In the same legislation, a provision then codified as D.C. Code § 11-1903(a) provided: "A grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts." *Id*. at 515. At the time, Black's Law Dictionary defined "cognizance" to

mean: "Jurisdiction, or the exercise of jurisdiction, or power to try and determine causes." Cognizance, Black's Law Dictionary (4th ed. rev. 1968).[2]

In 1972, the D.C. Court of Appeals addressed the constitutionality of this provision in *Atkinson v. United States*, 295 A.2d 899 (D.C. 1972). The defendant "attack[ed] the validity of [his] indictment," arguing that "the return of an indictment by a grand jury of the United States District Court to the Superior Court of the District of Columbia" was a violation of the Fifth Amendment's Grand Jury Clause.[3] *Id*. at 901. The D.C. Court of Appeals rejected this claim, concluding that "the United States District Court grand jury was expressly authorized by statute to return indictments to the Superior Court," and the grand-jury rules of both courts satisfied the Fifth Amendment's requirements. *Id*. at 901-02.

In 1978, the D.C. Court of Appeals rejected a defendant's claim that the statute "permit[ted] a grand jury only to 'take cognizance' of a matter ultimately proper before another court, but not to return an indictment with respect to such matters." *Hackney v. United States*, 389 A.2d 1336, 1339 (D.C. 1978). The court also rejected the argument that "since the transfer of all local criminal jurisdiction to Superior Court ha[d] been completed . . . there [was] no longer any need for using this indictment procedure." *Id*. The D.C. Court of Appeals observed that "[f]ederal courts as well as the District of Columbia courts were created by Congress," and it found that the statute reflected "a congressional decision to permit grand juries attached to either court to return indictments both for violations of a federal or local criminal statute." *Id*. at 1339-40 (cleaned up). *See also Christian*

---

[2] Available at https://www.1215.org/lawnotes/dictionaries/1968_blacks_law_dictionary_4th_ed.pdf, PDF page 401 (last checked Oct. 16, 2026). The quoted language is the first definition. Other definitions relate to judicial functions, powers granted by a king, and actions by a defendant.

[3] *See* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger[.]").

*v. United States*, 394 A.2d 1, 42-43 (D.C. 1978) (interpreting the statute to mean that "Superior Court grand juries were intended to have powers comparable to federal grand juries").

In 1986, Congress enacted the District of Columbia Jury System Act. *See* Pub. L. No. 99-650, 110 Stat. 3635, 3640 (Nov. 14, 1986). This legislation split apart the previously unified jury-selection systems for the D.C. District Court and Superior Court and set forth in a new D.C. Code provision the juror qualifications for the independent Superior Court system. *See* D.C. Code §§ 11-1901, -1906. The same legislation recodified § 1903(a) as D.C. Code § 11-1916(a) without any changes to its language. *See* D.C. Code § 11-1916(a) ("A grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts."). Congress also added a provision immediately after the newly codified § 1916, titled, "Coordination and cooperation of courts." D.C. Code § 11-1917. This new statute provided:

> To the extent feasible, the Superior Court and the United States District Court shall consider the respective needs of each court in the qualification, selection, and service of jurors. Nothing in this chapter shall be construed to prevent such courts from entering into any agreement for sharing resources and facilities (including automated data processing hardware and software, forms, postage, and other resources).

*Id*.

In 1997, the D.C. Circuit rejected a claim that an indictment by a D.C. Superior Court grand jury returned in federal court pursuant to § 1916(a) unconstitutionally "vest[ed] the judicial power of the United States outside Article III" and deprived the defendant "of the constitutional safeguards associated with Article III supervision of federally-indicting grand juries." *United States v. Seals*, 130 F.3d 451, 455-56 & n.3 (D.C. Cir. 1997). The district court, which the appellate court affirmed in relevant part, had held that "Congress, with plenary authority over the District of

Columbia, validly authorized the D.C. Superior Court, an Article I tribunal, to supervise a grand jury that can indict for both D.C. and federal offenses." *Id*. at 453. Favorably citing the D.C. Court of Appeals decisions in *Atkinson*, 295 A.2d at 901, and *Hackney*, 389 A.3d at 1340, the D.C. Circuit observed that

> [g]iven the limited pool of potential jurors available to serve both the D.C. Superior Court and the United States District Court, it is hardly surprising that the Congress should vest a grand jury empaneled by either court with authority to return an indictment in the other or that judicial supervisory authority should be shared by the courts.

*Seals*, 130 F.3d at 460.

The D.C. Circuit held that the shared grand-jury authority established in § 1916(a) was constitutionally sound because "the power to supervise a federally-competent grand jury cannot fairly be described as an essential attribute of the judicial power of the United States." *Seals*, 130 F.3d at 459 (cleaned up). It further reasoned that § 1916(a) "authorize[d] only a limited sharing of the supervisory power with an Article I court" because "[a]n Article III judge continues to preside at the defendant's trial and retains his authority to dismiss an indictment." *Id*. The Court readily acknowledged that "the grand jury arrangement in the District of Columbia may be unique" — as D.C. is a "unique federal enclave" in many respects — but that did not render it unconstitutional. *Id*. at 457-58, 460 (cleaned up).

While indictments issued through the process authorized in § 1916(a) are unusual, the cases described above show that such indictments have been used and accepted in both D.C. court systems for decades. *See also*, *e.g.*, *United States v. Allen*, 729 F. Supp. 120, 122 (D.D.C. 1989) ("[A] Superior Court grand jury is authorized by Congress to return a federal indictment."); *United States v. Brown*, 2007 WL 2007513, at *4 (D.D.C. July 9, 2007) (discussing the overlapping grand-jury authority established in § 1916(a)), *Stewart*, 810 F. Supp. 3d at 72 ("This Court is convinced

that in 1970, Congress authorized local grand juries sitting in the District to return indictments in District Court, and vice versa. Absent any intervening statutory change, that authority remains today."). Indeed, Superior Court grand juries have returned indictments in federal court for years, as the examples below illustrate.

| Case Name | Case Number | Date | District Judge |
|---|---|---|---|
| *United States v. Seals* | 95-cr-284 | Oct. 31, 1995 | Lamberth |
| *United States v. Doostdar* | 18-cr-255 | Aug. 20, 2018 | Friedman |
| *United States v. Clark* | 18-cr-338 | Nov. 15, 2018 | Kelly |
| *United States v. Parker* | 19-cr-127 | April 12, 2019 | McFadden |
| *United States v. Wallace* | 19-cr-151 | May 6, 2019 | Hogan |
| *United States v. Kelly* | 20-cr-2 | Jan. 2, 2020 | McFadden |
| *United States v. Henderson* | 20-cr-3 | Jan. 3, 2020 | Cooper |
| *United States v. Scott* | 20-cr-275 | Dec. 8, 2020 | Boasberg |
| *United States v. Monroe* | 24-cr-321 | July 15, 2024 | Cobb |

As the court held in *Seals* — a decision that the defendant does not even address — Congress in § 1916(a) "vest[ed] a grand jury empaneled by either [the D.C. Superior Court or D.C. District Court] with authority to return an indictment in the other," such that "judicial supervisory authority" is "shared by the[se] courts." 130 F.3d at 460. Although the district court in *Stewart* characterized this aspect of *Seals* as "dicta" because the case involved a constitutional challenge, 810 F. Supp. 3d at 71, interpreting § 1916(a) was "a necessary antecedent" for the Circuit's assessment of the statute's constitutional validity and is thus properly viewed as part of *Seals*'s holding. *In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019). *See also United States v. Hillie*, 39 F.4th 674, 683 (D.C. Cir. 2022) (where statutory constructions are "necessary

antecedents" to determining constitutional validity, they are "binding holdings"); *cf. United States v. Williams*, 553 U.S. 285, 293 (2008) (explaining that it is "impossible to determine" if a statute is constitutionally overbroad "without first knowing what the statute covers"). As the district court in *Stewart* recognized, the court in *Seals* "would not have upheld the local grand jury's indictment as constitutional if it had thought that such a grand jury lacked the ability to indict a defendant in federal court at all." *Stewart*, 810 F. Supp. 3d at 71. *Seals*, moreover, was not alone in its interpretation of § 1916(a). The statute has been read the same way by the D.C. Court of Appeals, *see Hackney*, 389 A.2d at 1339-40; *Christian*, 394 A.2d at 42-43; multiple district court judges who discussed it in written decisions, *see Allen*, 729 F. Supp. at 122; *Brown*, 2007 WL 2007513, at *4; and the many trial court judges who have accepted indictments issued under the process authorized by the statute. In any event, even if *Seals* is not viewed by this Court as binding authority, the uniform interpretation afforded to this statute by every court that has addressed it is correct for the reasons that follow.

As the district court concluded in *Stewart*, § 1916(a), "[b]y its plain terms," "permits local and federal grand juries in D.C. to return indictments in either court." 810 F. Supp. 3d at 71. The statute applies to any grand jury "serving in the District of Columbia," which includes grand juries convened by the D.C. District Court and the D.C. Superior Court. D.C. Code § 11-1916(a). It authorizes those grand juries to "take cognizance" of "all matters" brought before them, "regardless" of whether a resulting indictment "is returnable in the Federal or District of Columbia courts." *Id.*

**2. Amendments to the Federal Rules of Criminal Procedure in 2002 Did Not Implicitly Repeal D.C. Code § 11-1916(a).**

The Federal Rules of Criminal Procedure govern procedures in all criminal proceedings in federal courts. *See* Fed. R. Crim. P. 1(a)(1). The Supreme Court has the authority to prescribe such

rules and present them to Congress for examination. *See Deaver v. Seymour*, 822 F.2d 66, 70 n.9 (D.C. Cir. 1987); 28 U.S.C. §§ 2071-74. The proposed rules take effect unless Congress takes action to delay, amend, or invalidate them. *See id*. "Once put into effect, the Federal Rules have the force of law." *Id*. Although they are not legally determinative, the Advisory Committee Notes for the Federal Rules "provide a reliable source of insight into the meaning of a rule, especially when . . . the rule was enacted precisely as the Advisory Committee proposed." *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002).

A "cardinal rule" of statutory interpretation is "that repeals by implication are not favored." *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 132 (2003) (cleaned up). This is because there is a "strong presumption" that "Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (cleaned up). Accordingly, when "presented with two statutes, the Court will regard each as effective — unless Congress' intention to repeal is clear and manifest, or the two laws are irreconcilable." *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 315 (2020) (cleaned up). "A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow." *Epic Sys. Corp.*, 584 U.S. at 510 (cleaned up). Nonetheless, that is precisely what the defendant here claims. *See* ECF 108 at 7-8.

The Supreme Court has also instructed that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one." *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974). This doctrine derives from the presumption that "when Congress has focused on a particular subject, a court can reasonably rely on that expression of congressional intent, by

contrast with a generally worded statute where it is unclear whether Congress focused on the particular matter at issue." *United States v. Stewart*, 104 F.3d 1377, 1387 (D.C. Cir. 1997).

Prior to 2002, Rule 1 of the Federal Rules of Criminal Procedure contained only the following short statement:

> These rules govern the procedure in all criminal proceedings in the courts of the United States, as provided in Rule 54(a); and, whenever specifically provided in one of the rules, to preliminary, supplementary, and special proceedings before United States magistrate judges and at proceedings before state and local judicial officers.

Fed. R. Crim. P. 1 (2001). In 2002, "Rule 1 [was] entirely revised and expanded to incorporate Rule 54, which deal[t] with the application of the rules." Fed. R. Crim. P. 1 advisory committee's note (2002 amend.). Thus, "as part of a general restyling of the Criminal Rules," the entirety of former Rule 54 was either "deleted as unnecessary" or "moved to revised Rule 1." Fed. R. Crim. P. 54 advisory committee's note (2002 amend.). The purpose of this change was to relocate Rule 54's description of "the scope of the rules" to "the beginning to show readers which proceedings are governed by these rules." *Id*. The revised Rule 1 also "incorporate[d] the definitions" previously set forth in Rule 54. *Id*.

The 2002 amendments to Rule 1 also included certain changes to the terminology and definitions that had appeared in the former Rule 54. Fed. R. Crim. P. 1 advisory committee's note (2002 amend.). In general, these changes were made to conform the rules to current practice. *See id*. "Anachronistic," "superfluous," and "possibly misleading" definitions were deleted. *Id*. The definition of "magistrate judge" was revised to reflect "the wider and almost exclusive use of United States magistrate judges . . . in preliminary matters." *Id*. The terms "Act of Congress" and "Judge of the United States" were replaced with the terms "federal statute" and "federal judge," respectively. *Id*.

Before 2002, the term "Judge of the United States" included only "a judge of a district court, court of appeals, or the Supreme Court." Fed. R. Crim. P. 54(c) (2001). The replacement term, "federal judge," was expanded to include "magistrate judges" and "federal judges other than Article III judges who may be authorized by statute to perform a particular act specified in the Rules of Criminal Procedure." Fed. R. Crim. P. 1 advisory committee's note (2002 amend.). The advisory committee notes clarified that this expanded definition, like the old definition for "Judge of the United States," "[did] not include local judges in the District of Columbia." *Id*.

The revised Rule 1 also added a definition for the term "court," which was defined as "a federal judge performing functions authorized by law." Fed. R. Crim. P. 1(b)(2). The advisory committee notes explained that this change, like several others described above, was prompted by the increased role of magistrate judges in federal criminal proceedings. In the pre-2002 rules, the term "court" "was almost always synonymous with the term 'district judge.'" Fed. R. Crim. P. 1 advisory committee's note (2002 amend.). The newly added definition for "court," combined with the expanded definition for "federal judge," "continue[d] the traditional view that 'court' means district judge, but also reflect[ed] the current understanding that magistrate judges act as the 'court' in many proceedings." *Id*.

The 2002 amendments also included a "general restyling" of Rule 6, the rule specifically addressed to grand juries. Rule 6(a)(1) previously read:

> The court shall order one or more grand juries to be summoned at such time as the public interest requires. The grand jury shall consist of not less than 16 nor more than 23 members. The court shall direct that a sufficient number of legally qualified persons be summoned to meet this requirement.

Fed. R. Crim. P. 6(a)(1) (2001). After the 2002 amendments, it read:

> When the public interest so requires, the court must order that one or more grand juries be summoned. A grand jury must have 16 to 23

> members, and the court must order that enough legally qualified persons be summoned to meet this requirement.

Fed. R. Crim. P. 6(a)(1). The advisory committee notes make clear that the changes to this provision were "intended to be stylistic." Fed. R. Crim. P. 6 advisory committee's note (2002 amend.).

The defendant's claim that the 2002 amendments to the Rules eliminated the authority of D.C. Superior Court grand juries to return indictments in federal district court should be rejected. Certainly, they were not amended specifically to preclude the D.C. federal court from accepting a return from the D.C. Superior Court as the defendant claims. ECF 108 at 1. The defendant has failed to satisfy his "heavy burden" of showing that § 1916(a) and the Rules cannot be harmonized, and that Congress showed a "clear and manifest" intention to nullify § 1916(a) by accepting the 2002 amendments to the Rules. *Epic Sys. Corp.*, 584 U.S. at 510; *Maine Cmty. Health Options*, 590 U.S. at 315.

*First*, there is no irreconcilable conflict between § 1916(a) and the Rules. The federal rule governing grand juries, Fed. R. Crim. P. 6, is not restrictive. Rather, it states what the district court must do, not what the Superior Court cannot do. Nothing in Rule 6, or elsewhere in the Rules, expressly prohibits the indictment process authorized by § 1916(a). Courts do not "usually read into statutes words that aren't there," *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020), and they certainly should not add words that would create an unnecessary conflict with another statute.

Indeed, although the Rules state that they govern proceedings "in the United States district courts," Fed. R. Crim. P. 1(a)(1), they do not purport to prohibit other Congressionally authorized methods by which criminal proceedings can be brought to federal court. To the contrary, the Rules acknowledge the existence of such processes by noting, for example, that the rules "govern all

proceedings after removal from a state court." Fed. R. Crim. P. 1(a)(4) (emphasis added). The procedure for removing criminal prosecutions from state court to federal court, like the indictment process in § 1916(a), is not otherwise addressed or described in the Rules but is instead governed by two statutes enacted by Congress: 28 U.S.C. §§ 1442 and 1455. *See*, *e.g.*, *Georgia v. Heinze*, 171 F.4th 1335, 1337-38 (11th Cir. 2026) (describing removal of case to federal court after defendants were "indicted by a state grand jury").

Absent a constitutional limitation, it is up to Congress to decide how federal offenses may be charged and prosecuted in federal courts. *See Palmore v. United States*, 411 U.S. 389, 401 (1973). In enacting § 1916(a), Congress established just such an alternate means by which a criminal proceeding can be brought to federal court in the unique federal enclave of D.C. Like the removal of state criminal proceedings, *see Tennessee v. Davis*, 100 U.S. 257 (1879), the indictment process established by § 1916(a) has been upheld as constitutionally sound, *see Seals*, 130 F.3d at 457-60; *Atkinson*, 295 A.2d at 901-02 (noting that the grand-jury rules of both the federal district court and D.C. Superior Court satisfied the Fifth Amendment's requirements). For this reason, the defendant's reliance on the Rules Enabling Act, 28 U.S.C. § 2072 is misplaced. That establishes the ability of the Supreme Court to prescribe rules of practice and procedure and rules of evidence and while it does say that conflicting laws "shall be of no further force or effect after such rules have taken effect," it does nothing to disturb non-conflicting laws, such as § 1916(a).

*Second*, the 2002 amendments to the Rules did not demonstrate a clear and manifest intention by Congress to repeal § 1916(a) by implication. As discussed, the advisory committee notes to Rule 1 explained that this rule was "entirely revised" by combining it with Rule 54 in order to foreground the scope of the rules and key definitions. *See* Fed. R. Crim. P. 1 advisory

committee's note (2002 amend.). To the extent that certain terms and definitions were modernized and updated, the purpose was to conform the Rules to current practice. *See id*.

There is nothing to suggest the 2002 amendments were intended to address the unique role that grand juries in the District of Columbia have to consider federal and local criminal charges. D.C.'s shared grand-jury authority was established by Congress through a specific statutory provision in 1970 — a provision that was preserved and recodified with identical language when Congress established an independent D.C. jury-selection system in 1986. The Rules, by contrast, have general application to all federal courts in the country, and Rule 1 sets forth definitions that generally apply throughout those rules. It is implausible that Congress decided to revoke D.C.'s unique shared grand-jury arrangement after decades of practice, which prompted published decisions in both the D.C. Circuit and the D.C. Court of Appeals, by adopting seemingly unrelated amendments to certain general definitions in the Rules.

In short, the defendant has failed to show that Congress "focused on the particular matter at issue" when it accepted the 2002 amendments to Rule 1. *Stewart*, 104 F.3d at 387. This is particularly true given the absence of any relevant substantive changes to Rule 6, the only rule that specifically addresses grand juries, and the complete absence of any reference to D.C. Superior Court grand juries in the text of the amended rules or the advisory notes. "It is difficult to imagine that any member of Congress . . . would consider that he was voting for the repeal" of § 1916(a) by not objecting to the proposed Federal Rules amendments at issue. *Demby v. Schweiker*, 671 F.2d 507, 512 (D.C. Cir. 1981).

## **Conclusion**

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's Motion to Dismiss Counts One and Two as Untimely.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

*/s/ Stuart Allen*
STUART D. ALLEN (D.C. Bar No. 1005102)
JOCELYN BALLANTINE (CA Bar No. 208267)
CHARLES R. JONES (D.C. Bar No. 1035541)
Assistant United States Attorneys
National Security Section
601 D Street, NW
Washington, D.C. 20530